# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

GENWORTH FINANCIAL WEALTH     :     Civil Action No.
MANAGEMENT, INC.     :
    :
       Plaintiff,     :
    :
v.     :
    :
TIMOTHY MCMULLAN, JAMES COOK,     :
TIMOTHY MCFADDEN, KAREN BAZON,     :
TAMARA RIVERA and TJT CAPITAL     :
GROUP, LLC.     :
    :
       Defendants     :
    :
_____ :     September 25, 2009

## COMPLAINT FOR INJUNCTIVE RELIEF, DAMAGES, AND OTHER RELIEF

Genworth Financial Wealth Management, Inc. ("Genworth"), by its undersigned attorneys, for its Complaint, alleges:

## INTRODUCTION

1.     This is an action to enjoin five former Genworth employees, Defendants Timothy McMullan, James Cook, Timothy McFadden, Karen Bazon, and Tamara Rivera, and their new competing business, Defendant TJT Capital Group, LLC ("TJT Capital"), from continuing to use Genworth's trade secrets and other confidential proprietary information and from engaging in other acts to unfairly divert Genworth's client relationships. Plaintiff also seeks damages from Defendant TJT Capital and imposition of a constructive trust and an accounting to recover its lost profits and the monies unjustly received by these wrongful acts.

2.     Prior to their staggered departures from Genworth, the Defendants McMullan, Cook, McFadden, Bazon, and Rivera downloaded and copied Genworth's valuable ACT client database -- the nerve center of its business -- as well as other confidential documents and began directing clients to transfer their assets under management to a custodian not owned by Genworth's

affiliates.  They then used Genworth's confidential information to quickly solicit and divert

Genworth clients to their new business once it became operational.  Once they had resigned from

Genworth, Defendants McMullan, Cook, McFadden, Bazon, and Rivera entered Genworth's

computer system, as well as the system of one of the custodians of the clients' assets, without

authorization and used Genworth's password without authorization to acquire additional

confidential information about Genworth clients to assist in diverting their accounts.

       3.        These acts have already caused substantial and irreparable harm to Genworth's

business and client goodwill in an amount that cannot presently be calculated.  Accordingly,

Genworth seeks injunctive relief against Defendants McMullan, Cook, McFadden, Bazon, and

Rivera, and injunctive relief and damages against Defendant TJT Capital, for Defendants' (1)

violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 et seq. ("CFAA"); (2)

misappropriation of Genworth's trade secrets and confidential business information in violation of

the Connecticut Uniform Trade Secrets Act, Conn. Gen. Stat. §§ 35-50 et seq. ("CUTSA"); (3)

breach of contract; (4) violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§

42-110 et seq. ("CUTPA"); (5) violation of the Stored Communications Act, 18 U.S.C. § 2701 et seq.

("SCA"); and (6) tortious interference with business relationships.

## PARTIES

       4.        Genworth is a California corporation, with its principal place of business located at

2300 Contra Costa Blvd., Suite 600, Pleasant Hill, CA  94523.  Genworth operates an office located

in Stamford, Connecticut.

       5.        On information and belief, Defendant McMullan is an individual residing at 39

Revere Place, Ridgefield, CT 06877.  Until his voluntary resignation on June 29, 2009, he was a Sales

Leader with Genworth's Private Client Group.

6.      On information and belief, Defendant Cook is an individual residing at 91 Echo Hill Drive, Stamford, CT 06903.  Until his voluntary resignation on July 31, 2009, he was a Senior Sales Representative with Genworth's Private Client Group.

7.      On information and belief, Defendant McFadden is an individual residing at 4250 Van Cortlandt Pk. E 2g, Bronx, NY 10470.  Until his voluntary resignation on August 4, 2009, he was a Senior Sales Representative with Genworth's Private Client Group.

8.      On information and belief, Defendant Bazon is an individual residing at 3 Middle River Road, Danbury, CT 06811.  Until her voluntary resignation on August 7, 2009, she was an Administrative Assistant with Genworth's Private Client Group.

9.      On information and belief, Defendant Rivera is an individual residing at 77 Prospect Street, Apt. 9-B, Stamford, CT 06902.  Until her voluntary resignation on July 31, 2009, she was an Administrative Assistant with Genworth's Private Client Group.

10.     On information and belief, Defendant TJT Capital is a Delaware limited liability company, with its principal place of business located at 9 West Broad Street, Stamford, CT 06902. On information and belief, none of the Members of the LLC is a resident of California.

