## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| GENWORTH FINANCIAL WEALTH MANAGEMENT, INC.<br><br>      Plaintiff,<br><br>v.<br><br>TIMOTHY MCMULLAN, JAMES COOK, TIMOTHY MCFADDEN, KAREN BAZON, TAMARA RIVERA and TJT CAPITAL GROUP, LLC.<br><br>      Defendants. | Civil Action No. 3:09-CV-1521-VLB |
| TIMOTHY MCMULLAN, JAMES COOK, TIMOTHY MCFADDEN, AND TJT CAPITAL GROUP, LLC<br><br>      Third-Party Plaintiffs,<br><br>v.<br><br>GURINDER AHLUWALIA,<br><br>      Third-Party Defendant. | |

## MEMORANDUM IN SUPPORT OF EXPEDITED MOTION TO COMPEL FORENSIC IMAGING OF DEFENDANTS' COMPUTERS, ORDER FOR PRESERVATION OF EVIDENCE, ORDER FOR PRODUCTION OF EVIDENCE, APPOINTMENT OF NEUTRAL FORENSIC EXPERT, AND SANCTIONS

Plaintiff Genworth Financial Wealth Management, Inc. ("Genworth") and Third-Party Defendant Gurinder Ahluwalia submit this Memorandum of Law in support of their Motion to Compel, seeking an order from the Court compelling Defendants Timothy McMullan, James Cook, Timothy McFadden, Karen Bazon, Tamara Rivera, and TJT Capital Group LLC. ("TJT Capital") to submit all computers and electronic media to a

10209581-v2

court-appointed neutral forensic expert to perform forensic mirror imaging and examination.  Genworth and Mr. Ahluwalia (hereinafter referred to together as "Plaintiff") also request that this Court issue an order for the preservation and production of evidence in this case, and pursuant to Fed. R. Civ. P. 37(a)(5)(A) and L. Civ. R. 37(c), award Plaintiff its  reasonable attorneys fees and costs associated with this Motion.   In addition, as set forth more fully below, Plaintiff has a good faith basis for believing that there is a significant risk that material information will be destroyed before its Motion to Compel can be decided in accordance with normal procedure.  Accordingly, Plaintiff respectfully requests expedited resolution of this Motion to Compel pursuant to L. Civ. R. 7(a)(3) and 37(a)(2).

A significant threat exists that Defendants have failed to preserve and may continue to destroy electronic documents and e-mail critically relevant to Plaintiff's claims.  Despite multiple requests from Plaintiff's counsel, Defendants' counsel has failed and refused for the past six months to adequately preserve electronically stored information ("ESI") by making a "mirror image" identical copy of all relevant computers and electronic devices previously used and currently in use by Defendants.  As explained more fully below, as time passes, ESI on Defendants' computers is being overwritten on a constant basis, particularly on computers that Defendants continue to use that contain ESI relevant to this case.  Moreover, the Defendants' failure to produce all metadata showing what website searches they ran to purportedly identify contact information for Plaintiff's clients indicates that such crucial information may already have been destroyed or is in danger of being lost.  These events and evidence establish that Defendants refuse to properly preserve, search for, and produce ESI as required by the

Federal Rules of Civil Procedure.  The Defendants' failure to preserve ESI violates their fundamental duty to preserve all materials potentially relevant to this litigation.

A preservation order is required to ensure that all discoverable electronic media (whether in existence or already deleted) will be preserved to avoid or mitigate the irreparable harm Plaintiff will suffer if critical ESI has been destroyed.  Plaintiff also requests appointment of a neutral forensic expert to make mirror image identical copies of the computers and electronic media, to conduct mutually agreed-upon searches to recover discoverable ESI (in active file and deleted[1] file locations) that has to date been concealed from Plaintiff, and to examine whether ESI has been purposefully deleted by Defendants during this litigation.

## I.   FACTUAL BACKGROUND

The individual Defendants are former Genworth employees who left Genworth between June 29, 2009 and August 4, 2009 to form Defendant TJT, a competing company.  In at least Spring 2009, while still employed by Genworth, certain individual Defendants began establishing Defendant TJT.  By the time Defendants began departing Genworth, they had incorporated a shell company, registered with the Securities and Exchange Commission as investment advisors, identified a trust account custodian, prepared marketing materials, obtained a website, and located office space.

