## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

GENWORTH FINANCIAL WEALTH MANAGEMENT, INC.

          Plaintiff,

vs.

TIMOTHY MCMULLAN, JAMES COOK, TIMOTHY MCFADDEN, KAREN BAZON, TAMARA RIVERA AND TJT CAPITAL GROUP, LLC

          Defendants.

_____

TIMOTHY MCMULLAN, JAMES COOK, TIMOTHY MCFADDEN, AND TJT CAPITAL GROUP, LLC

          Third-Party Plaintiffs,

vs.

GURINDER AHLUWALIA

          Third-Party Defendant.

Civil Action No. 3:09-CV-01521-VLB

**DEFENDANTS' AND THIRD PARTY PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S AND THIRD PARTY DEFENDANT'S EXPEDITED MOTION TO COMPEL FORENSIC IMAGING OF DEFENDANTS' COMPUTERS, ORDER FOR PRESERVATION OF EVIDENCE, ORDER FOR PRODUCTION OF EVIDENCE, APPOINTMENT OF NEUTRAL FORENSICS EXPERT, AND SANCTIONS**

**AND**

**DEFENDANTS'/THIRD PARTY PLAINTIFFS' CROSS-MOTION TO COMPEL PRODUCTION OF DOCUMENTS, TO COMPEL MORE SPECIFIC ANSWERS TO INTERROGATORIES, AND TO COMPEL THE DEPOSITIONS ALEXANDER OVERKAMP AND TODD D'AGOSTINO AND FOR SANCTIONS**

February 26, 2010

## PRELIMINARY STATEMENT[1]

After reading Genworth Financial Wealth Management, Inc.'s, ("Genworth") and

Gurinder Ahluwalia's ("Ahluwalia")[2] Motion, the Court may have, understandably,

A PROFESSIONAL CORPORATION

ATTORNEYS AT LAW

MAILING ADDRESS

PO BOX 5315

PRINCETON, NJ 08543-5315

---

[1] Counsel for both parties spoke to chambers regarding both Genworth's and Ahluwalia's MotionPlaintiffs' motion and Defendants' cross-motion and received permission to file these motions.

[2] For ease of reference, Genworth and Ahluwalia will be collectively referred to as "Plaintiff."

developed the opinion that discovery in this case has been a "one-way street," with

Plaintiff producing discovery while Defendants[3] have not.  Nothing could be further from

the truth. Contrary to Plaintiff's assertions, Defendants have already produced at least

2,212 pages of documents – identifying specifically which produced documents were

responsive to each of Plaintiff's requests in accordance with the local rules[4] – including

at least 42 pages of emails and  pages of electronic correspondence.  Even though no

rule specifically requires it, and in an attempt to resolve this Motion, Defendants have

had their computer devices imaged, and, just as Plaintiff has, Defendants are in the

process of searching those devices for relevant, non-privileged information that is

reasonably accessible.   Additionally, Defendants have produced two party witnesses –

James Cook and Karen Bazon – for lengthy depositions.

By contrast, Plaintiff's cooperation in the discovery process has been limited.[5]

Plaintiff produced limited electronic discovery or electronically stored information ("ESI")

despite various assurances that such material was "on the way."  Plaintiff has not

produced any witnesses for deposition, but has instead scheduled, and then arbitrarily

---

[3] Again for ease of reference, Defendants Timothy McMullan, James Cook, Timothy McFadden, Karen Bazon, Tamara Rivera, and TJT Capital Group, LLC, and Third Party Plaintiffs Timothy McMullan, James Cook, Timothy McFadden, and TJT Capital Group, LLC, will be collectively referred to as "Defendants."

[4] Despite demand, Plaintiff has failed to provide the same identification of documents.

[5] In fact, far from exhibiting model cooperation, Plaintiff has, at times, showed outright hostility toward Defendants, threatening, after only a very minor delay in Defendants' production of documents, to "make sure [the Defendants and their counsel] . . . have many, many trips to Hartford in the not to[o] distant future."  *See* the December 16, 2009 email from Kirby Behre, Esquire, as counsel for Plaintiff to Amy Beth Dambeck, Esquire, as counsel for Defendants, a copy of which is attached as Exhibit "A" to the Declaration of John E. MacDonald, Esquire, in Opposition to Plaintiff's Motion and in Support of Defendants' Cross Motion ("MacDonald Decl.")

