UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GENWORTH FINANCIAL WEALTH MANAGEMENT, INC., | : : : | Civil Action No. 3:09-CV-1521-VLB |
| Plaintiff, | : : : : | **PLAINTIFF'S AND THIRD PARTY DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL FORENSIC** |
| v. | : : | **IMAGING OF DEFENDANTS' COMPUTERS, ORDER FOR** |
| TIMOTHY MCMULLAN, JAMES COOK, TIMOTHY MCFADDEN, KAREN BAZON, TAMARA RIVERA and TJT CAPITAL GROUP, LLC, | : : : : | **PRESERVATION OF EVIDENCE, ORDER FOR PRODUCTION OF EVIDENCE, APPOINTMENT OF NEUTRAL FORENSIC EXPERT, AND SANCTIONS** |
| Defendants. | : : | **AND** |
| TIMOTHY MCMULLAN, JAMES COOK, TIMOTHY MCFADDEN, AND TJT CAPITAL GROUP, LLC, | : : : | **PLAINTIFF'S AND THIRD PARTY DEFENDANT'S OPPOSITION TO DEFENDANTS'/THIRD PARTY** |
| Third-Party Plaintiffs, | : : | **PLAINTIFFS' CROSS-MOTION TO COMPEL PRODUCTION** |
| v. | : : : | **OF DOCUMENTS, TO COMPEL MORE SPECIFIC ANSWERS TO** |
| GURINDER AHLUWALIA, | : : : | **INTERROGATORIES, AND TO COMPEL THE DEPOSITIONS OF** |
| Third-Party Defendant. | : : : | **ALEXANDER OVERKAMP AND TODD D'AGOSTINO AND SANCTIONS** |
| | : | March 3, 2010 |

      Plaintiff Genworth Financial Wealth Management, Inc. ("Genworth") and Third-Party Defendant Gurinder Ahluwalia (referred to herein collectively as "Plaintiff"), submit this consolidated memorandum, which serves as both a reply in support of their motion to compel forensic imaging, preservation of evidence, and sanctions, and a memorandum in opposition to Defendants' cross-motion to compel certain evidence from Genworth.

LEGAL_US_W # 64018644.2

**PLAINTIFF'S AND THIRD PARTY DEFENDANT'S REPLY
IN SUPPORT OF MOTION TO COMPEL**

## I. PRELIMINARY STATEMENT

Electronic evidence extremely damaging to Defendants -- produced just last week by the Schwab Corporation ("Schwab") -- puts the lie to Defendants' repeated protests that Court intervention is "not necessary" to ensure the preservation of Defendants' evidence in this case. It is now undeniable that Defendants have withheld, and failed to appropriately preserve, critical responsive documents -- documents that Defendants unquestionably knew resided in their personal/home email accounts, and that they knew would establish Plaintiff's case against them if produced. The documents produced by Schwab prove, among other things, that Defendants, often working from personal/home email accounts:

- Sent to non-party Schwab PCG confidential client information belonging to Genworth in the months before Defendants left Genworth, in order to obtain assistance in transferring these clients to their competing business, TJT;

- Sent to Schwab Defendants' detailed business plan, which was based upon transferring Genworth clients to TJT swiftly upon their planned departures, creating a clear revenue opportunity for Schwab and TJT;

- Sent Schwab a confidential and proprietary list of asset holdings owned by Genworth PCG clients, again to enable TJT to arrange for the unauthorized transfer away of Genworth accounts;

- Provided Schwab with confidential information concerning hundreds of Genworth PCG accounts that exactly matches data contained in Genworth's proprietary TNET database, shortly after their departures from Genworth;

- Actively communicated with Schwab over a period of 7 months -- from December 2008 to June 2009 -- to devise detailed plans, and obtain pre-clearance of account holdings from Schwab, enabling the rapid pirating of Genworth PCG clients for transfer to a Schwab-based custodial platform and servicing by TJT.

