UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GENWORTH FINANCIAL WEALTH MANAGEMENT, INC. | : <br> : <br> : |
| Plaintiff, | : <br> : Civil Action No. 3:09-CV-1521-VLB |
| v. | : <br> : |
| TIMOTHY MCMULLAN, JAMES COOK, TIMOTHY MCFADDEN, KAREN BAZON, TAMARA RIVERA and TJT CAPITAL GROUP, LLC. | : <br> : <br> : <br> : |
| Defendants. | : <br> : |
| TIMOTHY MCMULLAN, JAMES COOK, TIMOTHY MCFADDEN, AND TJT CAPITAL GROUP, LLC | : <br> : <br> : |
| Third-Party Plaintiffs, | : <br> : **PLAINTIFF'S AND THIRD PARTY** |
| v. | : **DEFENDANT'S REPLY TO** <br> : **DEFENDANTS' OPPOSITION TO** |
| GURINDER AHLUWALIA, | : **PLAINTIFF'S MOTION FOR** <br> : **ATTORNEYS' FEES AWARDED AS** |
| Third-Party Defendant. | : **SANCTIONS** <br> : <br> : July 20, 2010 |

Plaintiff Genworth Financial Wealth Management, Inc. ("Genworth") and Third-Party Defendant Gurinder Ahluwalia (referred to herein collectively as "Plaintiff"), respectfully submit this reply memorandum in further support of their request for attorneys' fees and in response to Defendants' Brief in Opposition ("Opposition") [Doc. No. 117].

I.  **PRELIMINARY STATEMENT**

In their Opposition, the Defendants reprise the David and Goliath theme that the Court has repeatedly rejected in light of the Defendants' persistent refusal to substantiate their claim of poverty (not to mention the revenue the Defendants receive from the $150 million of assets they manage).  More to the point, even assuming this sanction is a burden for the Defendants, they should have considered that before refusing to preserve and then destroying evidence and necessitating extensive motion practice.

The Defendants' Opposition is also confused and simply not credible.  For example, Defendants claim that 47.1 hours or $25,804.50 of travel time was impermissibly billed, when in fact <u>no travel time at all</u> was billed to Genworth or sought on the motion.  The time entries in question make clear that attorneys limited billable time to substantive work. The Defendants have apparently invented the factual basis for this objection.  There are no grounds whatsoever for this $25,804.50 reduction demanded by Defendants.

Although Defendants complain about paying hourly rates of attorneys based outside of Connecticut, the so-called "forum rule" is not applicable in this case.  Even if the rule applies to a motion for sanctions (and it does not), the Defendants' argument that the hourly rates are too high ignores a 30% fee reduction already applied by Plaintiff on this motion.  Moreover, this case involves complex issues, and according to

1

Defendants' theory overlaps in facts and circumstances with a case in New York, giving multiple objective and experience-based reasons to hire counsel from outside of the forum.

The Opposition by the Defendants is rife with incorrect and misleading statements of fact, law and basic math. Plaintiff has already discounted its lead counsels' normal fees 30% and its local counsel's fees 20%, and no further reductions are warranted.

## II.   DISCUSSION

### A.   The Forum Rule Should Not be Applied and the Retention of Paul Hastings and Sonnenschein was Reasonable

#### 1.   The Forum Rule Should Not Apply Here

As a starting point, the forum rule does not address the motion presently at issue, since the Court awarded attorneys' fees as a sanction for discovery misconduct, unlike *Simmons*, which applied statutory fee-shifting. As *Simmons* stated, the forum rule is grounded in the Second Circuit's "belief that district courts should award fees just high enough 'to attract competent counsel.'" *Simmons v. New York City Transit Authority*, 575 F.3d 170, 174-75 (2d Cir. 2009). This reflects a concern that plaintiffs may select firms with unreasonably high rates in the expectation that the other side will be stuck paying those rates. As stated by *Simmons*, the forum rule is intended to "encourage litigants to litigate with their own pocketbooks in mind, instead of their opponents'." *Id.* at 176.

