UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **GENWORTH FINANCIAL WEALTH MANAGEMENT, INC.,**<br>　　　　　　　　　　Plaintiff,<br>　　　v.<br>**TIMOTHY MCMULLAN, JAMES COOK, TIMOTHY MCFADDEN, KAREN BAZON, TAMARA RIVERA and TJT CAPITAL GROUP, LLC,**<br>　　　　　　　　　　Defendants.<br><br>**TIMOTHY MCMULLAN, JAMES COOK, TIMOTHY MCFADDEN, AND TJT CAPITAL GROUP, LLC,**<br>　　　　　　Third-Party Plaintiffs,<br>　　　v.<br>**GURINDER AHLUWALIA,**<br>　　　　　Third-Party Defendant. | Civil Action No. 3:09-CV-1521-VLB<br><br><br><br><br><br><br><br><br><br><br><br>October 4, 2010 |

PLAINTIFF'S OPPOSITION TO DEFENDANTS' AND THIRD
PARTY PLAINTIFFS' MOTIONS TO MODIFY THE JUNE 1, 2010 ORDER

**ROBINSON & COLE LLP**
Mitchell L. Fishberg (ct 19661)
Elizabeth Smith (ct 19808)
280 Trumbull Street
Hartford, CT  06117
**mfishberg@rc.com**
**esmith@rc.com**
Tele:  (860) 275-8200
Fax:  (860) 275-8299

**SNR DENTON US LLP**
Reid L. Ashinoff (phv)
Sandra D. Hauser (phv)
David Baum (phv)
1221 Avenue of the Americas
New York, NY  10020
**reid.ashinoff@snrdenton.com**
**sandra.hauser@ snrdenton.com**
**david.baum@ snrdenton.com**
Tele:  (212) 768-6700
Fax:  (212) 768-6800

10654410-v2

Plaintiff Genworth Financial Wealth Management, Inc. ("Genworth") and Third-Party Defendant Gurinder Ahluwalia (referred to herein collectively as "Plaintiff"), respectfully submit this opposition to the motions filed by Defendants and Third Party Plaintiffs to re-allocate forensic discovery costs and modify the schedule set forth in the Court's June 1, 2010 Order.

## PRELIMINARY STATEMENT

The Defendants' multiple motions are an attempt to obscure two simple and incontrovertible facts: 1) the material provided to Defendants seven weeks ago by the forensic expert is overwhelmingly comprised of ordinary Word, Excel, Adobe and email files; and 2) almost all of this material has been accessible on the Defendant's computers since the original document requests were made. This is material that should have been reviewed and produced in late 2009 or early 2010, but instead, many months later the Defendants continue to stonewall and delay. In fact, although Defendants' motion claimed that they "are in the process of securing the services of a computer professional to assist with the process of reviewing and producing data provided by Guidance," and requested a one month extension from the Court's August 30 production deadline to September 29, even that apparently has not happened and incredibly, documents are not being reviewed. Not a single document has been produced in the last seven weeks. Defendants have arrogated to themselves an indefinite stay of their discovery obligations, violating yet another Court order.

This caps a long chain of discovery abuses. The Defendants initially pretended the data and documents did not exist. That failed when the Plaintiffs brought a motion to compel, based in part on third-party discovery from Charles

1

Schwab.  The documents produced by Charles Schwab unequivocally proved that the Defendants had failed to preserve and produce highly relevant documents, including documents showing that the Defendants used and always intended to use Genworth's confidential client lists, asset lists and account numbers to set up their competing business.  As a result, and also faced with admitted spoliation and perjury on top of the failure to produce documents, the Court granted Plaintiff's motion to compel.  Among other things, the Court ordered a forensic examination of the Defendants' computers by Guidance Software, Inc., ordered that documents be produced *within three weeks* of material being provided by Guidance and awarded Plaintiff its reasonable attorneys' fees (the "June 1 Order", filed as docket entry 100).

