EXHIBIT A

# EXHIBIT "A"

Page 1

```
 1
 2              UNITED STATES DISTRICT COURT
 3                 DISTRICT OF CONNECTICUT
 4  -------------------------------x
 5  GENWORTH-FINANCIAL WEALTH
    MANAGEMENT, INC.
 6              Plaintiffs,
 7         v.                        3:09-CV-1521-VLB
 8  TIMOTHY McMULLAN, JAMES COOK,
    TIMOTHY McFADDEN, KAREN BAZON,
 9  TAMARA RIVERA and TJT CAPITAL
    GROUP, LLC,
10              Defendants.
11  -------------------------------x
12  TIMOTHY McMULLAN, JAMES COOK,
    TIMOTHY McFADDEN, TJT CAPITAL
13  GROUP, LLC,
14              Third-Party Plaintiffs,
15         v.
16  GURINDER AHLUWALIA,
17              Third-Party Defendant.
18  -------------------------------x
19            * * *CONFIDENTIAL* * *
20            DEPOSITION OF JAMES COOK
21            Lawrenceville, New Jersey
22                 January 8, 2010
23  Reported by:
24  MARY F. BOWMAN, RPR, CRR
25  JOB NO. 27020
```

## Page 2

January 8, 2010
9:40 a.m.

Deposition of JAMES COOK, held at the offices of STARK & STARK, LLP, 993 Lenox Drive, Lawrenceville, New Jersey, before Mary F. Bowman, a Registered Professional Reporter, Certified Realtime Reporter, and Notary Public of the States of New York and New Jersey.

## Page 3

APPEARANCES:

PAUL HASTINGS JANOFSKY & WALKER, LLP
Attorneys for Plaintiff and
Third-Party Defendant
    75 East 55th Street
    New York, New York   10022
BY: VICTORIA A. CUNDIFF, ESQ.

STARK & STARK, PC
Attorneys for Defendants and
Third-Party Plaintiff
    993 Lenox Drive, Building Two
    Lawrenceville, New Jersey   08648
BY: THOMAS BRADFORD LEWIS, ESQ.

Also Present: Jonathan Clay, Videographer

## Page 4

    IT IS HEREBY STIPULATED AND AGREED, that all objections, except as to the form of the question, shall be reserved to the time of the trial.
    IT IS FURTHER STIPULATED AND AGREED that the within deposition may be sworn to and signed before any officer authorized to administer an oath, with the same force and effect as if signed and sworn to before the Court.

## Page 5

        J. COOK  - CONFIDENTIAL
        THE VIDEOGRAPHER: Good morning, this is the start of tape labeled number one of the videotape deposition of Mr. James Cook in the matter of Genworth Financial Wealth Management Incorporated versus McMullan, et al. in the United States District Court in the District of Connecticut, civil action number 3:09-CV,-1521-VLB.
        This deposition is being held at the law offices of Stark & Stark located at 993 Lenox Drive, Lawrenceville, New Jersey on Friday, January 8, 2010 at 9:42 a.m. My name is Jonathan Clay from TSG Reporting Incorporated and I am the legal video specialist.
        The court reporter is Mary Bowman also in association with TSG Reporting. Will counsel please introduce yourselves starting with the party noticing this proceeding.
        MS. CUNDIFF: Victoria Cundiff from Paul Hastings representing plaintiffs in this action.
        MR. LEWIS: Tom Lewis from Stark & Stark representing defendants.

