UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GENWORTH FINANCIAL WEALTH MANAGEMENT, INC.,<br><br>Plaintiff,<br>v.<br><br>TIMOTHY MCMULLAN, JAMES COOK, TIMOTHY MCFADDEN, KAREN BAZON, TAMARA RIVERA and TJT CAPITAL GROUP, LLC,<br><br>Defendants. | Civil Action No. 3:09-CV-1521-VLB<br><br>PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' CROSS-MOTION TO COMPEL DISCOVERY |
| TIMOTHY MCMULLAN, JAMES COOK, TIMOTHY MCFADDEN, AND TJT CAPITAL GROUP, LLC,<br><br>Third-Party Plaintiffs,<br><br>v.<br><br>GURINDER AHLUWALIA,<br><br>Third-Party Defendant. | January 24, 2011 |

Plaintiff Genworth Financial Wealth Management and Third Party Defendant Gurinder Ahluwalia (collectively "Genworth" or "Plaintiff") hereby respond to the Defendants/Third Party Plaintiffs' Cross-Motion to Compel Discovery ("Motion") (Doc. No. 147) as follows:

## INTRODUCTION

The Defendants' Motion should be denied because it seeks the production of documents that are either irrelevant, unresponsive to their document requests, covered by the attorney work product privilege or some combination of the

**foregoing. As already explained in Genworth's Motion for a Protective Order filed on January 6th, the majority of documents at issue on Defendants' Motion have no bearing on the issues in this case. Tellingly, the Defendants have failed to even try to meet their burden of demonstrating that the documents sought are relevant, instead simply deeming them relevant with no explanation at all. That is insufficient, and the Motion should be denied.**

**Similarly, the Defendants have no right to material that is unresponsive to their document requests. Although the Defendants complain that the Plaintiff is unilaterally dictating what is relevant, the truth is far more mundane: like every litigant, the Plaintiff is simply providing responsive documents and withholding unresponsive documents. This is hardly controversial, and presumably the Defendants engaged in the same process. Moreover, the unresponsive material at issue also happens to be highly confidential and commercially valuable, making its redaction all the more appropriate in light of the Defendants' known theft and use of Genworth's confidential information.**

**And finally, the Defendants have no basis to seek the attorney work product of Plaintiff's counsel. The Defendants failed to review their own computers for responsive documents, requiring this Court to order the production of hard drive images to Plaintiff's counsel. Now the Defendants are seeking copies of the specific documents extracted by Plaintiff's counsel. Considering that <u>these documents are the Defendants' own documents</u>, there is no basis to seek the subset that Plaintiff's counsel has selected. That would serve no purpose but to reveal the thought process of Plaintiff's counsel. In short, the Defendants' Motion should be denied.**

**FACTS**

**For the sake of brevity, with respect to the claim that document requests 138, 139, 140, 141, 142, 143, 144, 149, 150, 151 and 153 seek relevant material, Genworth incorporates the Facts section from its Motion for Protective Order, filed as docket entry 145 on January 6, 2011. These requests are covered by Genworth's pending Motion for a Protective Order because they seek information concerning either: 1) the composition of Genworth's model portfolios, 2) the performance of Genworth's model portfolios; 3) the selection of investments for Genworth's model portfolios; or 4) the marketing of Genworth's model portfolios.**

**As to the Motion's demand for unredacted documents, most of the redactions are to printouts from the ACT database. The ACT database contains client names, phone numbers, contact information and portfolio management history, as well as notes of the interactions between the client and Genworth's representative and plans for follow-up. (¶ 5 of the February 25, 2010 Declaration of Jeffrey Joseph, filed as docket entry 46) Because this information is known only to Genworth, it provides a substantial competitive advantage. (*Id*.)**

**Genworth produced ACT notes to the Defendants to the extent they were responsive to specific document requests, such as when they reflect a conversation with a Genworth client concerning one of the Defendants leaving Genworth. Genworth redacted the remaining unresponsive material contained within the ACT notes, which is valuable confidential information concerning Genworth's business and clients.**

## ARGUMENT

### 1. The Fourth Request for Production of Documents Largely Seeks Documents Covered by Genworth's Motion for a Protective Order

