UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GENWORTH FINANCIAL WEALTH MANAGEMENT, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>TIMOTHY MCMULLAN, JAMES COOK, TIMOTHY MCFADDEN, KAREN BAZON, TAMARA RIVERA AND TJT CAPITAL GROUP, LLC,<br><br>Defendants. | Civil Action No. 3:09-CV-01521-PCD<br><br>PLAINTIFF'S MEMORANDUM IN RESPONSE TO MOTION TO CLARIFY, AND IN OPPOSITION TO MOTION TO MODIFY, PRELIMINARY INJUNCTION |
| TIMOTHY MCMULLAN, JAMES COOK, TIMOTHY MCFADDEN, AND TJT CAPITAL GROUP, LLC,<br><br>Third-Party Plaintiffs,<br><br>vs.<br><br>GURINDER AHLUWALIA,<br><br>Third-Party Defendant. | June 1, 2011 |

Plaintiff Genworth Financial Wealth Management, Inc. ("Genworth") respectfully submits this Memorandum of Law responding to and opposing the motion of Defendants Timothy McMullan, James Cook and Timothy McFadden (together, the "Defendants") to clarify and/or modify this Court's June 10, 2010 Memorandum of Decision and Order Granting Plaintiff's Motion for Immediate Temporary Restraints (the "Injunction Order").[1] Genworth also submits this Response to propose a process whereby these Defendants can respond to the

[1] Although Genworth originally applied for a temporary restraining order, the Court held that because the Defendants had received adequate notice of the application and had participated in an adversarial hearing, the motion would be treated as an application for a preliminary injunction.

subpoena served on them in the *Goodman v. Genworth* EDNY class action suit, but respond consistently with the clear and significant constraints properly imposed on them in the Injunction Order issued by Judge Bryant.

**Preliminary Statement**

As set forth below, the Court's Injunction Order was and is clearly warranted to protect Genworth from what Judge Bryant found to be Defendants' illegal and "unabashed attempt to destroy Genworth's goodwill" by instigating the *Goodman* class action, among other wrongful actions. Defendants in their motion completely fail to provide any justification pursuant to Fed.R.Civ.P. Rule 60(b) to warrant any modification of the injunction. Moreover, Judge Bryant expressly crafted the injunction with discovery in mind, and limited what these Defendants could speak about, whether under oath or otherwise. Not surprisingly, Rule 26 (b)(1) clearly contemplates that discovery can be "limited by court order", and specifically contemplates orders, such is the injunction here, "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Judge Bryant has so enjoined these Defendants, based on a clear showing by Genworth that the Defendants misappropriated Genworth's trade secrets and proprietary and confidential information, and that an injunction was needed to avoid further irreparable harm.

In order to enable these Defendants to testify -- but not about matters precluded to them by the Injunction Order -- Genworth proposes two alternative approaches:

(1) Defendants can testify pursuant to the subpoena in the class action, but shall be ordered to honor Genworth's objection and shall not respond to any question which Genworth believes will cause the disclosure of further Genworth confidential business information which these Defendants learned during the course of their employment with Genworth. The Defendants and/or class counsel may then, on motion to this Court, bring some or all of the

questions to this Court for a ruling on whether the Defendants can be permitted to respond to the questions consistent with this Court's Injunction Order; <u>or</u>

(2) If it is more efficient and the Honorable Thomas P. Smith, U.S.M.J. agrees, the depositions of these Defendants can be conducted in the Federal courthouse in Hartford, Connecticut, or via video conferencing on mutually acceptable dates when Magistrate Judge Smith can be available to listen to questions which are objected to by Genworth, conduct *voir dire* outside of the presence of the class action counsel, determine whether responding to the questions would cause Defendants to violate the injunction, and direct Defendants how to proceed.

Either of these procedures will allow Defendants to meet both their obligations under this Court's Injunction Order and the EDNY subpoenas, and will also protect Genworth from further harm from these Defendants' wrongful conduct.

