# EXHIBIT E

Page 1

```
 1
 2              UNITED STATES DISTRICT COURT
 3                DISTRICT OF CONNECTICUT
      - - - - - - - - - - - - - - x
 4   GENWORTH FINANCIAL WEALTH        :
     MANAGEMENT, INC.,               :
 5                                    :
                    Plaintiff,        :
 6   vs.                              : CIVIL ACTION NO.:
                                      : 3:09-cv-1521(VLB)
 7   TIMOTHY McMULLAN, JAMES          :
     COOK, TIMOTHY McFADDEN, KAREN :
 8   BAZON, TAMARA RIVERA and         :
     TJT CAPITAL GROUP, LLC,          :
 9                                    :
                    Defendants.       :
10    - - - - - - - - - - - - - - x
     TIMOTHY McMULLAN, JAMES COOK, :
11   TIMOTHY McFADDEN, and TJT        :
     CAPITAL GROUP, LLC,              :
12                                    :
            Third-Party Plaintiffs,:
13   vs.                              :
                                      :
14   GURINDER AHLUWALIA,              :
                                      :
15         Third-Party Defendant. :
      - - - - - - - - - - - - - - x
16
17                    May 3, 2011
18                    9:57 a.m.
19
20           Deposition of SIMON A. BARTLE, held at
21       the offices of SNR Denton, 1221 Avenue of the
22       Americas, New York, New York, pursuant to Rule
23       30(b)(6) notice, before Laurie A. Collins, a
24       Registered Professional Reporter and Notary
25       Public of the State of New York.
```

```
 1                        Bartle
 2     the specifics of this particular policy.
 3               And also talked about that should an
 4     employee use company confidential or intellectual
 5     property it's covered by this particular section
 6     of the code of ethics, inappropriately.
 7          Q.    Did you discuss the specifics of the
 8     training?
 9          A.    The specifics of this particular
10     training, of the --
11          Q.    Yes.
12          A.    At a very high level.  We talked
13     about -- she clarified for me that our associates
14     receive training on the code of ethics every other
15     year and that every year they have to
16     reacknowledge their commitment to the principles
17     and policies outlined within this document.
18          Q.    Did you discuss any of the specifics of
19     what's said in that training?
20          A.    No, we did not.
21          Q.    Are you aware of the specifics of that
22     training?
23          A.    I've gone through it myself, so the --
24     so yes, as much as a person has gone through
25     themselves.
```

```
 1                       Bartle
 2    records.
 3         A.    Is there any discussion?
 4         Q.    Any discussion?
 5         A.    Managers should discuss with their
 6    employees anything -- anything the employee needs
 7    to know pertaining to their particular role.  Part
 8    of the on-boarding process, as I mentioned before,
 9    people will take the Integrity First training --
10    part of that training, which gets at some of these
11    issues around protecting of confidential
12    information, proprietary information, et cetera.
13         Q.    What specifically is told to employees
14    that are coming on board?
15         A.    I don't know.  There's -- we hire
16    hundreds of employees a year.
17         Q.    With regard to investment advisors or
18    brokers, is there anything specific covered that
19    you know?
20         A.    Not to my -- I don't know.  I don't
21    know.
22              MR. ROFFE:  I'd like to mark this
23         Bartle 4.
24              (Bartle Exhibit 4, defendants' online
25         training records, marked for identification.)
```

Page 50

```
 1                         Bartle
 2        Q.    Have you ever seen this document
 3   before?
 4        A.    I have not seen this document.
 5        Q.    Do you know what this is referring to?
 6        A.    Yes.  It's the download of the
 7   defendants' training records, online training
 8   records.
 9        Q.    Could you point out which training
10   sessions would have encompassed proprietary
11   information?
12        A.    Can you restate that question, please?
13        Q.    Could you point out to me which
14   training sessions on this list would have
15   encompassed training in proprietary information?
16        A.    Training on proprietary information?
17        Q.    On proprietary information.
18        A.    Okay.
19              MR. ZAHNER:  You mean training
20        exclusively or that would include?
21              MR. ROFFE:  That would include, that
22        would include.
23              MR. ZAHNER:  Okay.
24        A.    The Affirm Your Commitment to Genworth.
25        Q.    And what page is that on?
```

Page 68

1                        Bartle

2          A.    To my understanding, no.  Those are

3     driven by the storyboard.

4          Q.    Thank you.

5                I'd like to go back right now to what's

6     been marked Bartle Exhibit 1, the document

7     entitled "Integrity:  Spirit & Letter of our

8     commitment."  Have you seen this document before?

9          A.    Spirit & Letter, Bartle 1?  I have,

10    yes.

11         Q.    What is it?

12         A.    It's the GE -- it's GE's code of

13    conduct.

14         Q.    Was this in force when the defendants

15    became employees of Genworth?

16         A.    Can you restate the question?

17         Q.    Was this document in force when GE --

18    when the defendants joined on with Genworth?

19         A.    No.  The document that would have been

20    in force when they joined with Genworth would have

21    been the Spirit -- the Integrity First code of

22    conduct.  This document would have been in force

23    prior to Genworth's -- let me rephrase my answer.

24                At the time of the trigger date,

25    Genworth -- all employees would have been under

Page 69

```
 1                          Bartle
 2      the Integrity First.  That was the day they became
 3      an employee of Genworth.  Prior to that when we
 4      were still part of GE, this is the document that
 5      would have been in force.
 6          Q.    And when the defendants were first
 7      hired, would this document have been in force?
 8          A.    Not all the defendants were hired at
 9      the same time.
10          Q.    Okay.
11          A.    So the defendants that were hired
12      post-2005 would have been under the Integrity
13      First.  Defendants that were hired pre-2005,
14      trigger date, would have been under -- they would
15      have been bound by Integrity First.
16          Q.    And the trigger date you've been
17      referring to is the date at which Genworth broke
18      off from GE; correct?
19          A.    It's the day that Genworth became --
20      GE's ownership of Genworth became less than 51
21      percent.  At that point we came off of the
22      Genworth -- the GE benefits plan.  We were our own
23      separate company at that point.
24          Q.    Okay.  Just to make the record clear.
25                Is this document the predecessor to
```

Page 70

1                        Bartle
2      Bartle Exhibit 2?  Does it encompass the same
3      purpose as Bartle Exhibit 2 prior to the trigger
4      date?
5           A.    No.  And I want to clarify my answer.
6      This document was the -- was the predecessor to
7      the code of ethics Integrity First document.
8           Q.    Which is Bartle Exhibit 2; correct?
9           A.    No, that's the training.  Bartle
10     Exhibit -- sorry, what was Bartle Exhibit 2?
11          Q.    I'll put Bartle Exhibit 2 in front of
12     you.
13          A.    Yeah, okay.  Thank you.  You were
14     pointing to that.
15                MR. ROFFE:  I had my hand on it.  For
16          the record, when he said I was pointing to
17          that, I had my hand on Bartle Exhibit 5.  So
18          it was confusing.
19          Q.    So just to make the record clear,
20     Bartle Exhibit 1 would have been the predecessor
21     to Bartle Exhibit 2 before the trigger date?
22          A.    That's correct.
23          Q.    And it applied to those defendants who
24     were hired prior to the trigger date by the firm?
25          A.    That's correct.