# EXHIBIT X

```
                                                                    1
```

```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
```

| | | |
|---|---|---|
| GENWORTH FINANCIAL WEALTH | . | Case No. 3:09-CV-01521 |
| | . | (VLB) |
| MANAGEMENT, INC., | . | |
| | . | |
| Plaintiff, | . | |
| | . | Hartford, Connecticut |
| v. | . | April 8, 2010 |
| | . | |
| TIMOTHY MCMULLAN, ET AL., | . | |
| | . | |
| Defendants. | . | |

. . . . . . . . . . . . . .

```
               HEARING ON MOTION TO COMPEL AND
                  TEMPORARY RESTRAINING ORDER
            BEFORE THE HONORABLE VANESSA L. BRYANT
                  UNITED STATES DISTRICT JUDGE
```

APPEARANCES:

For the Plaintiff:      Robinson & Cole
                        By:  ELIZABETH SMITH, ESQ.
                        280 Trumbull Street
                        Hartford, CT 06103

                        Sonnenschein, Nath & Rosenthal
                        By:  SANDRA D. HAUSER, ESQ.
                             DAVID R. BAUM, ESQ.
                             REID L. ASHINOFF, ESQ.
                        1221 Avenue of the Americas
                        24th Floor
                        New York, NY 10020

                        Paul Hastings, Janofsky & Walker
                        By:  BRAD BLOODWORTH, ESQ.
                        875 15th Street, N.W.
                        10th Floor
                        Washington, DC 20005

Proceedings recorded by electronic sound recording.
Transcript prepared by transcription service.

---

BOWLES REPORTING SERVICE
P.O. BOX 607
GALES FERRY, CONNECTICUT 06335
(860) 464-1083

1   of things over a period of years, had stacks of paper
2   on literally thousands of accounts. And by the way,
3   that was not something that I just did; it was a common
4   practice. I grew the business, I think, very
5   successfully. In fact, in five years, I believe the
6   amount of money that we brought in was about
7   $658,000,000. And just to put that in perspective,
8   that was larger than the entire group was worth in the
9   previous 17 years.
10              THE COURT: Were you compensated for that
11  work?
12              THE WITNESS: I was.
13              Now, so in terms of downloading, there were
14  certain things that I downloaded in the -- as to the
15  previous three months before my departure. So,
16  somewhere in the neighborhood of April to June of 2008.
17              THE COURT: What did you download between
18  April and June?
19              THE WITNESS: A variety of things, some client
20  information, some research, ACT database, which was a
21  contact management system, some asset lists, things of
22  that nature.
23              THE COURT: Why?
24              THE WITNESS: I thought I could use that in
25  broker protocol.

44

1       THE COURT: You downloaded them for your
2  personal pecuniary benefit?
3       THE WITNESS: Yes.
4       THE COURT: Okay.
5       On what computer did you download that
6  information?
7       THE WITNESS: I -- well, I didn't download it.
8  I made copies on CD's. I downloaded them from my
9  office, my laptop.
10      THE COURT: Yes.
11      THE WITNESS: Onto CD's.
12      THE COURT: Yes. And then what did you do?
13      THE WITNESS: I just kept them.
14      THE COURT: Where?
15      THE WITNESS: On some -- at my office, most at
16  my office.
17      THE COURT: And did you inquire of anyone as
18  to whether you were entitled to do that?
19      THE WITNESS: No, I did not.
20      THE COURT: Okay.
21      THE WITNESS: I had thought, just in terms of
22  why I would think that Genworth was a broker protocol
23  signatory firm, I had spoken to the person that ran the
24  division where our license was held, called Genworth
25  Financial Advisors. And I had spoken to him over the

```
 1   previous years about recruiting, because they were --
 2   he was telling me that they were trying to recruit
 3   folks from Merrill Lynch and other big firms.  So,
 4   being a Fortune 500 company, I assumed that they were
 5   broker protocol.
 6           THE COURT:  And you yourself had never worked
 7   for a company that was a broker protocol?
 8           THE WITNESS:  I did not.
 9           THE COURT:  So again, what did you do with
10   this material?  You just kept it?
11           THE WITNESS:  That's correct.
12           THE COURT:  And you don't have it any longer?
13           THE WITNESS:  I don't.
14           THE COURT:  Okay, because what happened?
15           THE WITNESS:  Because I found out I couldn't
16   keep it.  It was not part of broker protocol.
17           THE COURT:  How did you find that out?
18           THE WITNESS:  Our attorney.
19           THE COURT:  What attorney?
20           THE WITNESS:  An attorney for Stark and Stark,
21   who was handling the RIA.
22           THE COURT:  What is the RIA?
23           THE WITNESS:  The registered investment
24   advisory.
25           THE COURT:  Okay.
```