11.     Defendants McMullan, Cook, McFadden, Bazon, and Rivera worked for Genworth in its Stamford Connecticut office.  On information and belief, all currently work for Defendant TJT Capital in Connecticut.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between parties and the amount in controversy, exclusive of interests and costs, exceeds the sum of $75,000.00 and because there is Federal Question jurisdiction under the Computer Fraud and Abuse Act and the Stored Communications Act.  18 U.S.C. §§ 1030, 2701.

13.     Venue is proper under 28 U.S.C. §1391 because a substantial part of the events giving rise to the claims occurred in the District of Connecticut.

## STATEMENT OF FACTS

**The Business of Genworth**

14.     Genworth's Private Client Group provides investment services to high net worth individuals.  The investment strategies Genworth offers clients include proprietary models developed by investment manager Bob Brinker.

15.     Genworth purchased the assets of Brinker's investment management company, BJ Group Services ("BJ Group"), in April 2000 for several million dollars (the "Asset Purchase"). Above all, Genworth valued Brinker's loyal client following, and BJ Group's client list and goodwill were at the heart of that purchase.

16.     In the years since, Genworth has continued to maintain, at considerable expense, its longstanding relationship with Brinker in order to serve the needs of clients attracted to Brinker's approaches to tactical asset allocation.

17.     Since April 2000, Genworth and Brinker have had an ongoing agreement under which Brinker provides Genworth with investment management and sales and marketing services. Under this agreement, among other things, Brinker provides to Genworth client leads.

18.     Genworth hired Defendants McMullan, Cook, McFadden, Bazon, and Rivera to service the needs of the clients Genworth purchased and developed through the Brinker relationship and to contact and develop leads provided primarily through that relationship.  Defendants McFadden and Cook joined Genworth in connection with the purchase of the BJ Group in 2000. Defendant McMullan was hired in 2004 to work with Defendants McFadden and Cook to service and follow up on the leads Genworth paid to obtain primarily through the Brinker relationship. Defendants Rivera and Bazon were hired to provide support services to Genworth.

19.     Today approximately half of Genworth's BJ Group's clients were acquired by Genworth in April 2000 when Genworth purchased the BJ group.  The majority of the other clients were acquired as a result of the exclusive leads provided by Brinker, with the remainder developed through extensive lead generation activity on Genworth's behalf.  The identities of the clients, which are primarily individuals and related trusts, are closely guarded valuable confidential information of Genworth and are not readily ascertainable by legitimate means.

**Genworth Entrusted Defendants McMullan, Cook, McFadden, Bazon, and Rivera With its Most Valuable Client Information**

20.     Defendants McMullan, McFadden, and Cook were responsible for day-to-day servicing of existing Genworth clients and pursuing client leads, including those purchased from Brinker, to expand Genworth's client base.  To help them perform these duties, Genworth provided Defendants McMullan, Cook, McFadden, Bazon, and Rivera with access to a variety of secure computer databases which contain the most sensitive and confidential information about the entire client and prospect base for that business.  These databases include the Automated Contact Tracking (ACT) database, which contains client names, phone numbers, contact information, and portfolio management history, as well as notes by Genworth employees about interactions with the client and plans for follow-up, and the Prospects and Terms database, which lists contact information, including information purchased from Brinker, in excess of 16,000 potential leads, including former clients whose prior accounts with Genworth had been terminated but who may be receptive to Genworth's services in the future.

21.     In addition, Genworth provided Defendants McMullan, Cook, McFadden, Bazon, and Rivera with access to databases maintained for Genworth by the two custodians of Genworth's client accounts -- one an affiliate of Genworth and one managed by The Charles Schwab Corporation ("Schwab").  Accessing these two custodial account databases provides complete

current contact and portfolio information for each account under management, including client names, phone numbers, contact information, and portfolio management history.

22.     The extensive information contained in these databases is at the heart of Genworth's business. The information in these databases was developed by Genworth over a substantial period of time at great cost. The contents of these databases confer a substantial competitive advantage upon Genworth because it is not known by others. Much of the information contained in these databases is subject to privacy agreements and obligations to clients. Genworth has taken reasonable efforts to maintain the confidentiality of such information. These databases are housed in secure servers, authorized users are required to enter passwords to access these databases, and no one is authorized to use the information contained in these databases other than to serve Genworth clients on behalf of Genworth.