---

[1] Deleted data is "data that existed on the computer as live data and which have been deleted by the computer system or end-user activity. Deleted data may remain on storage media in whole or in part until they are overwritten or 'wiped.'  Even after the data itself have been wiped, directory entries, pointers or other information relating to the deleted data may remain on the computer.  'Soft deletions' are data marked as deleted (and not generally available to the end-user after such marking), but not yet physically removed or overwritten.  Soft-deleted data can be restored with complete integrity." *The Sedona Conference Glossary: E-Discovery and Digital Information Management*, May 2005, at 12, *available at* http://www.thesedonaconference.org/.

Defendants admit that throughout Spring and Summer 2009 they requested and received DVD copies of Genworth's Automated Contact Tracking (ACT) database, which contains client names, phone numbers, contact information, and portfolio management history, as well as notes by Genworth employees regarding client interactions. ACT contains potential leads, including current and former clients. The extensive information contained in this database is at the heart of Genworth's business and is a trade secret. Additionally, certain Defendants admit to emailing client information to their personal email accounts.

Since leaving Genworth, Defendants have admitted that they have solicited hundreds of Genworth's current and former clients, whose identities Defendants claim to have recalled solely from memory without the aid of any of Genworth's documents or records that the Defendants had access to during their employment at Genworth. Defendants further claim to have located contact information for these clients by searching the internet, but have merely provided Genworth with paper printouts of purported internet searches for a small percentage of these clients.

The heart of Defendants' defense in this case is their claim that they identified names of Genworth's clients through internet searches. Metadata underlying those searches has not been produced. Only paper printouts of some purported Google searches has been produced. The metadata on the computer would show what searches were performed and when, but such information, if it ever existed, is being overwritten constantly as Defendants continue to use those same computers on which they claim to have performed the searches.

4

In August 2009, Plaintiff's counsel sent Defendants letters instructing them to preserve all ESI and other evidence that might be relevant to this case.  *See* 8/19/09 Letter from V. Cundiff to T. McMullan (Exh. A); 8/19/09 Letter from V. Cundiff to T. McFadden (Exh. B); 8/19/09 Letter from V. Cundiff to J. Cook (Exh. C).  In the letters, Plaintiff's counsel stated:

> We seek your immediate assurance and representation that . . . (4) you have preserved and will not destroy, including under automatic deletion procedures, all documents, whether in hardcopy or electronic or other format, including all notes and e-mails, relating to this matter, and (5) you will cooperate with Genworth by making available for forensic imaging by a third party independent forensic examiner agreed upon by the parties all electronic data storage devices that you use, including, without limitation, computers, external hard drives, USB drives, non-commercial CD's/DVD's, PDA's and other such devices; such images to be preserved in the custody of the forensic expert for use in future legal proceedings.

Plaintiff filed suit on September 25, 2009 and propounded its first set of document requests on November 10, 2009.  Plaintiff's instructions in its document requests required the production of electronic data with all metadata.  To date, Defendants have not produced any electronic evidence in a case that revolves around the theft of electronic data.  Specifically, Defendants have not produced any electronic mail, their Junxure client management database, or their Portfolio Center client invoicing database.  This electronically stored information is critical to determining the extent to which Defendants used Genworth's trade secret and confidential information to solicit Genworth's clients.

Throughout January 2010, Plaintiff's counsel has had multiple conferences with Defendants' counsel seeking assurances that Defendants have engaged a vendor to make mirror image copies of relevant computers and electronic media and requested

production of electronically stored information.  *See* 2/5/10 Affidavit of Bradley

Bloodworth (Exh. D).  On January 14, Plaintiff's counsel emailed Defense counsel to

again reiterate the expectation regarding forensic mirror imaging of all computer

devices.  *See* 1/14/10 Email Message from K. Behre to T. Lewis (Exh. E).   On January

15, Plaintiff's counsel  conferred with Defendants' counsel and again sought assurances

that forensic mirror imaging of all computer devices had been undertaken.  During that

call, counsel reiterated Plaintiff's concern that relevant data on the computers was at

risk of being deleted, either purposefully or through the computer's own automatic

deletion of temporary files and inactive file space that could contain

relevant information.  Plaintiff's counsel followed up the January 15th telephone

conference with an email dated January 20, 2010, again requesting the preservation of

discoverable ESI.   *See* 1/20/10 Email Message from V. Cundiff to T. Lewis (Exh. F).  In

response to these numerous conferences, Defendants' counsel has conceded that his

clients have not imaged any of their computer devices, and stated that Defendants had

no intention to do so.