A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
MAILING ADDRESS
PO BOX 5315
PRINCETON, NJ  08543-5315

cancelled two depositions shortly before they were to be taken. Plaintiff provided blatantly non-responsive interrogatory answers. Requests for more specific, responsive answers from Plaintiff have been all but ignored. Similarly, Defendants' reasonable requests for proper identification of which documents produced by Plaintiff were responsive to each of Defendants' requests have likewise been ignored. It is in this context that Plaintiff has resorted to the stonewalling of standard discovery production by making unjustified demands for the appointment of an "independent" forensic computer expert, despite having received numerous assurances that nothing had been or would be deleted from any of Defendants' computers.[6]

Furthermore, there is no rule requiring a defendant to undertake the burdensome and expensive process of retaining a neutral computer forensics expert to image and then search Defendants' computer devices – especially in a situation in which Defendants with limited means find themselves in litigation against a financial "Goliath" such as Genworth. Plaintiff has made no showing of any imminent need to undertake this process. Likewise, Plaintiff has made no showing that Defendants' should bear the costs of such an undertaking. Instead, Plaintiff is simply creating an issue to conceal the fact that it has thus far not produced its own ESI, has not complied with the rules regarding document production, and has engaged in the unjustified, last-minute cancellation of depositions. As stated above, no rule requires what the Plaintiff is seeking in its Motion. Instead, the Comment to Fed.R.Civ.P. 34 states (in relevant part),

A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
MAILING ADDRESS
PO BOX 5315
PRINCETON, NJ  08543-5315

---

[6] None of Defendants' interrogatory responses, none of Defendants' document production, and nothing said in the depositions of Mr. Cook or Ms. Bazon provides any basis for such an application.

> The burden thus placed on Respondent will vary from case to case, and the courts have ample power under Rule 26(c) to protect respondent against undue burden or expense, either by restricting discovery or requiring that the discovering party pay costs. Similarly, if the discovering party needs to check the electronic source itself, the court may protect respondent with respect to preservation of his records, confidentiality of non-discoverable matters, and costs.

Fed. R. Civ. P. 34 (Comments to 1970 Amendments to Subdivision (a)).

It is precisely this type of protection that the Defendants are now seeking from the Court. No demonstration has been made that a "court-ordered computer forensic expert" (or any of the other related relief) is justified in this case. Even if it were, Plaintiff should be required to pay for it. Defendants have preserved the evidence. They have imaged their computers devices, and they are in the process of searching those images for relevant, non-privileged information that is reasonably accessible. Defendants have lived up to their discovery obligations - indeed, much more so than Plaintiff has. Therefore, Defendants ask for the Court's protection in denying Plaintiff's demands. The Defendants further respectfully request that the court grant the Defendants' Cross-Motion, compelling Plaintiff to comply with the standard discovery requests made by Defendants.

## BRIEF STATEMENT OF THE CASE

Genworth is a global financial security firm with millions of dollars in annual revenue. The Defendants were formerly employed at Genworth, either as financial advisors or as sales assistants to those advisors. None of the Defendants ever signed a non-competition or non-solicitation agreement with Genworth.

In the Summer of 2009, the Defendants resigned from Genworth and opened their own company, TJT Capital Group, LLC ("TJT Capital"). After they opened TJT

Capital, the Defendants contacted their clients, over time, using their memory and publically-available contact information through sources such as phone directories and internet searches. In fact, when recently deposed, James Cook, was easily able to recall detailed information about hundreds of his clients.[7]

With no non-solicitation or non-competition agreements, and with demonstrative proof being offered by the Defendants that they did not use (or need to use) any Genworth documents or information to solicit customers, this is a case that could likely be resolved in a single conference with the Court.

Unlike Genworth, TJT Capital is a small, fledgling company with limited resources. TJT Capital cannot afford to go "toe-to-toe" in protracted litigation with Genworth. Plaintiff's pending Motion is an apparent attempt by Plaintiff to impose additional expenses on TJT Capital. Moreover, the Motion has been filed by a party that has, itself, failed to produce responses and documents to the reasonable, standard discovery requests made by Defendants. Defendants have imaged their computer devices, and they are in the process of searching those images for relevant, reasonably accessible information. Importantly, and contrary to the allegations made in Plaintiff's Motion, nothing has been intentionally deleted from any of Defendants' computer devices. Defendants, as employees and owners of a newly formed company, are hardly in the position to spend thousands of dollars during the discovery phase of this litigation simply because Plaintiff has chosen to create an issue where none exists.