More than 100 emails were produced by Schwab, in response to Plaintiff's subpoena seeking: "All documents related to TJT Capital, LLC, its Principals, Timothy McMullan, James Cook, and Timothy McFadden, or its employees Tamara Rivera and Karen Bazon."

Defendants have produced *none* of this correspondence in this litigation to date -- they produced *zero* emails between Defendants and Schwab. Defendants obviously know their own history in dealing with Schwab, and are aware of the voluminous email traffic among McMullan and Schwab. The use of personal/home email accounts apparently furthered Defendants' plan to facilitate client transfers while remaining employed by Genworth, and concealing their intentions. The telling discovery omissions by Defendants are coupled with misleading statements from Defendants that they "did not use (or need to use) any Genworth documents or information to solicit customers." Defs. Br. at 5. In fact, the evidence confirms that Defendants are, to this date, actively soliciting business from Genworth clients, including from individual clients whom Defendants themselves never served while at Genworth, and thus could not realistically "remember." 2/25/10 Declaration of Jeffrey Joseph ("Joseph Dec.") (Doc. #46) ¶ 13.[1]

In short, the record here overwhelmingly demonstrates that the relief Plaintiff seeks is required to ensure preservation of evidence and complete production from Defendants. As illustrated in Plaintiff's Motion, for six months Defendants stridently resisted preserving any electronic evidence related to this case, despite repeated

---

[1] For the convenience of the Court, a copy of the Joseph Declaration is attached hereto as Ex. A.

attempts by Plaintiff's counsel to impress upon Defendants the importance of the legal requirement that they preserve evidence. Defendants' sole response is their assertion that they have now "voluntarily imaged" their computers. Defs. Br. at 10. Nonsense. Defendants deliberately ignored multiple entreaties, and refused to agree to preserve evidence, and only now claim that they arranged for any computers to be imaged on February 12, 2010. Even to this date, Defendants have not represented that they imaged their home computers, or captured personal emails (*e.g.*, Comcast accounts) to which they admit sending Genworth's client information. Defendants also have no response to Plaintiff's observation that their failure for six months to preserve electronic evidence has almost certainly resulted in the computers automatically overwriting potentially relevant evidence.

Notwithstanding their obvious discovery abuses, Defendants ask the Court for the benefit of the doubt, offering at this belated juncture that they are "in the process of" searching unidentified, imaged devices for relevant, non-privileged information that is "reasonably accessible." They fail to identify what they consider to be "reasonably accessible," nor do they explain how it possibly could be that any simple source -- like a computer, a hard drive, a jump drive, CD/DVD, or Defendants' active business databases -- could be *in*accessible as defined and applied in this Circuit. They fail to represent that they preserved or will be producing any metadata, and yet offer no response at all to Plaintiff's arguments illustrating exactly why metadata, and each of the forensic layers sought in Plaintiff's Motion, is so critical to this case. Equally glaring an omission from Defendants' papers is any discussion of their Junxure database, or a representation that Defendants will be producing critical data regarding clients moved to

TJT.  To the contrary, the impression is left that Defendants have no intent to produce this data.

Plaintiff and the Court are being asked simply to *trust* that Defendants will make a very belated, but thorough and competent production of relevant electronic data and emails from all sources, including the metadata and the multiple layers of forensic evidence that have been requested.  But given the history of Defendants' past misrepresentations and noncompliance, absent independent forensic examination of Defendants' business and home computers, including emails, documents, databases, shared drives, and all other sources, the Court will have no assurance that Defendants' discovery obligations will be met here.  *See Pension Committee of the Univ. of Montreal et al. v. Banc of America Securities et al.*, 05 CIV. 9016 (SAS), 2010 U.S. Dist. Lexis 4546 at *13 (S.D.N.Y., Jan. 15, 2010) (Scheindlin, J.) (the court has the obligation to ensure that the judicial process is not abused).