That is not a concern where, as here, attorneys' fees are shifted as a sanction for Defendants' willful and unjustified misconduct causing wasteful motion practice. Genworth is paying its own attorneys, and was not incentivized to bring this case by the

expectation that evidence would be spoliated and Defendant McMullan would falsely testify before the Court, leading to sanctions.[1] Instead, Genworth hired the firms that it felt would be best suited for the litigation. *Simmons* states that a district court can apply an out-of-district rate where "it is clear that a reasonable, paying client would have paid those higher rates." *Id.* at 174. Here, that is obviously the situation because Genworth is in fact a paying client, paying more than the rates it is seeking as a sanction. The forum rule should not even apply.[2]

      2.      <u>Deviation From the Forum Rule is Warranted Here</u>

Even if the Court decided to consider the forum rule for this motion, the Defendants are also incorrect when they claim that the Court "must apply the 'forum rule'" in arriving at a reasonable hourly rate. (Opposition at 6.) Although Defendants cite *Simmons* for this proposition, *Simmons* clearly states that the forum rule is merely a presumption, and not a *per se* rule. *Id.* at 175. And here, there is ample reason to deviate from the forum rule.

As the Court has found, the Defendants fomented a putative nationwide class action filed against Genworth in the Eastern District of New York, apparently in response to being sued here for stealing trade secrets and confidential information from Genworth.[3] Genworth hired Sonnenschein Nath & Rosenthal LLP ("SNR") to defend against the class action. The lead SNR attorneys, Mr. Ashinoff and Ms. Hauser, have represented Genworth in litigation around the country for a decade, know its businesses

---

[1] Memorandum of Decision at 8-9 [Doc. No. 100].

[2] *Cf. Lawrence v. Richman Group of CT, LLC*, 660 F.Supp.2d 292, 301 (D.Conn 2009) (J. Arterton)(using forum rule as a guide when awarding sanctions).

[3] Memorandum of Decision Granting Motion for Immediate Temporary Restraints at 14-15 [Doc. No. 101].

3

and its legal and business personnel, and have substantial experience defending class actions generally and defending Genworth specifically.  They are co-chairs of SNR's National Class Action/Major Financial Litigation Practice.  Summaries of their experience are publicly available on SNR's website, www.sonnenschein.com.

After SNR was retained in the class action litigation, it quickly became clear that the Defendants were exploiting a theory of factual overlap between this case and the class action in New York, and it is further clear that the Defendants here are the source of the allegations in the class action.  The Defendants are also using the existence of the class action they instigated, and the confidential information they provided to class counsel, as an improper marketing tool.  Given these circumstances, extremely close coordination between law firms would be required from both a strategic and efficiency standpoint, and Genworth ultimately decided it would be better and more cost efficient to use one firm to handle both litigations.  Thus SNR was ultimately chosen to handle this case as well as the class action.  Ironically, the Defendants' decision to instigate a New York-based class action is a key reason Genworth is currently represented here by SNR.[4]  But more importantly, the clear overlap in the circumstances surrounding the two cases and SNR's familiarity with Genworth's operations are reasonable experience-based and objective grounds to retain SNR to represent Genworth in this case.

It was also reasonable to originally retain Paul Hastings to handle this litigation. In the course of its investigation, Genworth realized that its former employees had stolen valuable trade secrets and confidential information and in some instances had

---

[4] Despite insisting that Connecticut counsel should have been used by Plaintiff, Defendants' own counsel is from Princeton, New Jersey, well outside of this district.  Showing that actions speak louder than words, the Defendants apparently recognize the value of using a law firm that knows its specific business.