The Defendants delayed the forensic examination by first asking the Court on June 23 to re-allocate the cost of the forensic examination.  The Court denied that motion on July 1, 2010.  The Defendants then further delayed the execution of an agreement with Guidance and the payment of a retainer.  As a result, Guidance did not image the Defendants' computers and provide the data until August 9, 2010, and in keeping with the Court's three week schedule, documents therefore should have been produced on August 30.  Instead of finally producing documents, on August 30 the Defendants filed a motion for a 30 day extension.  Now the Defendants have filed yet another motion, this time seeking again to modify the allocation of costs.

The Defendants are in contempt of the June 1 Order.  Neither of the two pending motions offer any indication that Defendants are proceeding with the data

and document review, and based upon recent conversations with Defendants' counsel, apparently the Defendants have taken *no* steps to review and produce documents from August 9 to date.  Despite this Court's June 1st admonition that the failure to comply with discovery obligations would result in further sanctions, the Defendants still have not produced a single additional page.  There appears to be no end to Defendants' dilatory litigation tactics and fundamental lack of respect for this Court's orders and the discovery process in general.  Defendants are writing their own rules, without any regard for court-imposed deadlines, and filing serial baseless motions to delay and/or avoid discovery in this case.  The June 1 Order warned the Defendants that they would "face further sanction for failure to comply" with their document production obligations. (June 1 Order at p.13)  That is clearly the case here.  Thus, Plaintiff requests that Defendants' motions be denied in their entirety, and that the Court entertain briefing on further sanctions.

## ARGUMENT

I.  *Defendants Should Bear Their Own Costs for Document Review and the Court Should Not Revisit its Allocation of Costs*

The Defendants' two motions make two distinct points: 1) the Defendants have received too much data to review on their own, so they are retaining an expert to help them search and therefore request a 30 day extension of the August 30, 2010 deadline (motion filed as docket entry 126); and 2) the Junxure and Schwab databases are proprietary and their review will involve unexpected costs between $5,000 and $15,000, and therefore the Court should revisit the allocation set forth in its June 1 Order (motion filed as docket entry 127).  Both motions should be rejected.

**As to the request for an extension of time in light of the volume of data, it now appears that contrary to the Defendants' motion, they have not engaged a computer professional to assist them and incredibly, have not begun reviewing documents, notwithstanding that the September 29 production date they requested has come and gone. Certainly no documents have been produced in the last seven weeks. The basis for this motion was that the Defendants claimed to be "in the process" of retaining a computer expert to help them search the data. The Defendants therefore requested a 30 day extension "of the deadline for producing responsive, non-privileged data to opposing counsel . . . " which would have extended the deadline to September 29. Based on conversations with Defendants' counsel, however, it appears that no expert was retained and no documents have been reviewed. Instead, the Defendants apparently treated their own pending motion as an indefinite stay of their obligation to even begin reviewing the data provided by Guidance. This is yet another flagrant abuse of the discovery process.[1]**

**Moreover, Defendants misrepresent that Guidance has "confirmed" "that Defendants' counsel would be unable to review and produce this information without the further assistance of a sophisticated computer professional." (Docket entry 121 at pp. 2-3; docket entry 123 at p. 4) The Guidance report says no such thing. The mirrored hard drives are no different from any other computer**

---

[1] **The Defendants did not seek to have Genworth share in this cost, so there is no reason to have delayed retaining whatever assistance they need and reviewing the data. There is likewise no justification for asking Genworth to pay for Defendants' review of its own data and documents, and any request for Genworth to share such costs would be frivolous.**

that a party to a litigation would review as part of the standard protocol for responding to document requests.  In fact, based upon the attachments to the Guidance report, the vast majority of documents delivered to Defendants counsel are ordinary Word, Excel, Adobe and email files.  Most of these files (i.e. all of those that were not deleted by the Defendants and then restored by Guidance) have been on the Defendants' computers all along, and to the extent any are responsive, they should have been produced many months ago.