Page 130

1  J. COOK - CONFIDENTIAL
2  about any of the Genworth clients?
3    A.  No, I did not.
4    Q.  You have advised that during the
5  course of the lunch hour, you came up with some
6  additional names?
7    A.  Yes.
8    Q.  Can you tell us what those names are?
9    A.  Charles Deville, yes, Charles Deville.
10   Q.  And is Charles Deville someone you
11 served while at Genworth?
12   A.  Yes, but he actually left Genworth.
13 He is not with me either yet.  Charles Deville,
14 he owned and managed Chem Spray South, C-H-E-M
15 in Georgia.
16   Q.  And you have reached out to him?
17   A.  He hasn't called me back yet, but yes,
18 I have.
19   Q.  So you have left a message for him?
20   A.  Yes, I have.  Henry Carville, he is an
21 architect in Louisiana.  His firm is something,
22 something, Carville.
23   Q.  And have you contacted him?
24   A.  Yes, I have.
25   Q.  He is somebody you served at Genworth?
   TSG Reporting - Worldwide    877-702-9580

Page 131

1  J. COOK - CONFIDENTIAL
2    A.  Yes.
3    Q.  Is he a prospect or actual TJT
4  customer?
5    A.  Prospect.
6    Q.  Has he returned your phone call?
7    A.  Yes, he has.
8    Q.  Have you sent him any literature about
9  TJT?
10   A.  Yes, I have.
11   Q.  OK.
12   A.  Ken Elliot, Ken and Mary Elliot, they
13 live in -- I think it is Tarrytown, New York, in
14 Westchester County.  He has got a brother
15 overseas, that's Bob Elliot, and his sister is
16 Vikki Kurashige, V-I-K-K-I, K-U-R-A-S-H-I-G-E,
17 she is somewhere upstate, Rochester, Buffalo
18 area, New York.
19   Q.  These are clients that you served at
20 Genworth?
21   A.  Yes.
22   Q.  All of them, Ken, Mary, Bob and Vikki?
23   A.  Yes.
24   Q.  Are these clients at TJT?
25   A.  No, they are not.
   TSG Reporting - Worldwide    877-702-9580

Page 132

1  J. COOK - CONFIDENTIAL
2    Q.  Have you contacted any of these
3  individuals?
4    A.  Yes, I spoke to Vikki, I spoke to Ken.
5  Ken is planning on coming into the office
6  sometime this month.
7    Q.  So they are prospects?
8    A.  Yes, they are.
9    Q.  Any other names?
10   A.  Not now.
11   Q.  What clients that you served at
12 Genworth have you gone over to visit at their
13 premises?
14   A.  None.  None, 99 percent of my clients
15 and for the most part Brinker clients don't live
16 in the area.  He has a radio-based program.  It
17 is nationwide.
18       Actually I take that book, I went to
19 the office for Ophthalmic Associates, that's
20 Nina DeMaci is the office manager and Dr. Pulice
21 that I mentioned earlier.  I did go to their
22 office.  Not the home, the office.
23   Q.  Did you look at any documents for the
24 purpose of refreshing your recollection for this
25 deposition?
   TSG Reporting - Worldwide    877-702-9580

Page 133

1  J. COOK - CONFIDENTIAL
2    A.  No, I did not.
3    Q.  While you were at Genworth, from time
4  to time, you sent out letters to clients
5  regarding the performance of their portfolios,
6  is that correct?
7    A.  Sparingly.  Genworth didn't have
8  performance reporting capabilities.
9    Q.  And quarterly letters went out that
10 had your signature and Bob Brinker's signature
11 that were distributed to clients you were
12 serving at Genworth?
13   A.  Correct, the trust company prepared
14 that and sent it out, yes.
15   Q.  And you don't believe any of the
16 statements that were made in the letters going
17 out over your signature were untrue, do you?
18   A.  I have some concerns about the
19 authenticity of the Brinker signature.
20   Q.  I am talking about letters that went
21 out when you were at Genworth?
22   A.  Yes.
23   Q.  You had questions --
24   A.  Now I do.
25   Q.  Putting aside any questions about the
   TSG Reporting - Worldwide    877-702-9580