Genworth's Motion for a Protective Order is currently pending before this Court, seeking protection from discovery aimed at the following general topics: 1) the composition of Genworth's model portfolios, 2) the performance of Genworth's model portfolios; 3) the selection of investments for Genworth's model portfolios; or 4) the marketing of Genworth's model portfolios. Most of the documents that Genworth has objected to producing in response to the Fourth Request for Production of Documents ("Fourth Request") fall into the four categories above. Specifically, the following document requests fall into these categories:

> 138. A copy of the "Brinker Basic" Microsoft PowerPoint presentation sent by Daniel Kraninger to Timothy McFadden during the time period from March 2003 through December 2003, and which presentation Timothy McFadden saved to his computer at Genworth.
>
> 139. A copy of the 2003 GE Financial news release titled, "Bob Brinker Making Major Market & Business Moves" which was sent during the time period from March 2003 through December 2003.
>
> 140. A copy of all email communications between Timothy McMullan and Robert Brown, Genworth's Chief Information Office [sic], during the time period while both were employed by Genworth and specifically concerning the performance and management of investment portfolios in which Genworth's clients were invested.
>
> 141. A copy of all email communications exchanged between Timothy McMullan and any of the following during the month of December 2008: Timothy Knepp, Robert Bannon, and/or Joon Hyunh, and which communications specifically concern the management and/or performance of investment portfolios in which Genworth's clients were invested.
>
> 142. A copy of the Marketimer model portfolio comparisons created by Timothy McMullan that were saved to Timothy McMullan's computer at Genworth in or about 2005 or 2006.

143. A copy of all correspondence between Robert Brinker and Genworth's investment management team during the time period from June 2004 through June 2009.

144. A copy of all documents concerning due diligence performed by Joon Hyunh on mutual funds, specifically the long/short fund, recommended by Joon Hyunh to Timothy McMullan in December 2008.

149. All documents concerning a breakdown, listing, or accounting of all block trades performed in all model portfolios conducted by or for Genworth's private client group in December 2006 and January 2007.

150. A copy of the Microsoft PowerPoint presentation that Timothy McMullan sent to Genworth's investment management executive committee in advance of and in preparation for a meeting of that committee held in or about late December 2008.

151. A copy of all emails sent by Timothy McMullan, James Cook, and/or Timothy McFadden to individuals or representatives from Genworth Financial Trust Company in or about late December 2008 and concerning individual trades conducted in the client accounts they managed.

153. All documents concerning the investment process established, implemented, or created by Genworth's investment management division concerning the Brinker model portfolios and which processes were established, implemented, or created during the time period from 2004 through 2009.

Genworth's position with regard to these document requests is spelled out in its Motion for a Protective Order, but notably several of these new requests seek documents that are not only irrelevant, but also created many years before the events at issue in this litigation.

In addition, the Fourth Request also seeks a contract with Bob Brinker, correspondence concerning an SEC audit in 2006, contracts with Robert Carlson (who previously provided Genworth with investment analysis and marketing services and currently works with TJT), internal Genworth emails concerning possible layoffs or financial challenges faced by Genworth in late 2008 or early 2009, and business proposals and emails with Suze Orman:

**136. A copy of the contract or agreement executed between Genworth and Robert Brinker, which agreement was executed in or about October 2004 and which agreement expired on or about July 31, 2004.**

**137. Documents, including correspondence sent to and received from the Securities and Exchange Commission ("SEC"), concerning an SEC audit of Genworth in or about 2006.**

**145. A copy of all contracts or agreements entered into between Genworth and Robert Carlson.**

**146. A copy of all emails exchanged between Timothy McMullan and Jeanen Calvin during the time period from January 1, 2006, through December 31, 2007, concerning Robert Carlson.**

**161. A copy of all emails sent by Michael Frazier, Genworth's Chairman, to Genworth employees in either December 2008 or January 2009 and concerning contemplated or actual layoffs within Genworth and/or concerning financial challenges Genworth faced.**

**165. A copy of all business proposals Genworth made to Suze Orman during the time period from 2006 through 2009.**

**166. A copy of all emails exchanged between Suze Orman and Timothy McMullan during the time period from 2006 through 2009 and concerning a business proposal that Genworth contemplated making to Suze Orman.**

**None of the requested documents are relevant or have any prospect of leading to relevant information. As noted in Genworth's motion, this case concerns whether confidential information was taken from Genworth and whether Genworth defamed or unfairly competed with TJT. A 2006 SEC audit has no bearing on this case, and neither do emails concerning layoffs or financial challenges or negotiations with Bob Brinker, Robert Carlson or Suze Orman.**