**<u>Why There Is An Injunction Order</u>**

Almost a year ago this Court enjoined all of the Defendants in this action from disclosing, or further disclosure of (1) "any client or information regarding Genworth's operations where such information is a protected trade secret or consists of confidential information that the Defendants learned during the course of their employment with Genworth"; and (2) "the nature of Genworth's relationship with Robert Brinker." The Injunction Order further prohibited Defendants from using "any of Genworth's proprietary information … for the benefit of a third party, including without limitation to providing context for the pending class action," and directed the Defendants to "retrieve from all third parties ... any of Genworth's client information, lists, or data previously provided to that third party by any Defendant, and ...

immediately return such material to Genworth."[2] (Injunction Order, Doc No. 101 at 19-20). Defendants did not appeal.

The injunction at issue in Defendants' new motion was entered after full briefing and a two-day evidentiary hearing. This Court found that the Defendants misappropriated Genworth's confidential information in an "unabashed attempt to destroy Genworth's goodwill and customer relations." (Doc. No. 101 at 16-17). In a related ruling, Judge Bryant further concluded that Mr. McMullan, one of the Defendants, had "falsely testified before the court" and that the Defendants as a group had made assertions before this Court that were "utterly incredulous." (June 1, 2010 Decision and Order, Doc. No. 100 at 9). Defendants were found to have engaged in "apparent deceit" having destroyed both "incriminating evidence" and "relevant information" that they should have preserved. (Doc. No. 100 at 10, 11). Moreover, this Court found that even if Defendants' incredulous story about disposing of evidence was to be believed - - and Plaintiff clearly showed it was not - - Defendants' own conduct showed that they took action with "consciousness of wrongdoing." (Doc. No. 100 at 9). In other words, Defendants spoilated evidence because they knew that they engaged in unlawful misappropriation of Genworth's confidential information.

Further, and important here, this Court specifically found that Defendants had breached their duties to Genworth by supplying confidential Genworth information to class plaintiffs' counsel to foment the filing of the *Goodman* class action complaint in New York federal court (EDNY) (Doc No. 101 at 13-16). Judge Bryant found that "evidence presented at the April 8 and April 12 motion hearing reflects that the defendants have continued to disseminate confidential information" and that

[2] Despite the Court's Injunction Order, Defendants have, to date, failed to retrieve any of Genworth's confidential and proprietary information that was previously wrongfully disclosed to class counsel in the *Goodman* case.

> Genworth has therefore provided evidence that McMullan disclosed proprietary information to lead class counsel, and that such information pervades the class action complaint, further demonstrating that the Defendants have misappropriated protected, proprietary Genworth information and is motivated to further impair both the value of Genworth's reputation and the exclusivity of the information in question. Accordingly, the Court finds that the Plaintiff has demonstrated a presumption of irreparable harm that the Defendants have not rebutted.

Id. at 15.

The Court refused to sit idly by in light of these actions: "As the Court has discussed above, the plaintiff has satisfied the burden for its requested relief through the presentation of evidence demonstrating that the contents of the class action complaint reflect the misappropriation of trade secrets." This Court did not want Defendants' misconduct to continue, nor did this Court want Defendants to be able to continue their "unabashed attempt to destroy Genworth's goodwill."

**The Subpoena And The Injunction**

The principal TJT Defendants in this action have now been served with subpoenas in the *Goodman* case demanding their appearance for depositions on June 6, 7 and 8, 2011, and instructing them to produce "any and all documents" related to the New York class action. Any such responsive documents these Defendants have would contain information regarding Genworth's operations which they would have misappropriated from Genworth.

Three paragraphs of the preliminary injunction issued by this Court expressly limit the information which can be provided by these Defendants pursuant to these broad subpoenas:

> (4) The Defendants shall refrain from disclosing, or further disclosure of, any client or information regarding Genworth's operations where such information is a protected trade secret, or consists of confidential information that the Defendants learned during the course of their employment with Genworth;
>
> (5) The Defendants shall refrain from disclosing the nature of Genworth's relationship with Robert Brinker, and the

contents of the class action complaint, to the extent that such information reflects protected trade secrets, or other confidential information that the Defendants learned during the course of their employment with Genworth;

(6) The Defendants shall not use any of Genworth's proprietary information for their own advantage or on the behalf, or for the benefit of, a third party, including without limitation to providing context for the pending class action proceeding.