1          And so you -- all right.
2          About when did you discover that you could not
3  retain that information?
4          THE WITNESS:  Like early July.
5          THE COURT:  July of what year?
6          THE WITNESS:  Of 2009.
7          THE COURT:  July of 2009.
8          And then what did you do with it?
9          THE WITNESS:  I destroyed it.
10         THE COURT:  How did you destroy it?
11         THE WITNESS:  I broke up the CD's in small
12 pieces and got rid of them.
13         THE COURT:  In the course of your preparation
14 for the -- let me back up.  What securities licenses do
15 you hold?
16         THE WITNESS:  Series 7 and Series 24, Series
17 55.
18         THE COURT:  Okay, in preparation for sitting
19 for those examinations, did you learn about the ethical
20 obligations of a broker to their employer?
21         THE WITNESS:  I guess I did.  I don't recall
22 exactly what they were.  I also had, you know, some
23 serious concerns about the ethics of what the company
24 was doing.
25         THE COURT:  Sir, this case is not about your

1  demonstrative number 10, please.  This is another email
2  from your home email account to Mr. Magnus at Schwab,
3  isn't it?
4  A.  It is.
5  Q.  It's dated May 19, 2009, correct?
6  A.  Correct.
7  Q.  And it says, "Andrew, attached is a complete asset
8  list.  Let me know if you have any questions.  Thanks,
9  Tim."
10        What's attached to this is a list of the
11  securities held by the Genworth clients and the PCG
12  Group, isn't it?
13  A.  It appears that way.
14  Q.  So, obviously, this was inputted into your
15  computer too, Mr. McMullan, or you wouldn't have been
16  able to forward it, isn't that correct?
17  A.  No, I believe I just cut and pasted from a CD onto
18  my email.
19  Q.  You took it from a CD, and you loaded it onto your
20  computer, is that correct?
21  A.  I'm not computer savvy, so I don't know.  I
22  thought I just cut and pasted this information from the
23  CD into the email.
24  Q.  So, you loaded it into your computer, and you
25  emailed Genworth's complete client asset list for the

```
 1   Q.   Mr. McMullan, you took what you said was something
 2   on the CD.  You loaded it into your personal computer,
 3   and you forwarded it to Schwab, didn't you?
 4   A.   I don't recall ever loading it.  My understanding
 5   is -- again, I'm not computer savvy, so I believe I cut
 6   and pasted something from a CD and entered it into an
 7   email that I sent.  It had CUSIP numbers and general
 8   asset names.
 9           THE COURT:  Okay.
10           Could we -- let's just break this down.  You
11   had the CD.  You made it in your office.  It didn't
12   stay in your office.  You took the CD home?
13           THE WITNESS:  I did.
14           THE COURT:  Okay.
15           And then when you took the CD home, did you
16   insert it into your home computer?
17           THE WITNESS:  I did.
18           THE COURT:  Okay.
19           And did you then have an open file with the
20   material contained on the CD on the screen of your home
21   computer?
22           THE WITNESS:  No, not that I'm aware of.
23   Again, I --
24           THE COURT:  All right.
25           So, how did you cut and paste this information
```