23.     Genworth trained Defendants McMullan, Cook, McFadden, Bazon, and Rivera on the proper and ethical care of Genworth's client information, trade secrets, and confidential information. Genworth provided each of them with *Integrity First*, a Code of Ethics handbook which, among other things, requires employees to follow rules to prevent the unauthorized use and disclosure of this information, including, among other things, the following:

    a.     Comply with all applicable consumer and other privacy and data protection laws, regulations, and treaties;
    b.     Do not acquire, use, or disclose individual consumer information in ways that are inconsistent with your business' privacy policies or with applicable laws or regulations;
    c.     If you have access to individual consumer information, use that information only for authorized business purposes;
    d.     Keep secure your business' records of individual consumer information, including computer-based information;
    e.     Avoid actions or relationships that might conflict or appear to conflict with your job responsibilities or the interests of Genworth;
    f.     Do not misuse Genworth resources, intellectual property, time, or facilities (including office equipment, e-mail, and computer applications) for personal gain;

g.       Do not personally enrich yourself using opportunities that Genworth could have an interest in that are discovered through the use of Genworth position, information, or property;

h.       Disclose your outside activities, financial interests or relationships that may present a possible conflict of interest (or appearance of a conflict) to your manager as well as your business' legal counsel or finance manager.  Make these disclosure in writing when such a situation arises as well as when asked to complete a "Conflict of Interest" questionnaire;

i.       Consult with company legal counsel before disclosing Genworth Financial proprietary information to outsiders or permitting third parties to use Genworth Financial intellectual property;

j.       Identify and protect Genworth intellectual property.  Hold Genworth trade secrets and other proprietary information in confidence; and

k.       Consult with Company legal counsel before disclosing Genworth proprietary information to outsiders or permitting third parties to use Genworth intellectual property.

See Exhibit "A" attached hereto.

24.       Defendants McMullan, Cook, McFadden, Bazon, and Rivera each agreed to comply with the *Integrity First* Code of Ethics and has executed annual attestations of their obligations (the "Agreement").  See Exhibit "B" attached hereto.  The Agreement, among other things, provides that:

every employee is required to comply with the policies described in *Integrity First* and that [the employee] must:

a.       Thoroughly understand the Integrity First policies that apply to [the employee's] job;

b.       Adhere to the Conflicts of Interest policy and promptly disclose in writing to [the employee's] manager outside activities, finance interests or relationships that present a possible conflict; [and]

c.       Promptly raise concerns about possible violations of a Genworth policy to a manager, human resource manager, compliance resource, company legal resource, or a company ombudsman.

See Exhibit "C" attached hereto.

## Defendants McMullan, Cook, McFadden, Bazon, and Rivera's Surreptitious Activities to Divert Genworth's Confidential Information and Clients to Defendant TJT Capital

25.       In the Fall of 2008, while still employed by Genworth, Defendant McMullan began suggesting to other Genworth employees that they could move the business out of Genworth and make money themselves directly from the clients.  Over time, he enlisted Defendants Cook,

McFadden, Bazon, and Rivera to use improper means to do exactly that. Defendants McMullan, Cook, McFadden, Bazon, and Rivera engaged in a coordinated scheme prior to and after their resignations to acquire, duplicate, and use Genworth's confidential information and trade secrets, including the ACT client database and information from other protected databases, to establish and divert Genworth clients to their own competing business, Defendant TJT Capital.

26.     On April 1, 2009, Defendant Bazon requested that Genworth's information technology personnel provide her with a DVD copy of the ACT database, which they provided on April 2, 2009. On information and belief, Defendants McMullan, Cook, McFadden, Bazon, and Rivera harvested this and related confidential client information with the intent to use this information to divert Genworth clients to their new business.

27.     Genworth's policy is to encourage its clients to use its affiliated custodial service for their accounts. Beginning in December 2008, and contrary to Genworth's directions, Defendants McMullan, Cook, and McFadden placed their own interests above Genworth's and began urging clients to transfer their custodian from Genworth to a third-party custodian, Schwab. They were assisted in these efforts by Defendants Bazon and Rivera. The assets remained under Genworth's management, and Genworth had passwords to view the Genworth account information on the Schwab server. But placing the accounts in the custody of Schwab made it easier to sever them from Genworth once Defendants McMullan, Cook, McFadden, Bazon, and Rivera had established their new business.