## II.   **ARGUMENT**

### A.   **The Court Has the Authority to Issue a Preservation Order, Appoint a Neutral Forensic Expert, and Order Forensic Imaging.**

The Federal Rules of Civil Procedure impose on all parties a fundamental duty to

preserve documents.  It is well-settled that the term "document" in Rule 34 includes

electronic documents saved on computers and computer media.  Fed. R. Civ. P. 34,

1970 Advisory Committee Notes ("The inclusive description of 'documents' is revised to

accord with changing technology.  It makes clear that Rule 34 applies to electronic data

compilations...").  Courts have recognized that even deleted computer files are

discoverable. *See, e.g., Playboy Enters., Inc. v. Welles*, 60 F. Supp. 2d 1050, 1052 (S.D. Cal. 1999); *Simon Prop. Group L.P. v. mySimon, Inc.*, 194 F.R.D. 639, 640 (S.D. Ind. 2000); *Antioch Co. v. Scapbook Borders, Inc.*, 210 F.R.D. 645, 652 (D. Minn. 2002). "A party is under an obligation to preserve . . . evidence when the party 'has notice that the evidence is relevant to the litigation' or when it 'should have known that the evidence may be relevant to future litigation.'" *Pace v. Nat'l R.R. Passenger Corp.*, 291 F. Supp. 93, 98 (D. Conn. 2003) (quoting *Fujitsu Ltd. V. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001)); *Kronisch v. United States*, 150 F. 3d 112, 126 (2d Cir. 1998). *See also Zubulake v. UBS Warburg LLC*, No. 02 Civ. 1243 (SAS), 2003 WL 22410619 (S.D.N.Y. Oct. 22, 2003) ("Zubulake IV"). The failure to produce documents can warrant severe sanctions because "[i]t is contrary to our sense of justice to hide evidence in any case once the party has been given notice of and made aware of litigation." *Winters v. Textron, Inc.*, 187 F.R.D. 518, 521 (M.D. Pa. 1999) (granting motion for sanctions for failing to preserve evidence). This Court has recognized that "[s]poliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Southern New England Telephone Co. v. Global NAPs, Inc.*, 251 F.R.D. 82, 93 (D. Conn. 2008) (quoting *West v. Goodyear Tier & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)).

The Court has inherent authority to order the preservation of evidence and to take all measures necessary to ensure that no evidence is altered, modified, or destroyed. *See, e.g., Capricorn Power Co., Inc. v. Siemens Westinghouse Power Corp.*, 220 F.R.D. 429, 433 (W.D. Pa. 2004); *HJB, Inc. v. American Home Prods. Corp.*,

Nos. 93 C 6728, 93 C 6789, 93 C 6790, and 93 C 6773, 1994 WL 31005, at *1 (N.D. Ill.

Feb. 1, 1994).  A preservation order can be granted "with regard to all items of evidence

which are discoverable in accordance with Federal Rule of Civil Procedure 26(b)(1),

without the necessity of establishing that the evidence will necessarily be relevant and

admissible at trial." *Capricorn*, 220 F.R.D. at 434.  "[O]rders directing parties to

preserve materials or documents are common in circumstances in which evidence is

subject to being destroyed or lost in routine and sometimes not-so-routine deletion or

destruction of information in various mediums." *Id.* at 431.  Federal courts have granted

motions to issue preservation orders where the moving party feared the party may take

actions resulting in compromised discovery.  *See, e.g., Antioch*, 210 F.R.D. at 649-50

(granting motion to preserve documents where moving party was "apprehensive and

harbor[ed] concerns that . . . documents [would] be intentionally altered, destroyed, 'lost'

or otherwise spoiled"); *Simon*, 194 F.R.D. at 641 (granting motion to compel

appointment of a neutral expert to inspect computers).  When the parties cannot agree

as to the correct manner of handling the evidence, a preservation order is particularly

necessary.  *Capricorn*, 220 F.R.D. at 434-35.