A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
MAILING ADDRESS
PO BOX 5315
PRINCETON, NJ 08543-5315

---

[7] When asked by Plaintiff's counsel to identify his clients from memory, Mr. Cook did exactly that, for approximately 3 hours.

**DEFENDANTS' AND THIRD PARTY PLAINTIFFS' OPPOSITION TO PLAINTIFF'S AND THIRD PARTY DEFENDANT'S EXPEDITED MOTION TO COMPEL FORENSIC IMAGING OF DEFENDANTS' COMPUTERS, ORDER FOR PRESERVATION OF EVIDENCE, ORDER FOR PRODUCTION OF EVIDENCE, <u>APPOINTMENT OF NEUTRAL FORENSICS EXPERT, AND SANCTIONS</u>**

Plaintiff Genworth Financial Management ("Genworth") and Third Party Defendant Gurinder Ahluwalia ("Ahluwalia") have moved before this Court: (1) to compel forensic imaging of the Defendants' computers; (2) for an order for preservation of evidence; (3) for an order for production of evidence; (4) for the appointment of a neutral forensics expert; and (5) for sanctions. Because each of the requests made through Genworth's and Ahluwalia's motion is either unnecessary or without merit, Defendants Timothy McMullan, James Cook, Timothy McFadden, Karen Bazon, Tamara Rivera, and TJT Capital Group, LLC, and Third Party Plaintiffs Timothy McMullan, James Cook, Timothy McFadden, and TJT Capital Group, LLC respectfully request that the Court deny the Motion.

## STATEMENT OF FACTS

On Friday, February 12, 2010, Onsite IT Consulting traveled to the offices of TJT Capital and made images of Defendants' computer devices. *See, eg.*, MacDonald Decl. Then, on Wednesday, February 17, 2010, Onsite IT Consulting again traveled to the offices of TJT Capital in order to make forensic images of the business laptops used by Mr. McMullen, Mr. Cook, Mr. McFadden. Defendants are currently in the process of searching the imaged devices for relevant, non-privileged information that is reasonably accessible.

Plaintiff, in its Motion, make reference to Defendants' request, while employed by Genworth, for DVD copies of Genworth's Automated Contact Tracking ("ACT")

A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
MAILING ADDRESS
PO BOX 5315
PRINCETON, NJ  08543-5315

database. While Defendants do not dispute that such requests were made, Defendants have repeatedly denied, at times under oath, that they removed any such information from Genworth in order to use it on behalf of their new employer, TJT Capital. Additionally, James Cook, during his deposition on January 8, 2010, in response to repeated questioning by counsel for Plaintiff inquiring whether he emailed or removed any lists of customer contact information from Genworth while employed by Genworth, stated that on several occasions before the fall of 2008 he emailed customer contact information to his personal email account, as was common practice among Genworth's financial advisors, so that he could work from remote locations. *See* Deposition Transcript of James Cook ("Cook Dep. Tr.") at pp.143-46 (January 8, 2010), the relevant portions of which are attached as Exhibit "B" to the MacDonald Decl. Furthermore, Mr. Cook testified that the only client list he had retained, a list he had sent to his personal email account in the fall of 2008, was deleted before he resigned from Genworth. *See* MacDonald Decl. Exhibit "B," Cook Dep. Tr. 151:4-12.

Defendants, despite Plaintiff's implications, did not remove from Genworth any customer lists or client contact information when the resigned from Genworth. Instead, Defendants recalled from memory as many of their clients as they could, located those clients' contact information using publicly available sources, such as telephone directories and the internet, and then contacted their clients. *See* MacDonald Decl. Exhibit "B," Cook Dep. Tr. 222:7-25; 223-1-25; 225:20-23. During his deposition on January 8, 2010, James Cook recalled and listed, from memory, hundreds of his clients, including details regarding where each client lived and worked. *See, e.g.*, MacDonald Decl. Exhibit "B," Cook Dep. Tr. 8:16.