Defendants' representation that "Neither Fed. R. Civ. P. 34 nor any other rule requires Defendants to conduct the forensic imaging of their computer devices requested by Plaintiff" is truly shocking.  Defs. Br. at 8.  The law has been clear for at least a decade that preservation of computer evidence is required by Federal Rule 34, and that imaging computer devices is the best way to preserve all potentially relevant data on computers consistent with that preservation obligation.  *See* Mot. to Compel, at 6 (citing cases).  *See also Pension Committee of the Univ. of Montreal*, 2010 U.S. Dist. Lexis 4546.  Equally untenable is the assertion that Defendants should be able to escape their discovery and evidence preservation obligations because they do not have the money to comply.  Defendants have diverted millions of dollars in client

accounts from Genworth, have been obtaining fees and other charges from those stolen clients, and must be held to their minimal discovery obligations in this litigation.

The facts and law overwhelmingly warrant granting Plaintiff's motion.

## II. DISCUSSION

### A. Documents Produced by Schwab Reveal That Defendants Sent Client Lists and Data from Genworth's Proprietary TNET System to Schwab, and Establish that Defendants Have Failed to Preserve, Search, and/or Produce Critical Documents

Genworth now knows that among the evidence that should already have been provided by Defendants in this case are documents relating to their dealings with Schwab to pre-clear a path to solicit and divert Genworth's clients, even before they left Genworth's employ. Schwab -- not Defendants -- produced emails establishing that, while Defendants were still working for Genworth, Defendants sent to Schwab confidential Genworth PCG information from a TNET database[2] associated with Genworth's custodial trust company without authorization. Schwab's production reveals:

- A TJT business plan Defendants provided Schwab, which states that in "Phase I" of their plan, they expected to transfer more than 85%-90% of more than 2,000 Genworth accounts to Schwab and stating in Phase II of their plan, they would "continue to engage our current list of qualified prospects." (2/25/10 Declaration of Bradley Bloodworth ("2/25/10 Bloodworth Dec.") (Doc. #47), Ex. M at Bates # CS000416).[3] Since all

---

[2] The TNET database contains complete current contact and portfolio information for each account under management, including client names, phone numbers, contact information, account performance, and portfolio management history. *See* 2/25/10 Plaintiff's Memorandum of Law in Support of Motion for Emergency Relief, Immediate Temporary Restraints and Expedited Discovery, at 8 (*See also* Joseph Dec. ¶ 6, attached as Ex. A)

[3] For the convenience of the Court, referenced exhibits to the 2/25/10 Bloodworth Dec. (submitted with Plaintiff's 2/25/10 Memorandum of Law in Support of Motion for Emergency Relief, Immediate Temporary Restraints and Expedited Discovery) are attached to the 3/2/10 Declaration of Bradley Bloodworth in Support of Emergency Motion to Compel ("3/2/10 Bradworth Dec.") filed with this Memorandum, using the same exhibit letters for ease of reference between the two declarations.

- An April 29, 2009 email from McMullan to Schwab, transmitting a "sample of a few accounts" held at the Genworth-affiliated custodian. (Ex. O to 2/25/10 and 3/2/10 Bloodworth Decs.)

- A May 19, 2009 email from McMullan to Schwab, transmitting a "complete asset list" containing assets held by clients of the PCG at Genworth. (Ex. P to 2/25/10 and 3/2/10 Bloodworth Dec.)

These emails with Schwab disprove Defendants' assertion that they "did not remove from Genworth any customer lists or client contact information when the[y] resigned from Genworth." Defs' Br. at 7. Emails produced by Schwab also establish that later in August 2009, Defendants sent Schwab information concerning hundreds of Genworth client accounts, and the produced documents *exactly match* data contained in Genworth's confidential TNET database. (Ex. Q to 2/25/10 and 3/2/10 Bloodworth Decs.; Joseph Dec., ¶ 6.)

All of the April and May 2009 emails between McMullan and Schwab were sent from McMullan's private email account while McMullan was a Genworth employee. Defendants have produced only *one* email from McMullan's private email account.