4

improperly accessed several electronic databases after their departures. Even before the spoliation of evidence, it was clear that there would be substantial forensic and e-discovery issues in the case. The case also presents damages issues requiring expert testimony, and the Defendants had rapidly transferred over $100 million in assets under management from Genworth's PCG business, making this a high stakes litigation. Given the multiple significant and complex issues raised by the case right at the outset and the substantial harm being caused to Genworth, it was objectively reasonable to hire a large full service firm like Paul Hastings to represent Genworth's interests. Victoria Cundiff, the lead attorney for Paul Hastings, has been practicing for approximately 29 years, is the chair of Paul Hastings' trade secret practice and often practices in cases involving a mix of intellectual property law and employment law. A fuller description of Ms. Cundiff's extensive experience in this area is publicly available on the Paul Hastings website. As a result, there were objectively reasonable experienced-based reasons to hire Paul Hastings as counsel in this matter.

      **B.**    **The Defendants Attack Incorrect and Inapplicable Hourly Rates**

The Defendants are also incorrect when they cite the hourly rates of Paul Hastings and SNR. (Opposition at 6.) As was clearly stated in Plaintiff's original submission in support of its attorneys' fees, both Paul Hastings and SNR reduced their standard hourly rates by 10% for the Genworth representation. Moreover, in this motion Plaintiff of its own volition applied an additional 20% reduction from its actual fees across all three law firms, to account for any time spent by SNR in getting up to speed and coordinating with co-counsel. The net effect is that Paul Hastings' and SNR's rates for purposes of sanctioning the Defendants are a full 30% less than the amounts Defendants cite. Robinson & Cole's rates, which the Defendants apparently do not

complain about, were similarly reduced by 20% for this motion.  While some of the rates requested are still somewhat above what the Defendants claim is reasonable in Connecticut, the Defendants attempt to mislead the Court (yet again) when they cite full hourly rates without noting that the fees actually sought in Genworth's motion are a full 30% less.

Relatedly, the Defendants' math and arguments are confusing and at times plainly incorrect.  For example, their blanket claim that the hourly rates should be reduced "at least 50%" to bring them in line with "local rates" is patently false.  (Opposition at 8.)  In fact, that would make the rates substantially below even what Defendants admit is reasonable.  For example, like all SNR and Paul Hastings rates, Mr. Ashinoff's normal hourly rate of $775 has already been effectively cut 30% to approximately $540.  Reducing it another 50% would make the rate $270, far below the $400 that Defendants propose as reasonable.  (Opposition at 6, stating that the hourly rates should be between $325 and $400.)  The Defendants are asking the Court to reduce the rates by 80%, far below what even they admit is reasonable.

The Defendants also wrongly imply that little was at stake on the Motion to Compel and there was no need to review documents from third parties.  (Opposition at 11, 13, 14.)  The Defendants' defense to liability was to destroy the evidence of their wrongdoing, thus preventing Genworth from proving its case.  As the Court clearly recognized, the material produced by third parties was critical to show that the Defendants had either destroyed and/or not produced relevant documents and that substantively, the Defendants had used an array of confidential information that they had misappropriated from Plaintiff. Clearly the destruction of evidence is a major issue

6

in this case and documents from third parties that proved this destruction were vital for the Motion to Compel.[5]

### C.  No Travel Time Was Billed to Genworth or Sought on This Motion

The Defendants are both legally and factually incorrect in claiming that excessive travel time was billed in connection with the April 8th hearing and that such time cannot be recovered in this Circuit. (Opposition at 9.) Incredibly, the claim that Plaintiff's counsel billed 47.1 hours and $25,804.50 of travel time for the April 8th hearing is simply fabricated by the Defendants.[6] (*Id.*) That is completely untrue and unsupported, and at least dangerously close to a violation of FRCP 11(b)(3), if not an outright violation.[7]

First of all, Genworth's Outside Counsel Policy does not allow its outside counsel to bill Genworth for travel time. Only time actually spent working can be billed. None of the three firms involved here billed travel time to Genworth in connection with this case, and no such time was submitted for reimbursement on this motion.