Pretending to find support in the Guidance report for their position, Defendants quote a paragraph from the report out of context, which states: "Should further information need to be extracted, a series of defined queries would be required." (Docket entry 123 at p.4)  While it is true that Guidance needs to run those defined queries to obtain more information regarding the population of Defendants' Junxure database, which the Defendants have wrongfully blocked, that has nothing to do with the ordinary data and documents that have *already* been extracted and delivered to Defendants as part of the mirrored hard drives.  To review that data and documents, Defendants merely need to search for documents by folders – again, standard operating procedure for any litigant responding to document requests.

As to a re-allocation of costs to examine the Schwab and Junxure databases, even if Defendants were correct that this data can be accessed "only if it can be placed in its native environment," Defendants ignore the obvious fact that the data came from their own computers, servers and software, *which is therefore the native environment*.  Instead of simply allowing Guidance to come

to TJT's offices and run the required queries, the Defendants have instead filed their motions and blocked Guidance from analyzing how their client databases were created.  This could be critical evidence, and the lengths to which the Defendants have gone to prevent access to it only makes one more suspicious of what is in these databases.

The Defendants' suggestion that an examination of the Junxure and Schwab databases was not contemplated or involves "unforeseen complications" is also completely false. This work is specifically contemplated in the mutually agreed Guidance Statement of Work, which states that Guidance will produce a report that:

> Examines the Defendants' client databases, including without limitation the Junxure and Portfolio Center database, and details how, when and by whom the data was input, uploaded or "data dumped, " whether from individual inputs, excel spreadsheets, address book contact lists or any other source or group database; and <u>TJT Capital Group</u> must provide credentials to the consultant to gain access to any proprietary database while on site to ascertain if any of Genworth Financial Wealth Management's client information is stored in the database. This task will be done after the image is complete. (Emphasis in original)

(Statement of Work at p. 3, section 2.d., attached as Exhibit A).  The Statement of Work plainly includes Guidance returning to TJT's offices and running queries against Junxure and other databases.  It is therefore also covered by the 80/20 split of fees that was ordered in the June 1 Order (and re-affirmed by the Court on July 1, 2010), but nonetheless, it has been stalled by yet another request to re-allocate forensic discovery costs.  Considering that the Court swiftly rejected a previous attempt to re-allocate forensic discovery costs, there is no basis to

revisit this exact same issue based upon $5,000 of work (according to the Defendants) that remains to be done.

II.     *Defendants Misrepresent the Report by the Forensic Expert*

Defendants also grossly misrepresent the substance of the expert reports issued by Guidance.  Wrongly suggesting that Guidance has vindicated Defendants, the motion states that "Genworth's ACT and TNET databases were nowhere to be found on any of Defendants' computer devices."  (Motion at 3)  Without belaboring the point, the Defendants <u>*have already admitted*</u> in sworn statements that they took this property from Genworth and this Court has already found that Defendants used such "inappropriately acquired client information to solicit clients to their newly formed entity" and submitted "client list information to Schwab in furtherance of its client solicitation efforts."  (June 10, 2010 Order, p. 11)  Thus, if anything, the absence of ACT or TNET data on Defendants' existing computers would be more consistent with Defendants' known spoliation of evidence than with any kind of vindication.[2]

Moreover, Defendants have utterly ignored the attachments to the Guidance report, which <u>*confirm*</u> that Defendants *did* misappropriate an array of material from Plaintiff.  For example, Guidance's analysis of metadata shows that Defendants possess on their current computers a variety of material that, on its face, plainly originated from Genworth or its affiliates GE Financial or GE Financial Assurance; these entities are listed in the Guidance report as the company/owner of the documents.  (See excerpts of Attachment A-3 to the

---

[2]     This argument also ignores that further work is required to examine the source of Defendants' databases, which has been stalled by the Defendants' motions.