## Page 134

```
 1        J. COOK - CONFIDENTIAL
 2   authenticity of the signature, letters that went
 3   out over your signature and also over Bob
 4   Brinker's name while you were at Genworth, do
 5   you believe that any of those letters contained
 6   false statements?
 7       A.   No.  They were basically snapshots,
 8   that Bob was -- that are reflecting Bob's
 9   thoughts from the newsletter.
10            MS. CUNDIFF:  I would like to have
11       marked as the next exhibit two documents;
12       the first consists of typewritten statements
13       begin with "Business Loans" and the second
14       is a letter with attachments dated May 15,
15       2009 from Bill Simone to Tim McMullan.
16            (Exhibit 16, typewritten document
17       entitled "Business Loans" and letter with
18       attachment dated May 15, 2009 marked for
19       identification, as of this date.)
20       Q.   I would like to have you look at the
21   first page of P16.  Have you seen any of that
22   before?
23       A.   Yes.
24       Q.   What is it?
25       A.   It's from -- some brief notes about
          TSG Reporting - Worldwide    877-702-9580
```

## Page 135

```
 1        J. COOK - CONFIDENTIAL
 2   the conversation we had as a group.
 3       Q.   We?
 4       A.   The due diligence we spoke about
 5   earlier.
 6       Q.   When you say we, you are referring to
 7   whom?
 8       A.   To Tim McFadden, Tim McMullan.
 9       Q.   Can you recall approximately when this
10   was prepared?
11       A.   No, I don't.
12       Q.   Who prepared it?
13       A.   Tim McMullan.
14       Q.   Do you recognize the handwriting that
15   appears on it?
16       A.   No, I don't.
17       Q.   Does it look like your own
18   handwriting?
19       A.   Oh, no, it is not my handwriting.
20       Q.   Does it look like Mr. McMullan's
21   handwriting?
22       A.   I don't know.
23       Q.   Does it look like Mr. McFadden's
24   handwriting?
25       A.   It could be either.  All I can tell
          TSG Reporting - Worldwide    877-702-9580
```

## Page 136

```
 1        J. COOK - CONFIDENTIAL
 2   you, it's not mine.
 3       Q.   Do the typed portions of this document
 4   reflect what you were collectively doing to
 5   explore the possibility of setting up a new
 6   business?
 7       A.   Yes.
 8       Q.   Under the topic, "Business Loan:
 9   Underwriters OK with articles of incorporation
10   issue."  Can you tell me what that refers to?
11       A.   I don't know.
12       Q.   What was the articles of incorporation
13   issue?
14       A.   I don't know.
15       Q.   And do you know what "F.D." is a
16   reference to, in parentheses after that
17   statement?
18       A.   I don't.
19       Q.   Up in the top, you see the handwriting
20   appears to read, "Pershing, no go.  At Schwab."
21   Do you have any understanding what have that
22   means?
23       A.   Again, I didn't write it, I don't know
24   the premise of it.  Obviously, as I said before,
25   I am doing due diligence of a possible
          TSG Reporting - Worldwide    877-702-9580
```

## Page 137

```
 1        J. COOK - CONFIDENTIAL
 2   opportunity.  Tim must have looked at every
 3   custodian; Pershing, Fidelity, Schwab, Vanguard.
 4       Q.   Do you recall hearing anything back
 5   about Pershing?
 6       A.   I don't know why it says there no go.
 7       Q.   Under business loan, it says, "Issue
 8   with staggered resignations."  Do you recall
 9   what the issue was?
10       A.   I think, as I stated before, in order
11   to get the business loan, we all had to be
12   resigned.
13       Q.   And your understanding is that that
14   was a requirement of the lender?
15       A.   Yes.
16       Q.   Did you give thought to all resigning
17   together?
18       A.   Again, we viewed all options as
19   possible.  I don't recall specifically anything
20   like that.  If we all got fed up with Genworth
21   on the same day, we all would have left.
22       Q.   Did you discuss the pluses or minuses
23   of the strategy of everyone resigning together
24   or resigning in staggered resignations?
25       A.   Obviously it is addressed here.  It
          TSG Reporting - Worldwide    877-702-9580
```