**Importantly, and as noted in Genworth's motion, "Defendants, as the parties seeking discovery, must first establish that the discovery sought is relevant to the claims and defenses plead."** ***Rubin v. Hirschfeld*****, 2002 WL 32503670, *2 (January 15, 2002 D. Conn.) (Dorsey, J.)(citing Fed. R. Civ. P.**

**26(b)(1)). The Defendants here <u>have made no effort</u> to make this showing in their Motion to Compel for any of their document requests, but simply state that the documents are relevant. This does not suffice and the Motion to Compel should be denied.**

**In truth, the material described above is intended to support two off-base and inadmissible arguments: 1) that Genworth allegedly did bad things unrelated to this case; and 2) that Genworth did not adequately support the division where the individual defendants worked, causing them to leave. But neither of those points have any relevance to this case. These claims do not justify the taking of confidential information, and would not make it more or less likely that Genworth defamed TJT or unfairly competed with TJT.**

**It is worth noting that this case involves a relatively limited number of allegations over a fairly short timeframe. Nonetheless, the Defendants are seeking unrelated contracts and SEC audits that pre-date the relevant timeframe by several years. The Defendants have served 168 document requests in this case, as compared to the 62 served by Plaintiff. And that comparison does not reflect that after meeting to narrow the discovery sought, Plaintiff is only seeking responses to 20 document requests while Defendants are seeking responses to 66 document requests. This discrepancy is largely explained by discovery that has no bearing on this case and will only serve to multiply the time and expense required of Plaintiff. The Court should deny the Defendants' Motion to Compel.**

### 2. <u>The Defendants are Not Entitled to Genworth's Work Product</u>

**In the Fourth Request, the Defendants also brazenly seek the attorney work product of Plaintiff's counsel. Specifically, the Defendants have requested:**

> Request No. 167: Copies of all documents drawn from, extracted from, or otherwise derived from the forensic images of Defendants' computer devices provided to Plaintiff's counsel by Guidance Software, Inc.
>
> Request No. 168: Copies of all documents drawn from, extracted from, or otherwise derived from the forensic images of Defendants' computer devices provided to Plaintiff's counsel by Guidance Software, Inc., that Plaintiff may attempt to introduce as exhibits at any hearing or trial in this matter.

It is undisputed that the Defendants also have complete forensic images provided by Guidance, and naturally have access to the original computers from which the images were made. The Defendants therefore already have every single document they are now requesting in Document Requests 167 and 168. Moreover, taken literally, Plaintiff extracted every file that might contain useful information, such as Word, Adobe, Excel, Outlook and PowerPoint files. It would be a strange exercise to return all of these documents to the Defendants, given that they already have every single one. The Defendants are likely really seeking the subset of documents that Plaintiff's counsel has segregated out from the mass of material extracted. This shows considerable arrogance.

The Court may recall that Judge Bryant ordered the Defendants' counsel to review the forensic images of their clients' computers and make a supplemental document production. (June 1, 2010 Order) After requesting and receiving an extension of time, the Defendants claimed they were unable to review the volume of data. As a result, this Court ordered that complete images of the Defendants' computers be given to Plaintiff's counsel for review. Now, after shirking their responsibility to review their own documents, and putting the onus and expense on the Plaintiff, the Defendants have the nerve to ask this Court to order production of the subset of their own documents that Plaintiff's counsel

considers relevant? That is an unabashed attempt to gain insight into the thought process of Plaintiff's counsel.

As the Second Circuit has stated,

> the selection and compilation of documents by counsel for litigation purposes is protected opinion work product, [if there is] the existence of a real, rather than speculative, concern that the thought processes of WMW counsel in relation to pending or anticipated litigation would be exposed.

*Gould Incorporated v. Mitsui Mining & Smelting Co., Ltd.*, 825 F.2d 676, 680 (2d Cir. 1987). The Court of Appeals in *Gould* noted that this rule might not apply where the documents are not otherwise available to the requesting party. *Id*. More recently, this Court has applied the same rule, noting that the controlling cases on this subject "turned primarily on the issue of whether the documents requested were already in possession of the party requesting disclosure." *FDIC v. Wachovia Ins. Services, Inc.*, 241 F.R.D. 104, 107 (D. Conn. 1997)(M.J. Smith), *citing In re Grand Jury Subpoenas Dated Oct. 22, 1991 & Nov. 1, 1991,* 959 F.2d 1158 (1992); *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002,* 318 F.3d 379 (2003). This Court acknowledged the arguments that where a party already has the requested documents, production of a subset selected by opposing counsel might be sought "with the precise goal of learning what the opposing attorney's thinking or strategy may be....", and that where an attorney "already has received the documents during the litigation, there is no reason to order their production a second time, for the only purpose this would serve would be to disclose, indirectly, the mental impressions of the attorney who selected the documents to review with the witness." *Id*. at 108 (citations omitted). The Court in *FDIC* ultimately decided that the documents should be produced, however,