Defendants' counsel correctly understand "that providing testimony, even in response to duly issued subpoenas, exposes our clients to threatened motions for sanctions for allegedly violating the injunction order." *See* May 17, 2011 Letter from David Friedman (counsel for Defendants here) to *Goodman* class counsel, attached as Exhibit A. Defendants have thus timely objected, pursuant to Rule 45, to proceeding with the *Goodman* depositions "until the Connecticut court has had a reasonable opportunity to clarify the scope of the injunction orders." *Id*. Genworth believes an appropriate process to respect and apply the Injunction Order, rather than to "clarify or modify" it, is what is needed here.

**<u>The Injunction Here Is Proper and Should Not Be Modified In Any Way</u>**

Rather than seek to properly limit the scope of testimony they may give consistent with this Court's Injunction Order, Defendants by the instant motion instead seek to be *relieved* of Judge Bryant's injunction so they can testify freely in the *Goodman* class action, in furtherance of their "unabashed attempt to destroy Genworth's goodwill and customer relations." (Doc.101 at 16-17). However, in their papers, Defendants completely ignore Rule 60(b), the rule applicable to relief from a court order including an injunction order. *See Sierra Club v. U.S. Army Corps of Engineers*, 732 F.2d 253, 256 (2d Cir. 1983) (Rule 60 states a trial court's inherent power to modify an injunction or other order as a rule); *Belleview Manor Associates v. U.S.*, 165 F.3d 1249, 1252 (9th Cir. 1999) (applying Rule 60(b) standard to review of district court's grant of relief from prior injunctive orders); *Ptak Bros. Jewelry, Inc. v. Ptak*, 2011 WL

253424 at *4 (S.D. N.Y. Jan. 25, 2011) (applying Rule 60 to determine whether plaintiff was entitled to relief from an injunctive order); *Playtex Products, Inc. v. Procter & Gamble Co.*, 2008 WL 399295 at *5 (S.D. N.Y. 2008); 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2863 (2d ed. 2010).

Defendants' motion does not even attempt to -- and cannot -- demonstrate any of the possible grounds for relief from the injunction as set forth in Rule 60 (b)(1) through (5)  In fact, Defendants present no reason at all that justifies relieving them from Judge Bryant's Injunction (Rule 60 (b) (6)).  Instead, they simply want to be relieved from the injunctive restraints on them so that they can continue to collaborate with the class action lawyers whom they solicited to instigate the suit against Genworth in the first place, in a further effort to destroy Genworth's reputation and steal its clients.  Defendants' request of course ignores Defendants' wrongful conduct in disclosing Genworth's confidential information for their own and class counsel's benefit, which is why the injunction was issued in the first place.

Given Defendants' failure to comply with Rule 60 and their complete failure to offer new evidence as a basis for modifying the Injunction Order, their motion should be denied.  Simply receiving a subpoena cannot justify ignoring why this Court issued the injunction in the first place.  Instead of offering this Court a plan for how Defendants will protect Genworth's confidential and proprietary information, Defendants seek to be free of the sensible restraints imposed by the Court's injunction.  Defendants' motion for relief from the injunction -- instead of acknowledging the restraints and simply asking for guidance on how to adhere to it -- underscores their animus toward Genworth and improper motives, and thus the need for Judge Bryant's Injunction Order to be enforced as written.

## The Injunction Specifically Contemplated Discovery In The Class Action

At the time of the injunction hearing, the Court was made aware by Genworth's counsel of the possibility that Defendants might be served with a subpoena in the class action., as to which Genworth requested prompt notice. Judge Bryant concluded that "the contents of the class action complaint reflect the misappropriation of a trade secret. Accordingly, while counsel for the plaintiffs in the class action will likely be entitled to, and will likely receive information regarding Genworth's compliance with Brinker's recommendations through the process of discovery, the Court notes that **an order restricting the Defendants' further disclosure or discussion of the proprietary information reflected in the class action complaint**" was warranted "due to the Plaintiff's [Genworth's] demonstrated irreparable injury and likelihood of success on the merits." (Doc. 101 at 18; bolding added) Judge Bryant thus chose to limit certain information available to anyone, and specifically to class counsel, from these wrongdoing Defendants.