28.     On June 15, 2009, after Defendant TJT Capital had been established and readied for operation, Defendant McMullan resigned. He deliberately misinformed Genworth that he would not be working for a competitor. As a result, Genworth permitted him to continue to work at Genworth and have access to its clients and its confidential client information until June 29, 2009. In fact, however, Defendant McMullan planned to depart to operate Defendant TJT Capital.

29.     After Defendant McMullan left, Genworth asked Defendants Cook and McFadden to assume greater responsibilities for the Private Client Group and to stabilize the client base.  Both concealed that they were working with Defendant McMullan to establish a competing business that had the goal of diverting Genworth clients.  Instead, both continued contacting Genworth clients, suggesting to some that they make Schwab the custodian of their accounts, assisting in the transfers, and even noting in the ACT client database their plans to follow-up with the clients in August -- when, as they knew, but Genworth did not, they would be employed by Defendant TJT Capital. They were assisted in these activities by Defendants Rivera and Bazon, who continued to receive copies of the ACT database on DVDs.  On information and belief, and in violation of their confidentiality duties to Genworth, Defendants McFadden, Cook, Rivera, and Bazon kept Defendant McMullan, now acting on behalf of Defendant TJT Capital, fully apprised of these activities.

30.     On information and belief, Defendants Cook, McFadden, Bazon, and Rivera continued to view and access confidential Genworth client information not for the benefit of Genworth but rather for the purpose of facilitating the movement of Genworth client accounts to Defendant TJT Capital.

31.     Defendants Cook, McFadden, Bazon, and Rivera then staggered their resignations from Genworth to join Defendant TJT Capital by August.  Like Defendant McMullan, Defendants Cook, McFadden, Bazon, and Rivera deliberately misled Genworth as to where they were going.

32.     On information and belief, some or all of Defendants McMullan, Cook, McFadden, Bazon, and Rivera retained and, as described below, continued to access Genworth trade secrets and confidential information to divert clients to their new business, Defendant TJT Capital.  Documents left behind by the Defendants McMullan, Cook, McFadden, Bazon, and Rivera set forth their plans to contact "clients", "prospects and terms".  As the Investment Registration documents filed on

behalf of Defendant TJT Capital on August 5, 2009 declared that Defendant TJT Capital had "no clients", there can be no doubt that the "clients", "prospects and terms" they intended to pursue were the Genworth clients that Genworth had paid so dearly to acquire and develop and whose information Genworth had closely guarded as its confidential information and trade secrets.

**Defendants McMullan, Cook, McFadden, Bazon, and Rivera Used and Continue to Use Genworth's Trade Secrets and Confidential Information to Secure Genworth Business for Defendant TJT Capital**

33.     On information and belief, Defendants McMullan, Cook, McFadden, Bazon, and Rivera, now TJT Capital employees, have been using Genworth confidential information and trade secrets to solicit Genworth clients to transfer their accounts to Defendant TJT Capital, going so far as to continue to access Genworth's protected computer without authorization following their departures to gain additional confidential information they needed.

34.     On information and belief, Defendant TJT Capital used Genworth's confidential information relating to Genworth clients to solicit those clients seeking their business.  Included in many of these solicitation materials were account transfer forms already filled out by Defendants with detailed confidential client information acquired and retained through the Defendants McMullan, Cook, McFadden, Bazon, and Rivera's work at Genworth.

35.     When Defendants McMullan, Cook, McFadden, Bazon, and Rivera found that they had not removed from Genworth and retained all the confidential information they needed, they simply entered Genworth's computer files to obtain it for Defendant TJT Capital.  Thus, after he resigned, Defendant McFadden accessed non-public password-protected portions of Genworth's website at least 75 times using the password Genworth had issued to him exclusively for Genworth business.  While forensic analysis is ongoing, it is apparent that he accessed confidential information relating to Genworth clients.

36.     Similarly, Defendant Cook continued to access the custodial account Schwab maintained for Genworth clients by using Genworth's password without authorization to access confidential information about at least one Genworth client.  Shortly thereafter, that client transferred his business to Defendant TJT Capital.

37.     After they resigned, one or more of Defendants McMullan, Cook, McFadden, Bazon, and Rivera also continued to access their Genworth voicemail accounts without authorization to retrieve confidential client messages left for Genworth.