## B.      The Preservation of "Mirror Images" of Relevant Computer Media is Critical.

This Court tackled and thoroughly explained the complex computer terminology

at issue in this motion in *United States v. Triumph Capital Group, Inc.*, 211 F.R.D. 31,

45-47 at n. 4012 (D. Conn. 2002).  In *Triumph*, the court noted that a "mirror image" is

generally described as "a forensic duplicate, which replicates bit for bit, sector for

sector, all allocated and unallocated space, including slack space, on a computer hard

drive." 211 F.R.D. at 45-47 at n. 4-12.   The *Triumph* court explained how a computer's

hard drive is designed:

> Its surface is divided into concentric circles that are further divided into
> sectors.  A group of sectors is called a cluster.  A cluster is the minimum
> amount of space a file can occupy, regardless of the size of the file.  The
> computer's operating system assigns a number to each cluster and keeps
> track of which clusters a file occupies.  Occupied clusters are called
> 'allocated.'  Clusters that are available for use (even if they contain data
> from previous files) are unallocated or free.

211 F.R.D. at 45 n. 4.  Evidence on a computer can be located in multiple locations on a

computer hard drive, including:  active files (such as user-created documents and

internet history log files), free space,[2] slack space,[3] recovered deleted files,[4] directory

structures,[5] link files,[6] file attributes, software programs and properties, image files,

internet cache files,[7] and temporary directories.  *Id.* at 46 n. 5-12.   Operation of the

computer can effectively destroy trace evidence of relevant data that exists in those

locations on the computer, such as: when the data was created, who created it, when it

---

[2] "'Free space' or 'unallocated space' is comprised of clusters that are available for storage of active files. Free space may contain remnants of, or entire files that were previously deleted." *Triumph*, 211 F.R.D. at 46 n. 6.

[3] "'Slack space' is the unused space at the logical end of an active file's data and the physical end of the cluster or clusters that are assigned to an active file." *Id.* at 46 n. 7.  Deleted data or its remnants can be found in the slack space, but forensic tools are required to view and extract the slack space. *Id.*

[4] "'Deleted files' are part of the 'free space.'  When a user deletes a file, the data in the file is not erased, but remains intact in the cluster or clusters where I was stored until the operating system places other data over it....When all the clusters of a deleted file remain unused by the computer's operating system, it is possible to recover the deleted filed in its entirety.  Portions of deleted files may be recovered even if portions of the clusters the file occupied are being used by new files." *Id.* at 46 n. 8.

[5] A directory structure is "a list or inventory of files on the hard drive." *Id.* at 46 n. 9.

[6] "'Link files' are directory entries that contain binary information such as the path or route to the named file or document as well as the file's creation time and date, the date and time the file was last accessed, the date and time the file was last written to or modified, and the size of the file... By clicking on a link, the user can usually open the named file." *Id.* at 46 n. 10.

[7] "'Internet cache files' hold the contents of web sites that the computer has visited.  These files are usually saved with a '.jpeg' or '.jpg' extension to the file name.  They contain images as well as text.  They are not susceptible to keyword searches." *Id.* at 46 n. 12.

was last accessed, when it was last modified, when it was last printed, and when it was deleted. In addition, any data that Defendants have stored on other computer media, such as CDs, DVDs, ZIP disks, USB drives, PDAs, thumb drives, or other removable devices, must be properly preserved and examined. A forensic examination of a mirror image of a computer is a highly technical process that requires specific expertise, equipment and software in order to recover this evidence. A forensic examiner can use knowledge of the mechanisms used to store electronic data to unlock and uncover the activities of a computer's user by examination of these locations of data on the computer and computer media.

In this case, while the entirety of Defendants' computers must be preserved so that they could be forensically examined for potentially relevant evidence, evidence in active files, recovered deleted files, directory structures, file attributes, software programs, link files, internet caches files, and temporary directories may contain particularly probative relevant evidence. The forensic review Plaintiff has undertaken on its own computers establishes that Defendants ported client names, proprietary databases, and other confidential business information and trade secrets to their home and competing business computers. Evidence of when that material was transferred would exist in those locations on the computers such as in the link files and directories, including evidence of when any portable hard drives containing Genworth's data may have been hooked up to Defendants' computers to transfer data. Moreover, internet cache files would contain evidence of computer searches Defendants claim to have conducted in Google to find Genworth's client information, which may serve to prove or disprove that claim. In addition, review of deleted files, free space, and slack space

10

would reveal any steps Defendants may have taken to destroy evidence and may result in recovery of such deleted evidence.