Finally, while Plaintiff complains about the lack of production of ESI, Defendants have produced ESI. Specifically, Defendants produced more than fifty pages of emails regarding their contacts with Robert Brinker and Mary Jo Zandy, as well as emails between Defendants and clients or prospective clients, and client account management documents. Defendants also produced hundreds of pages showing internet searches they conducted for client contact information. Furthermore, Plaintiff, itself, has failed to produce substantial portions of the ESI that has been requested of it. In fact, the more than fifty pages of email documents produced by Defendants exceeds the ESI produced by Plaintiff thus far.

## DISCUSSION

### I. Defendants Have No Legal Requirement to Conduct Forensic Imaging or To Pay for A Neutral Forensics Expert.

#### A. Plaintiff Has No Entitlement To the Relief It Seeks

Neither Fed. R. Civ. P. 34 nor any other rule requires Defendants to conduct the forensic imaging of their computer devices requested by Plaintiff. Nor do the rules require Defendants to retain the services of a computer forensic expert. In essence, Plaintiff's argument is that because: (1) Plaintiff wants something (not required by the rules); and (2) Defendants did not provide them with what they wanted; and (3) despite the fact that Plaintiff itself is not in compliance with the most basic of discovery obligations, Plaintiff should nonetheless be granted the relief it seeks, and that it should also be awarded sanctions. Plaintiff's argument is without merit. At best, the Plaintiff has proffered an argument for why it wants something for which there is no entitlement in the rules. As stated above in this brief, Rule 34 does not simply, or as a matter of course, grant the type of discovery relief sought by Plaintiff. Instead, Rule 34 and the

Comments thereto, together with Rule 26(b)(2)(B), strongly suggest that a court's ruling on such requests is discretionary and should take into account substantive considerations of the burden and expense of the request. Therefore, Plaintiff is not entitled to the relief it seeks; instead, such relief is entirely within the discretion of the Court to grant or deny.

### B. Plaintiff Has Not Proffered a Sufficient Basis with Which to Justify Its Demands

Absent from Plaintiff's Motion is any supported or valid allegation that would justify the burdensome, costly relief it now seeks. The appointment of a costly "neutral" computer forensic expert would require an extraordinary factual showing to justify. Plaintiff has made no such showing. In fact, the evidence indicates that Plaintiff's requested relief is not necessary. During his deposition, Mr. Cook gave specific, detailed testimony about his clients, from memory, for approximately three hours. As a result, the only recent factual revelation in the case was that the Defendants had no actual need of Genworth's client contact information in order to contact their clients. The ability to recall, from memory, client names, locations, and occupational history shows that Defendants did not need to remove from their former employer electronically stored information regarding their customers. This fact hardly supports Plaintiff's rationale for demanding the appointment of a neutral computer expert and instead supports the position that such relief is unnecessary.

Additionally, the Comment to Rule 34 suggests that the party requesting such an expert may be required to bear the financial burden of retaining the expert. To date, however, Plaintiff has made no such offer. As a result, since Plaintiff has not offered a sufficient basis to justify the appointment of a "neutral" computer forensic expert, and

further, since Plaintiff has made no offer to pay for such expensive discovery, Plaintiff's request should be denied.

### C. Defendants Have Acted in Compliance with Reasonable Discovery Obligations.

#### 1. Defendants Have Voluntary Imaged Their Computer Devices

In an effort to resolve the pending Motion, Defendants retained the services of Onsite IT Consulting to image their office desktop computers, their laptop computers, and their servers. In fact, the imaging of these devices has already taken place. Furthermore, Defendants are also in the process of searching those imaged devices for relevant, non-privileged information that is reasonably accessible.

#### 2. Defendants Have Produced Records of Electronic Communications

In its Motion, Plaintiff complains about the lack of production by Defendants. However, the Defendants have already produced electronically stored information. Specifically, Defendants produced approximately fifty pages of emails regarding their contacts with Robert Brinker and Mary Jo Zandy, as well as emails between Defendants and clients or prospective clients, and client account management documents. In fact, the more than fifty pages of electronic communications produced by Defendants exceeds the total amount of electronic communications produced by thus far by Plaintiff.