Documents missing from a party's production but produced by non-parties are compelling evidence of the party's failure to preserve and produce. *See Kucala Enters., Ltd. v. Auto Wax Co.,* No. 02 C 1403, 2003 WL 21230605, at *6, 8 (N.D. Ill. May 27, 2003) ("[t]he existence of these two relevant letters [produced by a non-party] proves that there is a great possibility that more of these letters exist, or did exist at one point, and that Kucala should have maintained them"); *Tilberg v. Next Mgmt. Co.*, No. 04 CIV. 7373 (RJH RLE), 2005 WL 2759860, at *1-3 (S.D.N.Y. Oct. 24, 2005); *Playboy Enters., Inc. v. Welles*, 60 F. Supp. 2d 1050, 1051 (S.D. Cal. 1999).

Defendants' failure to produce critically relevant communications demonstrates that Defendants have at best recklessly failed to search for, and perhaps have destroyed or hidden, evidence.  A forensic examination of Defendants' computers is necessary to uncover the truth about what documents exist that Defendants have failed to produce and what documents Defendants may have destroyed.

In these circumstances, federal courts routinely appoint computer forensic experts as officers of the court to assist the parties and the court in recovering electronic evidence and retrieving deleted computer files.[4]

### B.     Defendants' Attempts to Shirk Their Preservation Obligations and the Inadequacy of Their Late Imaging Efforts Demonstrate the Urgency of the Relief Requested by Plaintiff

Defendants' representation that "Neither Fed. R. Civ. P. 34 nor any other rule requires Defendants to conduct the forensic imaging of their computer devices requested by Plaintiff" is truly outrageous.  Defs. Br. at 8.  As articulated again recently by Judge Scheindlin in the Southern District of New York, the law in this Circuit has long been clear that preservation of computer evidence is required by Federal Rule 34 and that imaging computer devices is the way to preserve all potentially relevant data on computers consistent with that preservation obligation.  *See* Mot. to Compel, at 6 (citing cases); *Pension Committee of the Univ. of Montreal*, 2010 U.S. Dist. Lexis 4546 at *2.

---

[4] *See, e.g., Antioch Co. v. Scapbook Borders, Inc.*, 210 F.R.D. 645, 646 (D. Minn. 2002) (granting motion for preservation order and to appoint a neutral forensic expert where the data that may have been deleted remained on the hard drive, but was constantly being overwritten and lost by the normal continued use of the equipment); *Simon Prop. Group L.P. v. mySimon, Inc.*, 194 F.R.D. 639, 641 (S.D. Ind. 2000) (granting motion to compel appointment of neutral expert to inspect computers, including inspection and production of deleted files); *Playboy*, 60 F. Supp. 2d at 1055; *GTFM, Inc. v. Wal-Mart Stores, Inc.*, No. 98 CIV. 7724 (RPP), 2000 WL 335558, at *1 (S.D.N.Y. Mar. 30, 2000) (granting motion to compel on-site inspection of defendants' computer records by expert chosen by plaintiff's counsel and ordering defendants to reimburse all legal and expert fees and expenses plaintiff incurred in conducting the on-site inspection).

Defendants' improper refusal to agree to preserve electronically stored information ("ESI") was highlighted in a February 9, 2010 conference call between counsel. Defendants represented that proper preservation may ultimately be too expensive for TJT. (Ex. 1 to 3/2/10 Bloodworth Dec.) Defendants' refusal ignores relevant case law from this Court concerning computers that have not been timely or properly preserved, in which the Court has recognized the importance of preserving computer data by making mirror images and searching for relevant electronic evidence in deleted space on computers. *See United States v. Triumph Capital Group, Inc.*, 211 F.R.D. 31, 48 (D. Conn. 2002) (noting that a "mirror image … is done to maintain the integrity and security of the original evidence"). Where, as here, Defendants did not make any efforts to preserve electronic evidence until February 12, at least six months after their obligation to preserve evidence arose, it can reasonably be inferred that Defendants failed to take any, or adequate, steps to issue a litigation hold or to preserve electronic evidence in any way.