Second, the following are all the time entries for the attorneys who billed for attending the April 8th hearing:[8]

---

[5] Memorandum of Decision at 9 [Doc. No. 100] (recognizing that Defendant McMullan "falsely testified" at the hearing on the Motion to Compel, and that his testimony was impeached by emails Plaintiffs introduced that had been produced by third party Schwab).

[6] Defendants also wrongly assume that "Zoffer" is a typographical error and really means "Zahner"; Mr. Zoffer is in-house counsel to Genworth. (*See* Opposition at pp. 13-14.)

[7] The spurious nature of Defendants' argument is perhaps best demonstrated by their wholly unsupported claim that Robinson & Cole's attorneys purportedly billed $2,777.50 for travel time related to the motion, despite the fact that Attorneys Smith and Fishberg work out of Robinson & Cole's Hartford office, which is less than 10 minutes from the District Court in Hartford. (See Opposition at 10; see also Affidavit of Attorneys Fees and Costs at 3 (indicating that Mr. Fishberg and Ms. Smith are resident in Robinson & Cole's Hartford office). [Doc. No. 105].)

[8] Defendants also claim nine attorneys attended the hearing, but to the extent others were present, only these five billed their time. (Opposition at p. 2)

| Attorney/Firm | Description of work | Hours |
|---|---|---|
| E. Smith<br><br>Robinson & Cole | Prepare for and attend hearing on Motion to Compel and Motion for TRO. | 5.4 |
| M. Smith<br><br>Sonnenschein | Attend hearing on TRO motion and motion for protective order; review Genworth's memo of law and reply brief for letter to Magistrate re: settlement | 4.2 |
| R. Ashinoff<br><br>Sonnenschein | Present argument before Judge Bryant and participate at hearing and conferences SNR attorney team, B. Smith and D. Zoffer | 6.0 |
| S. Hauser<br><br>Sonnenschein | Hearing in Hartford on TRO and Motion to Compel, related preparation, follow-up, and strategy discussions in Court and while traveling. | 6.0 |
| B. Bloodworth[9]<br><br>Paul Hastings | Prepare for TRO and motion to compel hearing during travel from Baltimore, MD to Hartford, CT; participate in TRO and motion to compel hearing; prepare summary of same during travel from Hartford, CT to Baltimore, MD | 10.8 |

All of these entries added together do not equal the 47.1 hours about which Defendants complain, and three of the five time entries make no reference to travel, so it is unclear how the Defendants can claim these entries are 100% travel. Moreover, while the time entries by Ms. Hauser and Mr. Bloodworth use the word "travel", they both clearly state that substantive legal work was being done during that portion of their

---

[9] Mr. Bloodworth's participation was necessary because he provided affidavits in support of the motion to compel and was the person with first hand knowledge of what had been produced or not produced by Defendants and the communications with opposing counsel, including efforts to resolve the dispute.

8

travel time, so as to distinguish it from non-billable, non-working travel time (which neither firm bills to Genworth).

Third, the April 8 hearing transcript shows that the hearing began at 10:10 a.m. and ended at 3:06 p.m., with a one hour recess for lunch and one 20 minute break. Given that the attorneys naturally arrived before the proceedings began and discussed the hearing before, during and after the court appearance, time entries of 6 hours or less don't even leave the possibility of having billed time for travel.

Plaintiff did not include any time in its fee motion relating to the continued hearing on April 12, because that hearing predominantly concerned the TRO. Defendants ignore this fact and seek to have the same time billed on April 8th deducted twice: once as fictional travel time on Exhibit B and again as time spent on the TRO on Exhibit A. (See Opposition, Doc. 117, Attachment 1, seeking on both exhibits to deduct the same 5.4 entry for Elizabeth Smith of Robinson & Cole and 6.0 entry for Reid Ashinoff, 6.0 entry for Sandra Hauser and 4.2 entry for Michele Smith of SNR). This is just another example of why Defendants' attacks on the fee application have no credibility.