7

Guidance Expert Report, attached as Exhibit B hereto.) Not only do these documents list Genworth or its affiliates as the owner of the documents, the documents were created *before the Defendants left Genworth*, meaning that they were not generated independently after Defendants opened TJT. The documents referred to in the attachments are merely a few examples, and do not constitute a complete list of the documents that Guidance found on TJT's computers with metadata reflecting ownership by Genworth or its affiliates.[3]

In addition, Guidance located other files that appear to be client lists and other confidential information taken from Genworth. For example, Guidance located a document called "Client Look Up - Cook" on Defendants' computers, a document that was originally created by Defendant Tamara Rivera on July 31, 2009 at 3:35 p.m. (which was Mr. Cook's and Ms. Rivera's last day at Genworth). (See excerpt of Attachment A-3 to the Guidance Expert Report, attached as Exhibit C hereto.) The name and date of this document alone – which presently resides on TJT's computers in multiple versions – is strong evidence that Cook took confidential client lists from Genworth, further confirming the Court's June 10 finding that Defendants stole client lists from Genworth and lied to the Court about compiling client lists independently from memory and internet searches after they left Genworth.

Guidance was able to identify even more data that appears to be confidential Genworth information. For example, Guidance identified documents with the following file names:

---

[3] It should be also noted that most of the files do not have complete metadata.

- Genworth 2006 funds.pdf;
- 41383-2712- Genworth Bal model.pdf;
- 41384-2713- Genworth Bal model.pdf;
- Genworth Info.pdf; and
- Genworth Brinker.pdf.

(See excerpts of Attachment A-3 to the Guidance Expert Report, attached as Exhibit D hereto.) This again is a small selection of material, and by no means a comprehensive list of all suspicious material shown in the Guidance report. In short, however, there is no basis for the Defendants to claim they have been somehow exonerated by the Guidance report, and critically, *none* of the above-referenced information has been produced by Defendants in discovery.

It is also worth noting that had Defendants prevailed in their prior attempts to avoid preservation and production of this data, Genworth would never have obtained it at all. In opposing Plaintiff's motion to compel, Defendants claimed that they "did not remove from Genworth any customer lists or client contact information", a claim proven false by documents produced by Charles Schwab. (Defendants' Brief filed as docket entry 42, at p. 7.) In the same brief, Defendants argued that they had given "numerous assurances that nothing had been or would be deleted from any of the Defendants' computers", only to later admit under questioning by this Court that Defendant McMullan had thrown out his critical personal computer "in a trash can, hard drive and all." (Docket entry 42 at p. 3; June 1 order p. 9). The Defendants have zero credibility, and this Court should spend little time in denying their motions and ordering the prompt and

9

complete production of documents by the Defendants and an examination of the Defendants' databases by Guidance.

## CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' motions in their entirety, and invite further briefing on appropriate sanctions for Defendants' indefensible conduct.

Dated:  October 4, 2010

                                              Respectfully Submitted,

                                          /s

                            Mitchell L. Fishberg (ct19661)
                            Elizabeth Smith (ct 19808)
                            mfishberg@rc.com
                            esmith@rc.com
                            **ROBINSON & COLE LLP**
                            280 Trumbull Street
                            Hartford, CT  06117
                            Tele:  (860) 275-8338
                            Fax:  (860) 275-8299

                            **SNR DENTON US LLP**
                            Reid L. Ashinoff  *(phv)*
                            Sandra D. Hauser *(phv)*
                            David R. Baum *(phv)*
                            1221 Avenue of the Americas
                            New York, NY 10020
                            reid.ashinoff@snrdenton.com
                            sandra.hauser@snrdenton.com
                            david.baum@snrdenton.com
                            Tele: (212) 768-6700
                            Fax: (212) 768-6800

                            *Counsel for Plaintiff Genworth Financial Wealth Management, Inc. and Third-Party Defendant Gurinder Ahluwalia*

## **CERTIFICATION**

**I hereby certify that on October 4, 2010, a copy of the foregoing Memorandum of Law In Opposition to Defendants' Motions to Modify was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.**

_____/s/_____

**Elizabeth M. Smith**