**because it appeared that they had not been produced already and they would not reveal the thought process of counsel.**

**Here, however, the Defendants are literally asking which of their own documents have been extracted or derived from images of their own computers. This process was done exclusively by Plaintiff's counsel and its staff, and thus would reveal exactly which documents are thought to be important. As a result, there is a very real concern that the thought process of counsel would be revealed, and to be candid, that appears to be exactly why these documents are being sought.**

**3. The Defendants are not Entitled to Non-Responsive Confidential Information**

**The majority of redacted documents are client notes from the ACT database, but to the extent privileged material was also redacted, Plaintiff will produce a privilege log and reiterate in writing which redactions removed unresponsive material.**

**With regard to the ACT database, however, these notes contain client names, phone numbers, contact information and portfolio management history, as well as detailed notes of the interactions between the client and Genworth's representatives. This information is not known to others, and provides a substantial competitive advantage to Genworth. As a result, ACT notes have been produced only to the extent specific entries are responsive, and all non-responsive notes have been redacted.**

**The Defendants correctly note that there is a confidentiality order in this case, but that does not require the parties to produce non-responsive material, particularly where the material in question is highly valuable and confidential, and**

**the requesting party has already been found to have misappropriated and disseminated such material. Moreover, courts in this Circuit have repeatedly held that a party may redact materials that are unresponsive to document requests. *See, e.g., Kingsway Financial Services, Inc., v. Pricewaterhouse-Coopers LLP,* 03 Civ. 5560, 2007 WL 473726, at *3 (S.D.N.Y. Feb. 14, 2007) (denying motion to compel production of redacted portions of document where defendants failed to establish that such portions were responsive to discovery requests); *CSC Recovery Corp. v. Daido Steel Co., Ltd.,* 94 Civ. 9214, 1997 WL 661122, at *6 (S.D.N.Y. Oct. 22, 2007) (same); *Lambert v. Chase Manhattan Bank, N.A.,* 1997 WL 563792, at *2 (S.D.N.Y. Sep. 10, 1997). There is nothing unusual about a party not providing non-responsive documents, and the Defendants have provided no authority to support their baseless assertion that the redaction of non-responsive information is somehow inappropriate.**

## CONCLUSION

**For the foregoing reasons, Genworth respectfully requests that this Court grant Genworth's Motion for Protective Order, deny Defendants' Cross- Motion to Compel in its entirety, and grant such other relief to the Plaintiff as this Court deems proper.**

**Dated: Hartford, Connecticut**
**January 28, 2011**

**Respectfully Submitted,**

**/s**

**Mitchell L. Fishberg (CT 19661)**
**Elizabeth M. Smith (CT 19808)**
**mfishberg@rc.com**
**esmith@rc.com**
**ROBINSON & COLE LLP**
**280 Trumbull Street**
**Hartford, CT 06117**
**Tele: (860) 275-8338**
**Fax: (860) 275-8299**

**SNR DENTON US LLP**
**Reid L. Ashinoff *(admitted phv)***
**Sandra D. Hauser *(admitted phv)***
**David R. Baum *(admitted phv)***
**Brendan E. Zahner *(admitted phv)***
**1221 Avenue of the Americas**
**New York, NY 10020**
**reid.ashinoff@snrdenton.com**
**sandra.hauser@snrdenton.com**
**david.baum@snrdenton.com**
**brendan.zahner@snrdenton.com**
**Tele: (212) 768-6700**
**Fax: (212) 768-6800**

***Counsel for Plaintiff Genworth Financial Wealth Management, Inc. and Third-Party Defendant Gurinder Ahluwalia***

**CERTIFICATE OF SERVICE**

**The undersigned hereby certifies that I have caused to be served a true and correct copy of the foregoing document on this 28th day of January 2011 via email and electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.**

**_____/s/______________________**
**Brendan Zahner**