Judge Bryant recognized that plaintiffs in the class action will have many sources of discovery, including Genworth itself, with all its relevant records and witnesses. In contrast to the dishonesty practiced by Messrs. McMullan, Cook and McFadden[3], Judge Bryant clearly

---

[3] Judge Bryant ruled that Mr. McMullan had "falsely testified before the court."

Mr. Cook, when confronted at his deposition with numerous contradictory sworn declarations he had submitted to this Court, was questioned and responded as follows:

> "Q. And this was written -- another mistake in another sworn statement, right, Mr. Cook? Lots of mistakes in sworn statements that were submitted to the Court to argue your positions, wouldn't you say?
>
> "A. Mistakes happen. You have a Fortune 500 company using every financial dollar they have to put me and my family on the street, it's a little stressful. I should have paid more attention to what was written."

Deposition of James Cook, dated March 25, 2011, Tr. at 158 (excerpts of pages 151-162 attached as Exhibit B.)

For his part, Mr. McFadden similarly submitted false declarations to this Court, and amazingly, at his deposition, admitted he had clearly violated this Court's June 10, 2010 Injunction by

believed that many other witnesses could provide discovery and testify truthfully, but without the untrustworthiness and self-interested *animus* against Genworth of these Defendants. Significantly, the class action plaintiffs have as of this date not requested or subpoenaed the deposition of a single witness in the discovery in that case other than these three enjoined Defendants. The class action lawyers perhaps perceive these Defendants' enormous desire to harm Genworth and personally profit therefrom.

No showing can possibly be made at this time, where no other witness has been deposed, that the incidents, events, conversations, business practices of Genworth, and the records the class plaintiffs are interested in, cannot be obtained from numerous other witnesses and sources, but who also will comply with the mandate to testify truthfully under oath which these Defendants have violated. The Court believed its order was "narrowly tailored so as to avoid unwarranted interference." Defendants' demonstrated untrustworthiness warranted a limit on what they should be permitted to disclose.

> The class action complaint itself includes performance charts that included detailed quarterly descriptions regarding Genworth's purchase of funds that did not fall within Brinker's recommendation. *Goodman v. Genworth Financial Wealth Management, Inc.*, No. 2:09-cv-05603-LDW-ARL (E.D.N.Y. 2009) [Doc. #1]. The class action complaint also makes repeated reference to a "former high level employee in the Private Client Group Division" as the source of information regarding the performance of Genworth's portfolios as compared to Brinker's published models and internal discussions regarding the underperformance, and the existence of an "internal, undisclosed portfolio for aggressive, growth and balanced models that were internally referred to as a 'Brinker basic.'" *Id*. Additionally, the Plaintiff provided email correspondence from November 2009, showing that McMullen contacted at least one former client, to encourage him to contact Jeffrey Brown regarding Brown's handling of former 'GE/Genworth 'Brinker' client" complaints. [Doc. #76, Exh. F]

---

speaking to, meeting with, and signing up a client of Genworth's after the Injunction was issued ordering him not to do so. Deposition of Timothy McFadden, dated March 24, 2011, Tr. at 206-216 (excerpts attached as Exhibit C)

Rule 26 (b)(1) recognizes that discovery in a matter may proceed "Unless otherwise limited by court order." Judge Bryant's Injunction Order, for compelling reasons, constitutes a court order limiting certain discovery anywhere from these particular witnesses, and is consistent with Rule 26 which contemplates orders "(a) forbidding disclosure or discovery; and (d) forbidding inquiry into certain matters, or limiting the scope of disclosures or discovery of certain matters." In addition, Rule of Evidence 403 precludes even relevant evidence which causes unfair prejudice. "Even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Judge Bryant was unwilling to give these Defendants an unfettered opportunity to use the class action which they had fostered and fueled with "misappropriated" "proprietary information" to further harm Genworth, and the Injunction Order reflects these considered judgments.