**Defendants' Ongoing Misrepresentations Regarding Genworth's Relationship With Brinker**

38.     Upon information and belief, Defendants' have knowingly and intentionally misled Genworth clients to believe that Genworth does not have an ongoing relationship with Brinker, in an effort to encourage them to cease conducting business with Genworth.  In fact, however, as Defendants know, Genworth has an ongoing contractual relationship with Brinker.

**Imminent Harm to Genworth**

39.     As a result of Defendants' actions, Genworth has already lost millions of dollars in assets under management.  Additionally, Genworth has suffered and is threatened with the erosion and loss of customer relationships, loss of confidential information and trade secrets, and loss of goodwill -- none of which can be readily quantified.  Defendants have already used Genworth's confidential information and trade secrets to solicit and obtain business from Genworth clients and continue to make efforts to do so.  Every day Genworth continues to lose clients as a result. Genworth has already suffered, and will continue to suffer, irreparable harm for which there is no adequate remedy at law.  Unless Defendants are enjoined from the foregoing conduct, Genworth will continue to be irreparably harmed.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF COMPUTER FRAUD AND ABUSE ACT
### AS TO DEFENDANTS MCFADDEN AND TJT CAPITAL

40.     Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

41.     Genworth uses its computers in interstate commerce.

42.     Genworth's computers are protected computers within the meaning of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA").

43.     Upon information and belief, Defendant McFadden intentionally accessed Genworth client information residing on Genworth's computer servers through means of accessing Genworth's non-public website without authorization and/or exceeded his authorized access, and transferred that information outside of Genworth to his own possession, thereby misappropriating and obtaining valuable confidential, proprietary, and trade secret information belonging to Genworth.  These actions were taken with the knowledge of and for the benefit of TJT Capital.

44.     Defendant McFadden's and Defendant TJT Capital's conduct caused losses to Genworth in excess of $5,000.

45.     Defendant McFadden's and Defendant TJT Capital's conduct constitutes a violation of the CFAA.

46.     Defendant McFadden's and Defendant TJT Capital's conduct has caused and stands to cause Genworth substantial and immediate irreparable injury, including the actual and potential loss of client relationships and goodwill, as well as confidential, proprietary, and trade secret information.  Unless enjoined, Defendant McFadden and Defendant TJT Capital will continue to breach their obligations and cause further such injury.

## COUNT II
## VIOLATION OF COMPUTER FRAUD AND ABUSE ACT
## AS TO DEFENDANTS COOK AND TJT CAPITAL

47.     Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

48.     Genworth uses its computers in interstate commerce.

49.     Genworth's computers are protected computers within the meaning of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA").

50.     Upon information and belief, Defendant Cook intentionally accessed Genworth client information residing on Schwab's computer by using Genworth's password to access information about Genworth clients on Schwab's non-public website without authorization and/or exceeded his authorized access, and transferred that information outside of Schwab to his own possession, thereby misappropriating and obtaining valuable confidential, proprietary, and trade secret information belonging to Genworth.  These actions were taken with the knowledge and for the benefit of TJT Capital.

51.     Defendant Cook's and Defendant TJT Capital's conduct caused losses to Genworth in excess of $5,000.

52.     Defendant Cook's and Defendant TJT Capital's conduct constitutes a violation of the CFAA.

53.     Defendant Cook's and Defendant TJT Capital's conduct has caused and stands to cause Genworth substantial and immediate irreparable injury, including the actual and potential loss of client relationships and goodwill, as well as confidential, proprietary, and trade secret information. Unless enjoined, Defendant Cook and Defendant TJT Capital will continue to breach their obligations and cause further such injury.

## COUNT III
## MISAPPROPRIATION OF TRADE SECRETS
## AS TO ALL DEFENDANTS

54.     Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

55.     Genworth has invested, and continues to invest, considerable amounts of time and money in acquiring, creating, and developing confidential and trade secret information, including the client information contained in the ACT database, non-public Genworth website, and non-public Schwab website and client, prospect, and term database. Genworth's trade secrets give it an actual or potential economic advantage over its competitors, and unauthorized use or disclosure of those trade secrets would deprive Genworth of that advantage.

56.     Genworth has taken extensive measures to safeguard the secrecy of its confidential and trade secret information by, among other things, requiring its employees to enter into agreements to maintain their confidentiality, password-protecting its computer systems, and monitoring email, data transfers, and computer logins and use.

57.     Prior to their resignation, Defendants McMullan, Cook, McFadden, Bazon, and Rivera enjoyed a position of trust and confidence with Genworth and were privy to such confidential and trade secret information, which are the sole and exclusive property of Genworth.