Federal courts have routinely granted motions compelling a party to make "mirror images" of computer devices.   *Antioch*, 210 F.R.D. at 653 (appointing neutral computer forensic expert to create mirror image of computer and examine data); *Simon*, 194 F.R.D. at 641 (ordering plaintiff to pay an expert appointed by the court to create a mirror image of computers and examine them); *Playboy*, 60 F. Supp. 2d at 1055 (appointing forensic expert to create mirror image of computers); *Quotient*, 2005 WL 4006493, *3-4; *Balboa*, 2006 WL 763668, *3-4; *Orrell v. Motorcarparts of America, Inc.*, No. 3:06CV418-R, 2007 WL 4287750, *8 (W.D.N.C. Dec. 5, 2007) (ordering mirror imaging and forensic examination of home computer and entering order prohibiting the destruction of additional evidence); *In re Honza*, 242 S.W.3d 578, 583 (Tex. Ct. App. 2008) (upholding order for forensic expert to create mirror image of computers  and conduct searches and examination).   Mirror imaging and forensic examination of computer media is particularly relevant in cases dealing with trade secretes because it often reveals defendants' attempts to cover up their theft by wiping computer hard drives or deleting specific evidence of their theft.  *Balboa Threadworks, Inc. v. Stucky*, No. 05-1157-JTM-DWB, 2006 WL 763668, *3-4 (D. Kan. Mar. 24, 2006) (ordering mirror imaging of all of defendants' computers in copyright infringement case).  *See also Quotient, Inc. v. Toon*, No. 13-C-05-64087, 2005 WL 4006493, *3-4 (Md. Cir. Ct. Dec. 23, 2005) (alleging theft of trade secrets to unfairly compete with plaintiff's business); *Antioch*, 210 F.R.D. at 652.

11

As the *Balboa* court noted, mirror imaging is "one method of assuring the preservation of evidence since electronic evidence can easily be erased and manipulated either intentionally or unintentionally (by overwriting through continued use of the computer)." 2006 WL 763668, at *3.  The *Antioch* court also recognized the importance of preserving data to preclude the automatic overwriting of computer files, concluding:

> the Defendants may have relevant information on their computer equipment, which is being lost through normal use of the computer, and which might be relevant to the Plaintiff's claim, or the Defendants' defenses.  This information may be in the form of stored or deleted computer files, programs, or e-mails, on the Defendants' computer equipment.

210 F.R.D. at 652.  Similarly, in *Quotient*, the Court entered a preservation order requiring mirror imaging of a hard drive where the Court was "persuaded from the evidence before it that there is a substantial probability that evidence in the form of deleted or undeleted e-mails, IMs, and/or other files that are relevant to this case could be made less accessible to the parties merely by [defendant's] normal course of computer use, regardless of his intentions and motive." 2005 WL 4006493, at *3.  Here, Defendants' failure to create mirror images of all computer devices is resulting in the automatic overwriting of data on the computers that is destroying potentially relevant evidence.

## C.     Defendants Failed to Preserve, Search and/or Produce Critical Documents.

Defendants failed to preserve or have failed to search for critical documents.  A preservation order is warranted if past, present or future threats existed or currently exist to the continuing integrity or existence of evidence.  *Capricorn*, 220 F.R.D. at 434.

Precisely those threats exist here.  Defendants have vigorously resisted attempts to discover whether and how they have preserved all relevant evidence.  Defendants ignored Plaintiff's August 2009 letters advising them to preserve all ESI by making mirror image copies of all computers and computer media.  Defendants then ignored subsequent pleas by Plaintiff's counsel that Defendants make mirror images of all relevant computers and computer media.  Both independent evidence and Defendants' own conceded failure to maintain the integrity of relevant documents and computer media by failing to make mirror image copies indicate a significant and imminent threat of the loss of relevant data.