#### 3. Unlike Plaintiff, Defendants Have Provided Responsive Interrogatory Answers, Timely Responded to Requests for Admissions, and Produced a Substantial Number of Documents in Response to Plaintiff's Document Requests.

Defendants have provided complete and accurate responses to Plaintiff's First Set of Interrogatories and to its First Request for Admissions. Additionally, Defendants

have produced more than 2,000 pages of documents, including more than fifty pages of emails and between Defendants and other individuals. By comparison, Plaintiff has failed to appropriately respond to Defendants' Interrogatories, and produced only approximately 1,500 pages of documents in response to Defendants' First Request for the Production of Documents, including only a very limited amount of electronically stored information.

> **D.** **Because (1) the Relief Sought by Plaintiffs' is Granted Only at the Court's Discretion after Weighing Substantive Considerations such as the Burden and Expense of Granting Such Relief; (2) Defendants Are Substantially Justified in Their Position; and (3) Discovery Sanctions are Not Routine, an Award of Sanctions Is Not Appropriate**

Plaintiff makes a demand for sanctions as though they have an outright entitlement to the relief it seek. It has no such entitlement. Even if the Court – after weighing the basis given by Plaintiff for in support of its request for the appointment of a neutral computer forensic expert against the burdens and costs associated with granting such a request – were to order the appointment of an expert (presumably paid for by Plaintiff), an award of sanctions would be inappropriate. Defendants have raised substantive concerns about the cost and burden associated with this type of discovery. Defendants have every right to raise these concerns with the Court.

The 1970 Amendment Notes to Rule 37 make clear that disputes over discovery are often genuine, even though they must ultimately be resolved by the courts. "In such cases, the losing party is substantially justified in carrying the matter to court." Fed. R. Civ. P. 37 (1970 Amendments Notes regarding subsection (a)(4)). Therefore, even if the requested discovery is compelled, because Defendants were substantially justified in their position, sanctions should not be awarded.

A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
MAILING ADDRESS
PO BOX 5315
PRINCETON, NJ 08543-5315

Furthermore, sanctions should not be issued because Plaintiff, itself, has failed to meet their discovery obligations under the Federal Rules of Civil Procedure, including a failure to produce electronically stored documents.

Finally, while Plaintiff's Motion gives the impression that discovery sanctions are routinely awarded, the notes to the 1970 Amendments to Rule 37 make clear that the provision requiring courts to issue sanctions if a motion has been filed has been "little used": "[o]nly a handful of reported cases include an award of expenses, and the Columbia Survey found that in only one instance out of about 50 motions decided under Rule 37(a) did the court award expenses." F.R.C.P. 37 (1970 Amendments Notes regarding subsection (a)(4)).[8] Therefore, because an award of expenses in not at all routine, and because an award of expenses is not justified here, Plaintiff's request for sanctions should be denied.

## CONCLUSION

For the foregoing reasons, Defendants/Third Party Plaintiffs respectfully request that Genworth's and Ahluwalia's Motion be denied in its entirety.

---

[8]Furthermore, Defendants note that, under Fed. R. Civ. P. 37(e), absent exceptional circumstances, sanctions are inappropriate when a party has failed "to provide electronically stored information [that has been] lost as a result of the routine, good faith operation of an electronic information system." Therefore, to the extent that any ESI has been lost due to the normal functioning of Defendants' computer system, the failure to produce such information is not sanctionable because Plaintiff has not, and cannot, show that exceptional circumstances exist.

A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
MAILING ADDRESS
PO BOX 5315
PRINCETON, NJ  08543-5315

### DEFENDANTS'/THIRD PARTY PLAINTIFFS' CROSS-MOTION TO COMPEL PRODUCTION OF DOCUMENTS, TO COMPEL MORE SPECIFIC ANSWERS TO INTERROGATORIES, AND TO COMPEL THE DEPOSITIONS OF <u>ALEXANDER OVERKAMP AND TODD D'AGOSTINO</u>

Defendants hereby cross-move before this Court for an order: (1) compelling Genworth and Ahluwalia to produce documents requested in Defendants'/Third Party Plaintiffs' First Request for Production of Documents, including production of a statement indicating which produced documents are responsive to each of the requests; (2) compelling Genworth and Ahluwalia to provide more specific responses to Defendants'/Third Party Plaintiffs' First Set of Interrogatories; and (3) compelling the depositions of Alexander Overkamp and Todd D'Agostino ("Cross-Motion").