Defendants' complete failure to preserve relevant electronic evidence for at least six months, and the automatic overwriting of data by their computers that necessarily results from preservation failures, does not constitute ESI "lost as a result of the routine, good faith operation of an electronic information system", as Defendants suggest. Defs. Br. at 12 n.8. The notes to the 2006 Amendments to Rule 37 relating to Rule 37(e) illuminate Defendants' wrongful failure to abide by their preservation obligation:

> The good faith requirement of Rule 37(f)[5] means that a party is not permitted to exploit the routine operation of an information system to

---

[5] Rule 37(e) currently contains the language that was previously contained in Rule 37(f) at the time of the 2006 amendments to the Rule.

> thwart discovery obligations by allowing that operation to continue in order to destroy specific stored information that it is required to preserve. When a party is under a duty to preserve information because of pending or reasonably anticipated litigation, **intervention in the routine operation of an information system is one aspect of what is often called a "litigation hold."** Among the factors that bear on a party's good faith in the routine operation of an information system are the steps the party took to comply with a court order in the case or party agreement requiring preservation of specific electronically stored information.

Michael C. Smith, O'Connor's Federal Rules – Civil Trials, 2006 Advisory Comm. Notes to Fed. R. Civ. P. 37, ¶ 3 at 1100 (2010) (emphasis added).  Defendants' refusal to preserve electronic evidence while *knowing* that their refusal was causing automatic overwriting of potentially relevant data on their computers is the exact opposite of "routine, good faith operation of an electronic information system" and is sanctionable. *See* Mot. to Compel, at 16-18.

### C. Defendants' Preservation and Production Deficiencies and Schwab's Recent Production of Evidence Damaging to Defendants Outweigh Any Minor Burden and Cost Required for Competent Production of Electronic Evidence and Forensic Examination

Rule 26(b)(2)(B) requires a party to identify what sources are not reasonably accessible due to undue burden or cost, and explain why.  Defendants have not provided any specific or evidentiary showing that a search and production of ESI in native form with all metadata and a neutral forensic examination of their computers would be unduly burdensome or costly.  *See* Mot. to Compel at 9-10 (discussing specific areas on computers that Plaintiff proposes for examination).  Rule 26(b)(2)(B) further provides that, even "if that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause."  Defendants have not provided specific facts supporting the claimed burden or cost to produce data in native format with all metadata, or to conduct a forensic examination of their

computers. Instead, Defendants rely solely on conclusory statements that the relief Plaintiff seeks is "burdensome, costly relief." Defs. Br. at 9. Such conclusory statements are insufficient to carry Defendants' burden here. Defendants' claim of undue expense also is misplaced and immaterial because imaging and preservation immediately upon anticipation of litigation at least six months ago would have been very inexpensive, on the order of $500 per computer. In any event, the expense of complying with legal obligations does not excuse Defendants' non-compliance.

Moreover, production of the emails and their attachments in native form is the *only* way to access relevant metadata that has critical importance to a case involving trade secrets. For instance, the dates of creation and author information of certain spreadsheets of Genworth's client accounts and other customer information directly impacts when, how, and which Defendant took actions to steal Genworth's proprietary and confidential information and trade secrets. The client account list spreadsheet that Schwab produced to Plaintiff in native form, for example, bears the author's name "Tim" in its *metadata* properties and a date of May 19, 2009 – two of the Defendants' first names are Tim. Defendants have not presented any evidence that production of relevant ESI in native form with all metadata would be burdensome or more costly than the arduous process of converting emails and their attachments to pdf form.[6]

In addition, Defendants' hard copy production is inadequate. While Defendants have produced hard copy printouts of internet searches they allegedly ran for names of

---

[6] Indeed, spreadsheets converted to pdf form are often unreadable and unusable in that form. In pdf format, a spreadsheet's columns and rows often are separated across hundreds of pages, rather than accessible as one spreadsheet as originally created. Deposition witnesses will not be able to understand the columns and rows on the spreadsheets in that format. As such, production of spreadsheets only in

(continued...)

clients, the printouts do not address many of the clients that were transferred to TJT and a large number post-date the transfer of those clients' accounts. If Defendants cannot produce data relating to internet searches for client names that pre-date the client transfers – data which may have only existed in internet history or internet caches files on Defendants' computers and may have been overwritten – Defendants should be precluded from asserting the use of internet searches as a defense.