In addition, while the Court need not reach the legal point since no travel time was billed, the Defendants falsely claim that the *Interfaith Community* case is Second Circuit precedent holding that a party who hires counsel from outside the forum "may not be compensated for travel time, travel costs, or the costs of local counsel." (Opposition at 9.) The obvious flaw with that claim is that *Interfaith Community* is a Third Circuit opinion, whereas the Second Circuit routinely allows travel time to be recovered at least at 50% the normal rate. *See, e.g., Cruz v. Local Union Number 3*, 34 F.3d 1148, 1161 (2d Cir. 1994) (noting with approval an award of travel time at 50%

9

normal rates); *McInnis v. Town of Weston*, 458 F.Supp.2d 7 (D.Conn. 2006) (awarding travel time at full rates); *Cartier Intern. B.V. v. Gorski*, April 30, 2003, 2003 WL 25739624 (D.Conn. 2003) (awarding expert's travel time at 50%).

### D.    The Court Should Reject Unsupported Claims of Poverty

As it has previously, the Court should again give no credit or weight to the Defendants' claims of poverty and should reject their request for a payment plan. (Opposition at 19.)  First, this poverty claim is nothing more than an unsworn statement in a brief by their counsel, and is entitled to no evidentiary weight.  Second, the Court asked Defendants' counsel at the April 8th hearing to provide information about each of the Defendants' financial condition, specifically their net worth.  Although Mr. McMullan was at the hearing, the Defendants provided no evidence of their finances, either then or on this motion, yet now continue to make unsupported claims of poverty.[10]  Third, the Defendants seem to miss the point in complaining that if they cannot pay in installments "their sanction is converted into a punitive measure"; the Defendants are rightfully being punished for intentionally destroying evidence, lying to the Court under oath, and wasting the Plaintiff's time and money and the Court's time.  They should have considered the consequences before engaging in conduct that warrants sanctions.  Frankly, if the Defendants are unhappy with the burden of paying Plaintiff's attorneys' fees, then hopefully the sanctions will serve their purpose of deterring similar conduct in the future.

---

[10]  With $150 million of assets under management (Opposition at p. 18), Defendant TJT alone likely has millions of dollars of annual revenue, explaining why all of the Defendants' claims of poverty remain unsupported.  If the Defendants want this argument to even be considered, at a minimum they should file a detailed accounting of their assets, income and net worth.

**CONCLUSION**

For all of the foregoing reasons, Plaintiff respectfully requests that the Court issue an order adjudging the Defendants jointly and severally liable for $77,228.68 of attorneys' fees, or such other amount as this Court deems just and appropriate as a sanction, such amount to be paid in full within 10 business days of the day of the Order.

Dated:  July 20, 2010

                        Respectfully Submitted,

                        _____/s/_____
                        Mitchell L. Fishberg (ct19661)
                        Elizabeth Smith (ct 19808)
                        mfishberg@rc.com
                        esmith@rc.com
                        ROBINSON & COLE LLP
                        280 Trumbull Street
                        Hartford, CT  06103
                        Tele:  (860) 275-8338
                        Fax:  (860) 275-8299


                        SONNENSCHEIN NATH & ROSENTHAL LLP
                        Reid L. Ashinoff  *(phv)*
                        Sandra D. Hauser *(phv)*
                        David R. Baum *(phv)*
                        1221 Avenue of the Americas
                        New York, NY 10020
                        rashinoff@sonnenschein.com
                        shauser@sonnenschein.com
                        dbaum@sonnenschein.com
                        Tele: (212) 768-6700
                        Fax: (212) 768-6800

                        *Counsel for Plaintiff Genworth Financial Wealth Management, Inc. and Third-Party Defendant Gurinder Ahluwalia*

## CERTIFICATION

I hereby certify that on July 20, 2010, a copy of the foregoing Memorandum of Law In Reply to Defendants Opposition to Plaintiff's Motion for Attorneys' Fees Awarded as Sanctions was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

_____/s/_____
Elizabeth M. Smith