Defendants say they fear contempt sanctions, and they should. They earned this injunctive restraint by spoliation, false testimony and misappropriation. An oath was insufficient to cause these Defendants to testify truthfully in this proceeding. There is no reason to believe an oath administered at a deposition would be any more powerful. The Court was cognizant of this reality too.

**The EDNY Subpoena Is Overbroad Because It Ignores The Injunctive Order**

Defendants "need" to seek freedom from the injunction only because class counsel issuing the subpoena did not comply with their duties. Rule 45 specifically addresses the obligations of counsel or a party issuing a subpoena: "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Here issuing class counsel were well aware of the Court's Injunction Order, having discussed it with Genworth's counsel several times, and chose to ignore it when drafting their subpoenas. Issuing counsel had two choices: issue a subpoena which

abjured inquiry into areas covered by paragraph 4-6 of the June 10 Injunction Order, or come to this Court[4] to explain the need to obtain testimony from these witnesses that is precluded by paragraphs 4-6 of the Injunction Order. Class counsel did neither. Their open-ended subpoena is consistent with the pre-injunction "partnership" between class counsel and the now enjoined Defendants to harm Genworth. Defendants' motion is in furtherance of their efforts to convey confidential Genworth information to class action counsel, and should be denied.

**The Injunction Does Not Preclude All Testimony**

Defendants are allowed to testify in the New York class action pursuant to the terms of the injunction, except as limited in scope by paragraphs (4)-(6) of the injunction order. As such, Defendants are permitted to discuss matters relevant to the class action claims, such as conversations with the class plaintiffs as customers of Genworth. However, Defendants are precluded by the terms of the injunction from revealing in their responses, or from answering questions about, internal Genworth nonpublic information and communications, in addition to "trade secrets, or other confidential information that the Defendants learned during the course of their employment with Genworth." (Doc. No. 101 at 20). Defendants are also prohibited from

[4] It would be improper to seek relief from this Court's injunction in the Eastern District of New York because: "One district court should not review the decision of another district court." *Harper v. Trans Union, LLC,* 2005 WL 697490 (E.D. Pa.) at 2-3 (refusing to issue discovery order that would interfere with order of another district court precluding that disclosure by the defendant, and sending class plaintiff to the injunction to challenge the restraint on disclosure) (citations omitted) (attached hereto as Exhibit D). In *Harper,* the federal court in Philadelphia refused to permit class plaintiff's counsel to discover even about the size of the class, because defendant was precluded from providing such discovery by an earlier order of the District Court for South Carolina. The Pennsylvania federal court ruled that only the District Court in South Carolina could rule on the scope of the South Carolina order. *See also Celotex Corp. v. Edwards,* 514 U.S. 300, 313 (1995) (requiring a successful party in a case in the Northern District federal court in Texas, before executing on the bond posted to secure the judgment, to seek relief from an injunction issued by Florida U.S. Bankruptcy Court enjoining its execution on that bond, and prohibiting collateral attack on that injunction in the federal court in Texas); *Exxon Corporation v. U.S. Dep't. of Energy*, 594 F.Supp. 84, at 89-91, and cases cited therein (D.Del. 1984); *Green v. Citigroup, Inc.,* 68 Fed. Appx. 934, 936 (10th Cir. 2003) ("It is axiomatic that one district court has no jurisdiction to review the decision of another district court.").

referring to proprietary information, including but not limited to materials that they obtained through prior bad acts, pursuant to this Court's provision that Defendants shall not use Genworth's proprietary information for their own advantage or for the benefit of a third party, including the plaintiffs in the class action proceeding. (Doc. No. 101 at 20).

**Genworth's Proposed Process for Properly Applying The Injunction Order to Defendants' Discovery in the Class Action**

In order to enable these Defendants to testify -- but not about matters precluded to them by the Injunction Order -- Genworth proposes two alternative approaches, both consistent with FRCP 30(d)(3)(A).