58.     On information and belief, Defendants McMullan, Cook, McFadden, Bazon, and Rivera have copied, improperly accessed, removed, used, and otherwise misappropriated and continue to misappropriate Genworth's confidential, proprietary, and trade secret information without Genworth's express or implied consent, including trade secrets regarding Genworth clients, prospective clients, and terminated clients. These actions were taken with the knowledge and for the benefit of TJT Capital.

59.     Defendants McMullan, Cook, McFadden, Bazon, Rivera's and TJT Capital's misappropriation of Genworth's confidential, proprietary and trade secret information was willful and malicious.

60.     Defendants' conduct constitutes a violation of the Connecticut Uniform Trade Secrets Act, Conn. Gen. Stat. §§ 35-50 et seq. ("CUTSA") and the common law.

61.     Defendants' conduct has caused and stands to cause Genworth substantial and immediate irreparable injury, including the actual and potential loss of client relationships and goodwill, as well as confidential, proprietary, and trade secret information.  Unless enjoined, Defendants will continue to breach their obligations and cause further such injury.

62.     As a result of Defendants' violation of the CUTSA, Genworth has suffered damage in an amount that cannot be presently determined.

**COUNT IV**
**BREACH OF CONTRACT**
**AS TO THE INDIVIDUAL DEFENDANTS**

63.     Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

64.     Defendants McMullan, Cook, McFadden, Bazon, and Rivera agreed to be bound to Genworth's code of conduct.  This Agreement is a valid and enforceable contract, and Genworth has honored its obligations thereunder.

65.     Upon information and belief, Defendants McMullan, Cook, McFadden, Bazon, and Rivera intentionally breached and, unless enjoined, will continue to breach their obligations under the Agreement, including in particular their confidentiality obligations.

66.     Defendants' conduct has caused and stands to cause Genworth substantial and immediate irreparable injury, including the actual and potential loss of client relationships and goodwill, as well as confidential, proprietary, and trade secret information.  Unless enjoined, Defendants will continue to breach their obligations and cause further such injury.

67.     As a result of Defendants' breaches, Genworth has suffered damage in an amount that cannot be presently determined.

### COUNT V
### VIOLATION OF CONNECTICUT UNFAIR AND
### DECEPTIVE TRADE PRACTICES ACT
### AS TO ALL DEFENDANTS

68.     Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

69.     Defendants McMullan, Cook, McFadden, Bazon, and Rivera's conduct in establishing and operating their new business, TJT Capital, and TJT Capital's conduct in soliciting Genworth's clients and operating its business is unethical, unscrupulous, unfair, and deceptive, and constitutes an unfair method of competition or trade practice in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110 et seq. ("CUTPA").

70.     Defendants' conduct was intentional and willful.

71.     Defendants' violation of CUTPA was carried out for the purpose of competing unfairly with Genworth.

72.     As a result of Defendants' violation of CUTPA, Genworth has suffered damages in an amount that cannot be presently determined.

### COUNT VI
### VIOLATION OF STORED COMMUNICATIONS ACT
### AS TO ALL DEFENDANTS

73.     Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

74.     Genworth uses its telephone voicemail facility in interstate commerce.

75.     Upon information and belief, one or more of the individual Defendants intentionally accessed Genworth's telephone voicemail facility without authorization and/or exceeded his authorized access, and obtained access to electronic communication while in electronic storage in such system. This action was taken with the knowledge and for the benefit of TJT Capital.

76. Defendant's and Defendant TJT Capital's conduct constitutes a violation of the Stored Communications Act, 18 U.S.C. § 2701 et seq. ("SCA").

77. Defendant's and Defendant TJT Capital's conduct has caused and stands to cause Genworth substantial and immediate irreparable injury, including the actual and potential loss of client relationships and goodwill, as well as confidential, proprietary, and trade secret information. Unless enjoined, Defendant and Defendant TJT Capital will continue to breach their obligations and cause further such injury.

78. As a result of Defendant's and Defendant TJT Capital's violation of the SCA, Genworth has suffered damage in an amount that cannot be presently determined.

## COUNT VII
## TORTIOUS INTERFERENCE WITH
## CONTRACTUAL AND/OR ADVANTAGEOUS BUSINESS RELATIONS
## AS TO ALL DEFENDANTS

79. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

80. Genworth has had substantial and on-going contractual and/or business expectancy relationships with its clients and potential clients that Defendants have diverted and/or are actively attempting to divert from Genworth.