Prior to their departures, Defendants downloaded and copied Genworth's valuable ACT client database as well as other confidential documents in order to divert Genworth's clients to Defendants' competing business.  Although Plaintiff requested Defendants produce Defendants' client resource management databases, Defendants have not produced the Junxure database or the Portfolio Center database that presumably reside on their computers.  These databases contain critical evidence that would show the client names and other proprietary business information Defendants took from Genworth.

Moreover, Defendant Cook has admitted that he emailed lists of Genworth's clients to his home email address, but he has not produced any such e-mails.  Forensic review of Defendant Cook's computer is essential to determine if and when he deleted these key e-mails or documents that were attached to those e-mails from his home computer.

13

Defendants' mishandling of computer media, as well as their failure to search for and preserve such media is compelling evidence of the threat to critical documents and the urgent need for a preservation order and appointment of a neutral forensic expert to make mirror images of all relevant computer media and conduct an examination. Plaintiff will suffer significant irreparable harm absent an order directing preservation and requiring Defendants to make mirror images of relevant computer media. Plaintiff is entitled to discovery of all documents that support its claims. Appointment of a neutral forensic expert to examine Defendants' computer media will ensure that all parties get a fair opportunity in discovery to uncover relevant evidence.

**D.   Defendants Refuse to Preserve Relevant Electronic Evidence; Preservation and Appointment of a Neutral Forensic Expert Would Not Be Burdensome.**

Defendants' refusal to maintain relevant evidence in this case is readily apparent from their conceded actions in failing to preserve ESI. They have already let six months elapse without preserving data on at least six computers and countless computer media and have outright refused to preserve that evidence now. There is no reason to expect their conduct to change.

A forensic examination of Defendants' computer media is essential to determine whether Defendants have withheld or deleted ESI. In circumstances such as those in this case, federal courts routinely appoint computer forensic experts as officers of the court to assist the parties and the court in recovering electronic evidence and to retrieve deleted computer files. *See, e.g., Antioch*, 210 F.R.D. at 646 (granting motion for preservation order and to appoint a neutral forensic expert where the data that may have been deleted remained on the hard drive, but was constantly being overwritten

14

and lost by the normal continued use of the equipment); *Simon*, 194 F.R.D. at 641

(granting motion to compel appointment of neutral expert to inspect computes, including

inspection and production of deleted files); *Playboy*, 60 F. Supp. 2d at 1055; *GTFM, Inc.*

*v. Wal-Mart Stores, Inc.*, No. 98 CIV. 7724 (RPP), 2000 WL 335558, at *1 (S.D.N.Y.

Mar. 30, 2000) (granting motion to compel on-site inspection of defendants' computer

records by expert chosen by plaintiff's counsel and ordering defendants to reimburse all

legal and expert fees and expenses plaintiff incurred in conducting the on-site

inspection).

Preservation would not be in any way burdensome.  Plaintiff seeks to preserve

and to forensically examine likely no more than eight items, including Defendant TJT's

five computers and home computers belonging to Defendants McMullan, Cook, and

McFadden.  A neutral forensic expert can create mirror images of those items at

reasonable expense and with limited disruption to Defendants in a matter of a few

hours.  The mirror images require negligible, if any, storage fees with the neutral

forensic expert.  Further, the scope of the forensic examination can be limited to

documents existing in specific time periods, involving specific individuals and keywords,

internet website searches run on the computers, and any documents or e-mails that

may exist as deleted files on the computer media.  A preservation order, mirror imaging,

and appointment of a neural forensic expert would not require Defendants to take

extraordinary measures.  It is required as a matter of simple justice and fairness to

maintain discoverable material they possess that is likely critical to this action.

Plaintiff is willing to work with Defendants to establish an appropriate forensic

inspection and analysis protocol and fashion an agreement on the scope of the

15

inspection, to include: creating a mirror image of relevant computer hard drives and storage media using accepted computer forensic procedures that preserve the integrity of the original evidence; identification and analysis of relevant data in accordance with the agreed-upon specification; analysis of information showing when any recovered deleted file was deleted, and any information about the deletion and contents of any deleted file that cannot be recovered.  In addition, Plaintiff is willing to work out an agreement consistent with the Protective Order entered in this case for review of potentially privileged documents.  However, Plaintiff submits that Defendants should bear the cost of all forensic mirror imaging and examination of Defendants' computers and computer media.