### PRELIMINARY STATEMENT

Plaintiff provided woefully non-responsive answers to Defendants' Interrogatories. Plaintiff has also ignored Defendants' repeated requests that Plaintiff provide more specific responses to their First Set of Interrogatories. Similarly, as of the date of this writing, Plaintiff has failed to produce documents in response to the vast majority of the document requests made in Defendants' First Request for Production of Documents. In fact, Plaintiff's document production consists primarily of the individual defendants personnel files maintained by Genworth and of Genworth's employee and compliance manuals. Finally, Plaintiff has ignored, rescheduled, and/or abruptly cancelled the scheduled depositions of Todd D'Agostino and Alexander Overkamp – both of whom are Genworth employees. Plaintiff currently refuses to reschedule the depositions. This is despite the fact that Defendants produced defendants James Cook and Karen Bazon for depositions almost two months ago.

## STATEMENT OF FACTS

On December 4, 2009, Defendants served their First Request for Production of Documents on Plaintiff.  A true copy of the First Document Requests is attached as Exhibit "C" to the MacDonald Decl.  On January 8, 2010, Plaintiff served its responses and objections.  A copy of the responses to the First Document Requests is attached as Exhibit "D" to the MacDonald Decl.  Also on January 8, 2010, Plaintiff transmitted 1,219 pages of responsive documents, most of which consisted of Defendants' human resources files and of Genworth's employee manuals and handbooks.  *See* January 8, 2010 letter from Brad Bloodworth to Thomas Lewis, a copy of which is attached as Exhibit "E" to the MacDonald Decl.

In its responses and objections to Defendants' First Request, Plaintiff improperly objected to a great many of Defendants' document requests.  Plaintiff also failed to produce large quantities of responsive documents.  Additionally, Plaintiff failed to indicate which of the produced documents were responsive to each of Defendants' requests.  As a result, on January 13, 2010, Defendants sent to counsel for Plaintiff a letter requesting that Plaintiff correct the deficiencies, produce all responsive documents, and indicate as to which requests the produced documents are responsive.  *See* January 13, 2010 letter from Thomas Lewis to Brad Bloodworth, a copy of which is attached as Exhibit "F" to the MacDonald Decl.  Plaintiff did not timely respond to this correspondence, and it has yet to produce all of the requested responsive documents, or indicate which documents are responsive to each of Defendants' requests.   Not having heard from Plaintiff, on January 15, 2010, Defendants sent an additional, more

-14-

detailed deficiency letter to Plaintiff's counsel. *See* January 15, 2010 letter from Thomas Lewis to Brad Bloodworth, a copy of which is attached as Exhibit "G" to the MacDonald Decl.

Then, on January 27, 2010, Plaintiff produced an additional 308 pages of documents. *See* January 27, 2010 letter from Rosetta Kromer to Thomas Lewis, a true and correct copy of which is attached as Exhibit "H" to the MacDonald Decl. However, even this additional production failed to properly remedy the deficiencies noted in Defendants' January 13th and 14th, 2010 letters.

On February 8, 2010, Plaintiff indicated that it intended to produce additional documents collected after a review of its electronically stored information. *See* February 8, 2010 letter from Brad Bloodworth to Thomas Lewis, a copy of which is attached as Exhibit "I" to the MacDonald Decl. However, to date, Plaintiff, despite repeated requests, has failed to correct its improper objections, has failed to produce significant amounts of responsive documents, including documents evidencing relevant electronic communications, and has failed to indicate to which of Defendants' requests its produced documents are responsive.

Similarly, Defendants served on Plaintiff their First Set of Interrogatories on December 4, 2009. A copy of Defendants' First Set of Interrogatories is attached as Exhibit "J" to the MacDonald Decl. Plaintiff provided its responses to the First Interrogatories on January 8, 2010. A copy of Plaintiff's responses are attached as Exhibit "K" to the MacDonald Decl. However, in its answers, Plaintiff failed to appropriately or adequately respond or object to many of the interrogatories. On January 15, 2010, Defendants sent a letter to Plaintiff's counsel requesting that it

correct the interrogatories' deficiencies.  *See* MacDonald Decl., Exhibit "G," January 15, 2010 letter from Thomas Lewis to Brad Bloodworth.  Since receiving Defendants' letter, Plaintiff has repeatedly promised to supply more specific responses, but in the seven weeks since receiving the letter, it has failed to do so.