## III.    CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court issue a preservation order and a production order and appoint a neutral computer forensics expert to assist in the mirror imaging, preservation and retrieval of electronic evidence from Defendants' computers and computer media.

In addition, Plaintiff respectfully requests that the Court award sanctions at this juncture, covering Plaintiff's costs and fees in bringing their motion, and payment of the costs for a neutral forensic examiner to make mirror image copies of any of Defendants' computers not imaged by Defendants and to perform certain agreed searches and analysis to uncover potentially deleted files and other information. If a forensic review of Defendants' computers reveals that evidence has been deleted or withheld, additional sanctions will be warranted.

---

(...continued)

pdf form would not satisfy Defendants' obligations pursuant to Rule 34(a)(1)(A) to produce documents in "a reasonably usable form."

**PLAINTIFF'S AND THIRD PARTY DEFENDANT'S OPPOSITION TO DEFENDANTS' AND THIRD PARTY PLAINTIFFS' CROSS MOTION TO COMPEL MORE SPECIFIC ANSWERS TO INTERROGATORIES, AND TO COMPEL THE DEPOSITIONS OF ALEXANDER OVERKAMP AND TODD D'AGOSTINO AND FOR SANCTIONS**

I.   **PRELIMINARY STATEMENT**

The Court should strike Defendants' cross motion because Defendants failed to comply with meet and confer obligations. Furthermore, Plaintiff opposes the cross-motion because there is simply nothing to support it. Plaintiff has complied with its discovery obligations, and there is nothing meaningful to compel at this juncture that Plaintiff has not already agreed to produce. It is apparent that this cross-motion serves only as an attempt to divert attention from Defendants' discovery failures.

Plaintiff has produced far more documents than Defendants, is producing electronic documents in proper format, and is continuing to produce documents. Plaintiff has reasonably responded to interrogatory requests and deposition notices, particularly in comparison to Defendants' complete failure to provide any meaningful discovery.

II.   **STATEMENT OF FACTS**

Plaintiff has produced over 2,750 pages of documents, is continuing to produce documents as they are reviewed, and has produced electronic documents in electronic format so that Defendants can view the documents' metadata, as is appropriate. Plaintiff's latest production was February 24, 2010, before Defendants' cross-motion was filed.

Defendants, on the other hand, produced only 27 discrete email strings, and did not produce them in electronic format, thereby denying Plaintiff valuable metadata. All

but 170 pages of Defendants' production are forms showing transfers of client accounts from Genworth to Schwab or hard copy printouts of Google internet searches.

The contrast between the parties' discovery conduct here is extraordinary. Plaintiff raised Defendants' discovery failures in a December 29, 2009 letter. (Ex. 2 to 3/2/10 Bloodworth Dec.) In that letter, Plaintiff's counsel detailed how Defendants "have failed to respond, or feigned response, to most of Genworth's discovery requests." *Id.* at 1. At the resultant January 7, 2010 meet and confer, Defendants' counsel indicated that Defendants would produce additional discovery responses. To date, Defendants have not supplemented their interrogatory responses and have produced no additional documents, other than some hard copy printouts of Google searches. (*See* January 11, 2010 letter from Victoria Cundiff to Thomas Lewis, Ex. 3 to 3/2/10 Bloodworth Dec.; January 20, 2010 email from Victoria Cundiff to Thomas Lewis, Ex. AA to 2/25/10 and 3/2/10 Bloodworth Decs.) Defendants' legion failures in discovery are outlined above in Plaintiff's reply, and in its initial Memorandum in Support of its Motion to Compel.