(1) Defendants can testify pursuant to the subpoena in the class action, but shall be ordered to honor Genworth's objection and shall not respond to any question which Genworth believes will cause the disclosure of Genworth's confidential business information which these Defendants learned during the course of their employment with Genworth. The Defendants and/or class counsel may then, on motion to this Court, bring some or all of these questions to this Court for a ruling on whether they can be permitted to respond to the questions consistent with this Court's Injunction Order; or

(2) If Magistrate Judge Smith is available and able to assist the parties, the depositions of these Defendants can be conducted either by video conferencing or at the Federal courthouse in Hartford, CT, on mutually acceptable dates when Magistrate Judge Smith can be presented with any questions that have been objected to by Genworth, conduct *voir dire* outside of the presence of the class action counsel, determine whether responding to the questions would cause Defendants to violate the Injunction Order, and direct Defendants how to proceed.

Thus, Genworth requests that this Court deny Defendants' motion and instead enter an order providing that, should Genworth's counsel object to any question posed by class counsel that seeks information Genworth believes is prohibited by the injunction, Defendants shall not

respond to those questions without further order of this Court. If Defendants ignore such an instruction and testify, they would be cited for contempt of this Court. *See Webb v. CBS Broad., Inc.*, 2011 U.S. Dist. LEXIS 3458 at *32 (N.D. Ill, Jan. 13, 2011) ("[Defendant] could properly instruct its witnesses not to answer [plaintiff's] counsel's questions based on the *Jacobson* documents because those questions violated the protective order entered in that case."); *Thornton v. UL Enterprises, LLC, STNA, Inc.*, 2011 U.S. Dist. LEXIS 41149 at *8 (W.D. Pa. April 15, 2011) ("A person may instruct a deponent not to answer . . . , *to enforce a limitation ordered by the court.*" (emphasis added)); *De Wagenknecht v. Stinnes*, 243 F.2d 413, 417 (D.C. Cir. 1957) ("The matter of limiting or terminating the taking of a deposition [under Rule 30] is in the sound discretion of the court."); *Palm Bay Int'l v. Marchesi Di Barolo S.P.A.*, 2009 US Dist. Lexis 104020 at *33-34 (E.D. N.Y. Nov. 9, 2009).

Either of Genworth's proposed procedures would permit this Court to have the context of the questions, the invasiveness of the information, and the ability to judge as to particulars rather than to rule in the abstract. Either of the proposed procedures would allow Defendants to meet their obligations under both this Court's Injunction Order and the EDNY subpoenas, and would also protect Genworth from further harm from the Defendants' wrongful conduct.

Genworth's proposed alternatives provide the most reasonable approach for addressing the conflicting interests between these two proceedings and permitting a fair opportunity for discovery in the class action litigation, consistent with this Court's injunctive restraints on these Defendants.

WHEREFORE, Genworth respectfully requests that Defendants' motion to clarify and/or modify the Injunction Order be denied, and that the Defendants instead be ordered not to respond to any question at their deposition in the *Goodman* class action as to which Genworth

objects as seeking information that would violate the Injunction Order, subject to further order from the Court.

Dated: Hartford, Connecticut
June 1, 2011

Respectfully Submitted,

   /s/Eric Wiechmann
Eric Watt Wiechmann (CT 04331)
Elizabeth M. Smith (CT 19808)
ewiechmann@mccarter.com
esmith@mccarter.com
McCARTER & ENGLISH, LLP
City Place I, 185 Asylum Street
Hartford, Connecticut 06103-3495
Tele: 860-275-6763
Fax: 860-560-5970

SNR DENTON US LLP
Reid L. Ashinoff *(admitted phv)*
Sandra D. Hauser *(admitted phv)*
Brendan E. Zahner *(admitted phv)*
1221 Avenue of the Americas
New York, NY 10020
reid.ashinoff@snrdenton.com
sandra.hauser@snrdenton.com
brendan.zahner@snrdenton.com
Tele: (212) 768-6700
Fax: (212) 768-6800

*Counsel for Plaintiff Genworth Financial Wealth Management, Inc. and Third-Party Defendant Gurinder Ahluwalia*

14954841

CERTIFICATE OF SERVICE

      The undersigned hereby certifies that I have caused to be served a true and correct copy of the foregoing document on this 1st day of June 2011 via electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

                                                      /s/ Elizabeth Smith