81. Genworth has had an existing contractual relationship with its clients.

82. Genworth has had a reasonable prospect of entering into a contractual or a business relationship with its clients and potential clients.

83. Defendants knew of Genworth's contractual and/or business expectancy relationships with its clients and potential clients.

84. By engaging in the conduct described above, Defendants wrongfully interfered with Genworth's contractual and/or business expectancy relationships with those clients and potential clients.

85.     As a result of Defendants' tortious interference, Genworth has suffered damage in an amount that cannot be presently determined.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following temporary and permanent relief to be further specified in an order by the Court:

I.      **An injunction restraining and enjoining Defendants, whether directly or indirectly, alone or in concert with others, including any officer, agent, employee, or representative of Defendant TJT Capital, from:**

(i)     using, disclosing, misusing, or further converting in any manner or in any form Genworth's confidential, proprietary, or trade secret information, including the names, addresses, and financial information of Genworth clients, prospects, and "terms";

(ii)    soliciting or otherwise initiating any further contact or communication with any Genworth client who any of the Defendants served or whose names became known to any Defendants while employed at Genworth or any of its predecessors, including the BJ Group, Inc., for any purpose, including inviting, encouraging, or requesting the transfer of any accounts or business patronage from Genworth;

(iii)   hiding, damaging, destroying (except as further provided herein in Paragraph II(iii)), or otherwise disposing of or making unavailable for further proceedings in this matter any of Genworth's confidential, proprietary, or trade secret information, including information derived from any Genworth confidential records which pertain to clients whom Defendants served or whose names became known to Defendants while employed by Genworth or its corporate predecessors;

(iv)    representing or implying that Genworth does not have a contractual or business relationship with Robert J. Brinker or his affiliated business; and

(v)    making any false or misleading statements about Genworth or its employees.

**II.    An injunction ordering Defendants, and anyone acting in concert with Defendants, to:**

(i)    return to Genworth all copies of confidential, proprietary, and trade secret information obtained from Genworth (whether during or after termination of employment, and whether directly or through access to Genworth's or Schwab's proprietary or non-public databases), including the names, addresses, social security numbers, contact information and portfolio, account and other financial information of Genworth clients, whether in original, copied, handwritten, computerized, or any other form, within twenty-four hours of notice to Defendants or their counsel;

(ii)    permit Genworth to collect a forensic image of Defendants' home computers, office computers, laptop computers, and any other electronic storage media they use that contains or may contain electronic information constituting the property of Genworth;

(iii)    following the imaging described in Paragraph II(ii) above, permanently delete all Genworth information from computers, computer hard drives, USB drives, CDs/DVDs, or any other type of digital information storage device described in Paragraph II (ii);

(iv)    to the extent that Defendants have a question as to whether any information they intend to use in any way is Genworth confidential, proprietary, or trade secret information, defendants, raise such question with Genworth before any use or disclosure of that information, and defendants shall abide by Genworth's determination, to be made promptly, pending any further Order of this Court; and

(v)      certify to Genworth under oath on October 31, 2009, December 31, 2009, March 31, 2010, June 30, 2010, and September 30, 2010 that they are in compliance with this injunction.

III.     **The following other relief from Defendant TJT Capital:**

    (i)     an accounting of the monies obtained through these wrongful acts;

    (ii)    disgorgement of the monies obtained through these wrongful acts;

    (iii)   lost profits;

    (iv)   compensatory damages;

    (v)    punitive damages;

    (vi)   attorney's fees;

    (vii)   costs; and

    (viii)  such other and further relief as this Court may deem proper.

THE PLAINTIFF
GENWORTH FINANCIAL WEALTH
MANAGEMENT, INC.

By _____
Kurt Hansson (CT No. 01373)
Paul, Hastings, Janofsky & Walker LLP
75 E. 55th Street
New York, NY 10022
(212) 318-6627
kurthansson@paulhastings.com
Its Attorneys

Of Counsel

Victoria A. Cundiff
Paul, Hastings, Janofsky & Walker LLP
75 E. 55th Street
New York, NY 10022
(212) 318-6030
victoriacundiff@paulhastings.com

Kirby D. Behre
Paul, Hastings, Janofsky & Walker LLP
875 15th Street NW
Washington, DC 20005
(202) 551-1719
kirbybehre@paulhastings.com