### E.     Sanctions are Appropriate.

Pursuant to Fed. R. Civ. P. 37(a)(5)(A), "[i]f [a discovery-related] Motion is granted – or if the disclosure or requested discovery is provided after the motion as filed—the court *must*, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.…   Fed. R. Civ. P. 37(a)(5)(A) (emphasis added).  Similarly, L.Civ.R. 37(c) states that "[w]here a party has …opposed discovery which has resulted in the filing of a motion, an that party's position is not warranted under existing law and cannot be supported by good faith argument for extension, modification or reversal of existing law, *sanctions will be imposed* in accordance with applicable law." (Emphasis added).

At this stage, the appropriate sanction for Defendants' conduct is payment of Plaintiff's costs and fees in bringing this motion and payment of the costs for a neutral forensic examiner to make mirror image copies of all of Defendants' computer devices and to perform certain agreed-upon searches and analysis to uncover potentially deleted files and other information.

It is clear in this Circuit that "[e]ven in the absence of a discovery order, a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs." *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 106-7 (2d Cir. 2002). If spoliation is uncovered in the forensic examination, Plaintiff will file a separate motion for spoliation sanctions.

Notably, "[i]n the Second Circuit, a party may be sanctioned for the destruction of evidence even in the absence of bad faith or intentional misconduct." *Innis Arden Golf Club v. Pitney Bowes, Inc.*, 257 F.R.D. 334, 342 (D. Conn. 2009) (citing *Byrnie v. Town of Cromwell*, 243 F.3d 93, 107-8 (2d Cir. 2001)). "[D]iscovery sanctions, including an adverse inference instruction, may be imposed where a party has breached a discovery obligation not only through bad faith or gross negligence, but also through ordinary negligence." *Residential Funding*, 306 F.3d at 101.

Moreover, in the Second Circuit, "a judge's finding that a party acted with gross negligence or in bad faith with respect to discovery obligations is ordinarily sufficient to support a finding that the missing or destroyed evidence would have been harmful to that party, even if the destruction or unavailability of the evidence was not caused by the acts constituting bad faith or gross negligence." *Id.* This Court has even entered a

17

default judgment as a sanction against a party that willfully destroyed evidence and withheld documents. *Southern New England Telephone Co. v. Global NAPs, Inc.*, 251 F.R.D. 82, 96 (D. Conn. 2008) (sanctions awarded when it was discovered that ESI had been deleted after a forensic examiner reviewed computer metadata on defendants' computers. *Id.* at 88-89). If a forensic review of Defendants' computers reveals that evidence has been deleted or withheld, even if the evidence was destroyed merely through Defendants' negligence in failing to properly preserve mirror image copies of its computer media, additional sanctions will be warranted.

## III.   CONCLUSION

For all of the foregoing reasons, Plaintiff Genworth and Third Party Defendant Ahluwalia respectfully request that the Court grant their Motion; issue a preservation order and a production order; appoint a neutral computer forensics expert to assist in the mirror imaging, preservation and retrieval of electronic evidence from Defendants' computers and computer media; and award them their attorneys' fees and costs associated with their Motion to Compel.

February 5, 2010

THE PLAINTIFF
GENWORTH FINANCIAL WEALTH
MANAGEMENT, INC.

THIRD-PARTY DEFENDANT
GURINDER AHLUWALIA

By _____/s/_____
Elizabeth M. Smith (CT19808)
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06117
Tele: (860) 275-8338
Fax: (860) 275-8299
esmith@rc.com

-and-

Victoria A. Cundiff (phv 03712)
Kirby D. Behre (phv 03713)
Paul, Hastings, Janofsky & Walker LLP
75 E. 55th Street
New York, NY 10022
(212) 318-6030
victoriacundiff@paulhastings.com

## CERTIFICATION

I hereby certify that on 2/5/10, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

Thomas B. Lewis, Esq.
John E. MacDonald, Esq.
Stark & Stark LLC
993 Lenox Drive, First Floor
Princeton, NJ 08453


_____/s/_____
Elizabeth M. Smith