Finally, on January 28, 2010, Defendants served on counsel for Plainitff notices seeking deposition testimony from Alexander Overkamp on February 10, 2010, and from Todd D'Agostino on February 11, 2010.  The subpoenas and deposition notices for Alexander Overkamp and Todd D'Agostino are attached as Exhibits "L" and "M," respectively, to the MacDonald Decl.  Both Mr. Overkamp and Mr. D'Agostino are employees of Genworth, and both are believed to have knowledge regarding the Defendants' defenses and counterclaims.

However, even before serving these deposition notices, counsel for Defendants had attempted, on at least two occasions, to confer with counsel for Plaintiff in order to secure deposition dates for certain Genworth employees.  *See* January 13, 2010 letter from Thomas Lewis to Brad Bloodworth, a copy of which is attached as Exhibit "N" to the MacDonald Decl.; and the January 19, 2010 letter from Thomas Lewis to Brad Bloodworth, a copy of which is attached as Exhibit "O" to the MacDonald Decl.  Plaintiff, however, never saw fit to respond to any of Defendants' informal requests to depose Genworth employees.

After receiving the subpoenas to depose Mr. Overkamp and Mr. D'Agostino, Plaintiff waited until February 8, 2010, to respond, and at that time informed Defendants that the deponents would not be produced on the requested dates.  *See* February 8, 2010 email from Brad Bloodworth to Thomas Lewis, a copy of which is attached as

A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
MAILING ADDRESS
PO BOX 5315
PRINCETON, NJ 08543-5315

STARK & STARK

Exhibit "P" to the MacDonald Decl.  After telephone conferences between counsel for

Plaintiff and counsel for Defendants, it was agreed that Mr. Overkamp would be

deposed on February 25, 2010.  When Defendants later called to confirm the

depositions, they were told that Plaintiffs were in the process of confirming Mr.

Overkamp's availability for deposition on that date.  However, on February 18, 2010,

Plaintiff, despite its previous representations to the contrary, abruptly informed

Defendants that it would not be producing Mr. Overkamp, "[i]n view of TJT's failure to

produce electronic documents and Genworth's pending motion to compel, we must

reschedule Mr. Overkamp's deposition. . . .  It seems pointless to schedule this

deposition until discovery is further along."  *See* February 18, 2010 email from Bradley

Bloodworth to John MacDonald, a copy of which is attached as Exhibit "Q" to the

MacDonald Decl.  This was entirely disingenuous, since the Overkamp deposition had

been agreed to in a conference call after the Plaintiff's pending Motion had been filed,

and further since Defendants had been told that the only hold-up with the deposition

was to confirm Mr. Overkamp's availability on February 25, 2010.[9]  Notably, Defendants

had already produced two parties, James Cook and Karen Bazon, for deposition on

January 7 and 8, 2010, at a time when discovery was even less far along.

A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
MAILING ADDRESS
PO BOX 5315
PRINCETON, NJ 08543-5315

[9]Mr. Overkamp's availability should not be a difficult obstacle to overcome; he both lives in and works in Connecticut.

-17-

**DISCUSSION**

I.     **Because Plaintiff has Failed to Comply with its Discovery Obligations, Defendants' Cross-Motion Should Be Granted and Plaintiff Should Be Compelled: (1) to Produce All Documents Requested Through Defendants' Document Requests, Including any Electronically Stored Documents, Including a Specification of Which Requests the Produced Documents Are Responsive to; (2) to Produce More Specific Responses to Defendants' Interrogatories; and (3) to Produce Alexander Overkamp and Todd D'Agostino for Deposition**

Plaintiff has failed to meet its obligations under the Federal Rules of Civil Procedure 26, 30, 33, 34, and 37 by failing to produce documents responsive to Defendants' Document Requests, by failing to specify which documents are responsive to each of Defendants' First Document Requests, by failing to provide more specific responses to Defendants' First Interrogatories, and by refusing to produce Alexander Overkamp or Todd D'Agostino for deposition.