Defendants set forth their concerns regarding Plaintiff's discovery responses in a January 15, 2010 letter. Plaintiff responded that very same day and several subsequent times, including in a February 8, 2010 letter. (Ex. 4 to 3/2/10 Bloodworth Dec.) In that letter, Plaintiff offered to "meet and confer regarding any outstanding concerns [Defendants] may have." *See id.* at 1. Defendants did not request to meet and confer or raise any outstanding concerns about Plaintiff's production until this cross-motion.

As described in Plaintiff's February 8, 2010 letter, Plaintiff has produced documents in response to Defendants' many interrogatory requests that merely ask Plaintiff to summarize documents. Additionally, Plaintiff supplemented its interrogatory

responses based largely on its continued document review and responses from non-party subpoenas, since Defendants have not produced any additional documents.

Both parties noticed depositions to occur in February or March.  *See*, in addition to those depositions identified in Defendants' cross-motion, Exhibits 5 and 6 to 3/2/10 Bloodworth Dec.  On February 9, 2010, counsel for Plaintiff and Defendants agreed, in light of Defendants' refusal to image its computers or produce electronic data, to postpone both parties' depositions and seek a discovery extension.  (Ex. 1 to 3/2/10 Bloodworth Dec.)   Defendants further agreed to update Plaintiff regarding its preservation and production progress and Plaintiff *tentatively* agreed to provide Alex Overkamp for deposition.  *Id.*

Ten days later, on February 19, 2010, Defendants had provided Plaintiff scant information regarding its preservation of electronic data and, despite multiple reminders from Plaintiff, no information regarding what electronic data it intended to review or produce. (Ex. 7 to 3/2/10 Bloodworth Dec.)  Accordingly, Plaintiff postponed the tentative Overkamp deposition, explaining that Defendants' had "promis[ed] to address [Defendants'] deficient document production for weeks, but have failed to do so.  Until those failures are rectified and we receive [Defendants] discovery, we can't prepare for depositions."  Furthermore, Plaintiff stated it would "be happy to make Overkamp available once the discovery dispute is resolved."  (Ex. 7 to 3/2/10 Bloodworth Dec.)

### III. DISCUSSION

#### A. The Court Should Strike The Motion Because Defendants Failed To Comply With Meet And Confer Obligations

Local Rule 37(a) obligates counsel to confer prior to engaging in motion to compel practice.  Local Rule 37(a) provides:

> No motion pursuant to Rules 26 through 37, Fed. R. Civ. P. shall be filed unless counsel making the motion has conferred with opposing counsel and discussed the discovery issues between them in detail in a good faith effort to eliminate or reduce the area of controversy, and to arrive at a mutually satisfactory resolution. In the event the consultations of counsel do not fully resolve the discovery issues, counsel making a discovery motion shall file with the Court, as a part of the motion papers, an affidavit certifying that he or she has conferred with counsel for the opposing party in an effort in good faith to resolve by agreement the issues raised by the motion without the intervention of the Court, and has been unable to reach such an agreement. If some of the issues raised by the motion have been resolved by agreement, the affidavit shall specify the issues so resolved and the issues remaining unresolved.

Similarly, Federal Rule of Civil Procedure 37(a)(1) requires that a motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." This Court's Chambers Practices also require such a certification that reasonable and diligent efforts have been made to resolve the dispute.

Defendants' counsel did not make any attempt to confer with Plaintiff's counsel prior to filing his Motion, other than to generally threaten that he would file a motion to compel related to production of documents and cancelling depositions. Defendants did not seek to discuss any of the discovery issues in any detail. Nor did Defendants' counsel attach the required certification to his Motion. Defendants' refusal to abide by the meet and confer obligations of this Court and the Federal Rules merely serve to increase the expense and burden on this Court and the parties over issues that could have been resolved without Court intervention. This Court should strike Defendants' Cross-Motion.

### B. Plaintiff Has Complied With Its Discovery Obligations

Plaintiff has fully responded to Defendants' discovery concerns, and has offered several times to meet and confer with Defendants to resolve any outstanding discovery concerns they may have or, at least, to narrowly frame them for the Court.