Specifically, as indicated in their January 15, 2010 letter to counsel for Plaintiff, Defendants requested that Plaintiff provide more specific responses to Interrogatory Numbers 1 through 19. Additionally, also in their January 15, 2010 letter, Defendants requested that Plaintiff produce documents responsive to the vast majority of the document requests made in Defendants' First Document Requests, in response to which Genworth and Ahlwalia produced only a very limited amount of documents and made dozens of improper objections.

Finally, despite numerous attempts to schedule the deposition of Alexander Overkamp and Todd D'Agostino, both employees of Genworth, Plaintiff has repeatedly, and without justification, postponed, delayed, and/or cancelled the deposition.

Therefore, an order is required to compel Plaintiff's compliance with the relevant discovery rules.

**II.    Because Defendants' Were Forced to File this Cross-Motion to Compel Plaintiff to Comply with Its Most Basic Discovery Obligations, Sanctions are Justified.**

Because Plainitff failed to comply with the Federal Rules of Civil Procedure regarding discovery, and because Defendants were forced to file this Cross-Motion in order to ensure compliance with the relevant Rules, discovery sanctions, in the form of the costs and fees associated with the filing of this Cross-Motion, are warranted under F.R.C.P. 37(a)(5) (stating that "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion").

This Cross-Motion for sanctions is distinguishable from Plaintiff's Motion requesting sanctions in at least one key respect.  Plaintiffs seek sanctions for Defendants' position regarding discovery to which Plaintiff has no entitlement.  Stated differently, Defendants' position was "substantially justified" regarding Plaintiff's request that Defendants retain a "neutral" computer forensic expert.  *See* Fed. R. Civ. P. 37 (Comments to 1970 Amendments to Subdivision (a)(4).   Because Plaintiff is not entitled to the relief request through its Motion and because Defendants' position regarding Plaintiff's requested discovery is substantially justified, the Court must weigh various factors before determining whether to grant sanctions in response to Plaintiff's Motion.  By contrast, Defendants' Cross-Motion is based on Plaintiff's repeated failure to produce witnesses for deposition, its failure to produce documents, and its failure to produce responsive interrogatory answers.  The rules regarding Defendants'

A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
MAILING ADDRESS
PO BOX 5315
PRINCETON, NJ  08543-5315

entitlement to their requests are clear, and Plaintiff's position in withholding responses to those requests is not substantially justified. Therefore, Defendants' respectfully request that the Court grant their request for sanctions.

## CONCLUSION

For the foregoing reasons, Defendants/Third Party Plaintiffs respectfully request that their Cross-Motion be granted, that Plaintiff and Third Party Defendant be compelled to comply with the relevant Rules regarding discovery, and that Plaintiff and Third Party Defendant be sanctioned for their non-compliance thus far.

The Defendants Timothy McMullan, James Cook, Timothy McFadden, Karen Bazon, Tamara Rivera and TJT Capital Group, LLC

The Third Party Plaintiffs Timothy McMullan, James Cook, Timothy McFadden and TJT Capital Group, LLC

By    */s/ John E. MacDonald*
        John E. MacDonald (CT Fed. Bar No. 14853)
        Stark & Stark, PC
        993 Lenox Drive, Bldg 2
        Post Office Box 5315
        Princeton, New Jersey 08543-5315
        Tele: (609) 895-7321
        Fax: (609) 895-7395
        jmacdonald@stark-stark.com

STARK & STARK

## CERTIFICATION

I hereby certify that on February 26, 2010, a copy of the forgoing Opposition and Cross-Motion was electronically filed.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing though the Court's CM/ECF System.  Courtesy copies are also being e-mailed on this date to counsel for the Plaintiff and Third Party Defendant, Bradley W. Bloodworth, Esquire, PAUL, HASTINGS, JANOFSKY & WALKER LLP, 875 15th Street N.W.,Washington, DC 20005.


By ___/s/ *John E. MacDonald*_____
John E. MacDonald (CT Fed. Bar No. 14853)

A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
MAILING ADDRESS
PO BOX 5315
PRINCETON, NJ  08543-5315

G:\docs\LIT\TBL\TJT CAPITAL\Genworth\Motions\Forensic Imaging\Opp. To Mot. For Forensic Imaging Ver.3.wpd