#### 1. Plaintiff Has Reasonably Responded To Interrogatories

Although Defendants move to compel, they entirely fail to explain what they believe is legally inadequate about Plaintiff's responses.  Plaintiff responded to the interrogatories and supplemented its interrogatory responses by producing documents identified during their review of Plaintiff's documents.  As Plaintiff's document review continues and non-parties provide subpoena responses, Plaintiff will continue to supplement their interrogatory responses.  Further, Plaintiff has provided information to Defendants about its claims in additional pleadings and affidavits filed with the Court on February 25, 2010.

#### 2. Plaintiff Had No Choice But To Postpone Taking And Defending Depositions Given Defendants' Failure To Produce Meaningful Written Discovery

Defendants clearly possess, but failed to produce, highly responsive documents and responsive electronic data.  Non-party subpoena responses exposed some of Defendants' failure to produce documents, but the full extent of their failure remains unclear in part because they have refused to provide electronic data.  It was entirely reasonable for Plaintiff to seek an adjournment of this deposition while this highly responsive evidence was being withheld by Defendants, and the overall discovery schedule was being discussed (albeit never fully agreed upon).

### C. An Award Of Sanctions Against Plaintiff is Not Appropriate

Defendants' cross-motion is nothing more than an attempt to deflect attention from their own discovery failures, including their ongoing failure to preserve or produce electronic data and their failure to produce highly responsive documents. In contrast, Plaintiff has acted fairly and in a forthcoming manner regarding discovery and any delay in scheduling depositions is directly due to Defendants' discovery misconduct. Accordingly, there is nothing necessary (or even meaningful) to compel, and the Court should deny the Defendants' request for sanctions.

### **CONCLUSION**

For all of the foregoing reasons, Plaintiff respectfully requests that the Court issue a preservation order, a production order and appoint a neutral computer forensics expert to assist in the mirror imaging, preservation and retrieval of electronic evidence from Defendants' computers and computer media, and deny Defendant's cross-motion to compel production of documents, to compel more specific answers to interrogatories, to compel the depositions of Alexander Overkamp and Todd D'Agostino and for sanctions.

        THE PLAINTIFF
        GENWORTH FINANCIAL
        WEALTHMANAGEMENT, INC.

        THIRD-PARTY DEFENDANT
        GURINDER AHLUWALIA

By _____/s/_____
        ROBINSON & COLE LLP
        Mitchell L. Fishberg (ct19661)
        Elizabeth Smith (ct 19808)
        280 Trumbull Street
        Hartford, CT  06117
        E-mail: mfishberg@rc.com
        E-mail: esmith@rc.com
        Tele:  (860) 275-8338
        Fax:  (860) 275-8299

        -and-

        PAUL, HASTINGS, JANOFSKY & WALKER LLP
        Victoria A. Cundiff (phv 03712)
        75 E. 55th Street
        New York, NY 10022
        victoriacundiff@paulhastings.com
         (212) 318-6030

        -and-

        SONNENSCHEIN NATH & ROSENTHAL LLP
        Reid L. Ashinoff   *(admitted phv)*
        1221 Avenue of the Americas
        New York, NY 10020
        rashinoff@sonnenschein.com
        Tele: (212) 768-6700
        Fax: (212) 768-6800

CERTIFICATION

      I hereby certify that on 3/3/10, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

      Thomas B. Lewis, Esq.
      John E. MacDonald, Esq.
      Amy Beth Dambeck, Esq.
      Stark & Stark LLC
      993 Lenox Drive, 1st Floor
      PO Box 5315
      Princeton, NJ 08453

      Victoria A. Cundiff, Esq.
      Paul, Hastings, Janofsky & Walker, LLP
      75 East 55th Street, 1st Floor
      New York, NY  10022

      Reid L. Ashinoff, Esq.
      Sonnenschein Nath & Rosenthal LLP
      1221 Avenue of the Americas
      New York, NY 10020

                              /s/
                            Elizabeth M. Smith