

SNR Denton US LLP
1221 Avenue of the America
New York, NY 10020 USA

Reid Ashinoff
reid.ashinoff@snrdenton.com
D  +1 212 768 6730
T  +1 212 768 6700
F  +1 212 768 6800
snrdenton.com

December 28, 2011

**VIA ELECTRONIC FILING**

The Honorable Gary R. Brown
United States Magistrate Judge
100 Federal Plaza
Central Islip, New York  11722-4451

    Re:    *Michael J. Goodman, et al. v. Genworth Financial Wealth Management, Inc., et al.*,
              Case No. 09-5603

Dear Judge Brown:

      Defendants respectfully submit this letter brief in opposition to Plaintiffs' motion concerning whether the District of Connecticut intended or anticipated that its injunction would apply to subpoenaed testimony by the enjoined TJT Defendants.  Defendants also submit that this Court may not readdress this question, given that it has been previously presented and ruled upon three times, twice by the Connecticut District Court which issued the injunction, and once by this Court.  Finally, this letter addresses what protections Genworth would seek should further testimony in this action be contemplated by this Court from these enjoined witnesses.

      The District of Connecticut which issued the injunction has already squarely ruled that its injunction applies to and limits deposition testimony by these TJT witnesses pursuant to subpoena.  When the Plaintiffs first served the TJT Defendants in Connecticut with subpoenas to testify in this case earlier this year, the TJT Defendants promptly sought the following relief from the Connecticut court:

> Defendants hereby move this Court <u>to clarify and/or modify the preliminary injunction order</u> issued in this case by Judge Vanessa Bryant on June 10, 2010 <u>to enable defendants, who have been subpoenaed to give deposition testimony</u> and produce documents in a class action lawsuit currently pending <u>in the Eastern District of New York</u>, <u>to answer questions</u> and produce documents at the depositions without facing claims that such testimony or document production, <u>pursuant to the subpoenas</u>, constitutes a violation of Judge Bryant's preliminary injunction order.

(Ex. A; CT. Dkt 177 at p. 2) (emphasis added)  There is thus no doubt that the TJT Defendants sought a ruling that the injunction does not apply to subpoenaed deposition testimony, or if it does, that the Connecticut injunction be modified to allow such testimony.

      Magistrate Judge Smith of the District of Connecticut, in swiftly recommending the denial of that motion, called it an attempt to undermine the injunction in "an obvious attempted 'end run.'"  (Ex. B; CT Dkt. 190)  If the District of Connecticut believed the injunction did not apply to subpoenaed deposition testimony, the TJT Defendants' motion would have been granted.  Judge Smith further found that Judge Lindsay's prior ruling on the same question to the same effect was a fair and adequate process – that the Connecticut injunction <u>would</u> apply to the TJT Defendants' depositions in this case – and that these witnesses could be instructed not to answer questions that might violate the injunction.  Judge Smith was referring to Judge Lindsay's June, 2011 ruling that "At the depositions, the non-parties may be instructed not to answer questions that would violate that injunction issued by the Connecticut Court." (Ex. C; Dkt. 35)  Plaintiffs here never appealed Judge Lindsay's Order.  Judge Smith's recommended ruling was adopted by Connecticut Federal District Judge Dorsey on August 31, 2011, which Judge Dorsey called a "well-reasoned recommended ruling."  (Ex. D; CT Dkt. 222)[1]

---

[1] While Plaintiffs here are not parties to the Connecticut action, they were aware of and were copied on the motion and thereafter the recommended ruling, and chose not to intervene and be heard.

Case 2:09-cv-01521-RBC Document 259-1 Filed 01/25/12 Page 2 of 6
Case 3:03-cv-01522-RBC Document 85 Filed 12/28/11 Page 2 of 6 PageID #: 1954

The Honorable Gary R. Brown
December 28, 2011
Page 2

Despite Judge Lindsay's order allowing instructions to enforce the injunction, at a July 7, 2011 hearing Plaintiffs' counsel again argued that the TJT case injunction does not apply to the depositions in this case, which led to the following exchange in which Judge Lindsay made clear the Connecticut injunction would apply:

> MR. TULLMAN: \* \* \* **[W]e think that there is basically sound judicial authority showing that we are not subject to that injunction, and this Court is not confined by the ruling in that injunction. These are different claims, different parties, in a separate jurisdiction.**
>
> JUDGE LINDSAY: **I disagree with you, okay? So, let's start with that.**
>
> \* \* \*
>
> **[T]o the extent that there's a question right now as to whether or not I'm going to implement that court's order, I want to disabuse you of any notion that I won't be implementing that order. I absolutely will abide by the decision of that court.**

(Dkt. 46, 7/7/11 Transcript at pp. 4-5) (emphasis added)

Thus, Judge Lindsay, Judge Dorsey, and Judge Smith have each ruled that the injunction applies to the subpoenaed testimony in this case, and each endorsed a procedure in which the TJT Defendants would be instructed not to answer questions that could violate the injunction. Plaintiffs here never appealed Judge Lindsay's rulings. The TJT Defendants' depositions proceeded in Connecticut pursuant to subpoenas served in Connecticut, as three Federal judges directed. The issue of whether the instructions given by the TJT witnesses' Connecticut counsel in response to particular questions comported with the injunction is currently fully briefed and *sub judice* in Connecticut. (See Exs. E, F, G, H and I; Briefs submitted by Plaintiffs, Defendants and TJT in Connecticut; CT Dkt. 236, 241, 246)

In the face of these three prior, consistent rulings by this Court and the District of Connecticut governing the three depositions taken in Connecticut pursuant to these orders, it would be legal error for this Court to now revisit or disturb these prior rulings, especially the Connecticut court's rulings that its own injunction applies to the testimony of these witnesses (see discussion below). The Connecticut rulings are binding on the TJT Defendants, and are the law of that case.

Because Your Honor directed Defendants to rebrief this issue, however, we submit that the Connecticut injunction is clearly applicable to the TJT witnesses' subpoenaed testimony here. The Connecticut injunction does not enumerate certain forms of disclosures that are prohibited, such that other kinds of disclosures are presumptively acceptable. Instead it prohibits <u>all disclosure</u> of Genworth's confidential information -- with one exception. The injunction states:

> (2) The Defendants shall refrain from utilizing <u>any</u> of Genworth's client information, lists, or data <u>for any purpose</u>, <u>other than</u> as authorized by Federal Rules of Civil Procedure <u>for this</u> [Connecticut] pending <u>litigation</u>;
>
> (4) The Defendants <u>shall refrain from</u> disclosing, or <u>further disclosure of</u>, any client or information regarding Genworth's operations where such information is a protected trade secret, or consists of confidential information that the Defendants learned during the course of their employment with Genworth;
>
> (5) The Defendants <u>shall refrain from disclosing</u> the nature of Genworth's relationship with Robert Brinker, and the contents of the class action complaint, to the extent that such information reflects protected trade secrets, or other confidential information that the Defendants learned during the course of their employment with Genworth;
>
> (6) The Defendants <u>shall not use any</u> of Genworth's proprietary information <u>for their own</u>

The Honorable Gary R. Brown
December 28, 2011
Page 3

> advantage or on the behalf, or for the benefit of, a third party, including without limitation to providing context for the pending class action proceeding;

(CT Dkt. 101) (emphasis added) These provisions of the injunction issued by the District of Connecticut are blanket prohibitions. They state that the TJT Defendants "shall refrain from utilizing," "shall not disclose,' "shall refrain from disclosing" and "shall not use" Genworth's confidential information.

The order plainly prohibits disclosure to anybody, and an injunction that prohibits disclosure to anybody cannot be avoided by simply claiming that it does not mention some specific form of disclosure to somebody. The issuance of a subpoena in this case does not change the scope or meaning of this injunction, or allow parties subject to it to blithely ignore its provisions. A subpoena is not a magic wand that allows a party to disregard or change an existing valid court order. To the contrary, FRCP Rule 45(c)(3)(a) mandates that "the issuing court must quash or modify a subpoena that (iii) required disclosure of privileged or other protected matter, if no exception or waiver applies" (emphasis added). FRCP Rule 26(b)(1) contemplates that permissible discovery may be "otherwise limited by Court order." Here, the Connecticut injunction is such a court order. Judge Lindsay's June 2011 Order (Ex. C) properly recognizes these limits to the subpoena in this case.

Indeed, if Plaintiffs' argument were accepted, the abrogation of the injunction would not be limited to subpoenas. For example, the injunction also does not expressly prohibit taking out a full page ad in the Wall Street Journal and filling it with Genworth's confidential information. The notion that the injunction's blanket restrictions on disclosure can be so easily subverted by claiming they do not mention a form of or recipient of disclosure does obvious violence to both the express text as well as the intent of the injunction.

Moreover, the Connecticut injunction does contain one explicit exception. Paragraph (2) allows the TJT Defendants to utilize Genworth's data "for this [CT] pending litigation." The singular expression of this exception undermines Plaintiffs' argument that there is also an (unmentioned) exception for subpoenaed testimony in a different case, *i.e.* their putative class action here.

<u>This Court May Not Modify or Construe More Narrowly the Connecticut Court's Injunction</u>

As stated above, the District of Connecticut is the only correct court to decide whether its injunction includes subpoenaed deposition testimony – a decision it has already made – under the fundamental law that if there is an issue as to the scope of a federal court's order, the issuing court is the one appropriate venue to decide that question. This is the holding of *Alley v. U.S. Dept. of HHS*, 590 F.3d 1195 (11th Cir. 2009), where the court analyzed an attempt to bypass an injunction issued by the Middle District of Florida in 1979. In 2007, plaintiff sued in the Northern District of Alabama claiming that materials she sought from HHS were not covered by the 28 year old, 1979 MD FL injunction. As Plaintiffs urge this Court to do here, the Northern District of Alabama construed the original injunction narrowly, and ordered disclosure. The Eleventh Circuit reversed, rejecting the district court's attempt to whittle down the scope of another federal court's injunction to facilitate discovery in its own case, even though the moving party had no involvement in the original injunction proceedings. After noting that the Northern District of Alabama had found the injunction not to apply under the general rules that injunctions should be narrowly tailored and state in reasonable detail the conduct that is restrained, the Eleventh Circuit stated:

> That principle, however, is one that guides district courts in issuing injunctions and appellate courts in reviewing the validity of them. That is not what the district court was, or this Court is, authorized to do in this proceeding. This is not the time or place to review the wisdom of the FMA injunction, or whether it complies with Federal Rule of Civil Procedure 65(d), or to whittle down its reach if we think it should have been drafted more narrowly. *Cf. United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 237 n.9, 95 S. Ct. 926, 935 n.9, 43 L. Ed. 2d 148 (1975) ("[M]odification might be appropriate, but modification disguised as construction was not." (citations omitted)). <u>Permitting those types of inquiries into the injunction would condone an impermissible collateral attack on it</u>. (Id. at 1205) (emphasis added)

Likewise, for this Court to craft a "subpoena exception" to a Connecticut injunction that prohibits any disclosure of confidential information is whittling down the injunction and a prohibited collateral attack on the injunction under

*Alley*. The injunction at issue here clearly contains no exception language for subpoenaed deposition testimony. The Eleventh Circuit concluded:

> If Alley believes the FMA injunction is invalid, overly broad, or outdated, she can challenge it in the Middle District of Florida after joining all necessary parties. If dissatisfied with that court's ultimate decision, she can appeal it to this Court. We will not speculate about the outcome of such a proceeding or appeal, but we do reject Alley's attempt to collaterally attack the Middle District of Florida's *FMA* injunction in this Northern District of Alabama FOIA lawsuit. (Id. at 1210)

The Eleventh Circuit's ruling is consistent with numerous federal appellate rulings. It is well recognized that a district court "is presumed to know its own injunction." *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 293 (2d Cir. 2008) (Jacobs, J., concurring), and the district court issuing the injunction, "is in the best position to interpret its own orders." *Matter of Chicago, Rock Island & Pacific R. Co.*, 865 F.2d 807, 810 (7th Cir. 1988); *Vaughns by Vaughns v. Bd. of Educ.*, 758 F2d 983, 989 (4th Cir. 1985) ("the district court... is best able to interpret its own orders."). In fact, it has also been held in this Circuit that the court issuing the order is the <u>exclusive court</u> that should handle enforcement and interpretation of its prior order:

> Despite the ambiguity in the Orders, the Court finds that the Court has exclusive jurisdiction over enforcement and interpretation of the Orders. If there was no exclusive jurisdiction, the Orders would be subject to inconsistent interpretations all over the country, which would emasculate the Orders. It would also encourage forum shopping by the party seeking to have the Orders interpreted. If the party did not like one court's interpretation of the orders, it could seek out another forum that might agree with the party's position. The only way that the Orders can have any practical force is if the Court is the first and final voice on enforcement and interpretation of the Orders.

*American Booksellers Ass'n. v. Houghton Mifflin Co., Inc. et al.*, 94 Civ. 8566, 1998 U.S. Dist. LEXIS 4341, *8-9 (S.D.N.Y. Apr. 3, 1998).

When two federal courts are involved, "One district court should not review the decision of another district court." *Harper v. Trans Union*, LLC, 2005 WL 697490, No. Civ.A. 04-3510, at *2 (E.D.Pa. Mar. 24, 2005). In *Harper*, a class action, the Eastern District of Pennsylvania refused to permit potentially relevant discovery about the size and nature of the class, because defendants were arguably bound by an order from another district court not to reveal that information. The *Harper* court concluded: "[w]ere I to grant plaintiff's motion to compel, I would necessarily interfere with the decision of a district court of coordinate standing. Considerations of comity and orderly administration of justice require that I defer to the judgment of the District of South Carolina on this matter." *Id.* at *2. The *Harper* court held that where, as here, the class plaintiff sought to discover information subject to a federal court order prohibiting disclosure, <u>the proper procedure was for the class plaintiff to intervene in and seek relief from the court which had issued the restrictive order</u>. *Id.* In this, the *Harper* court was adhering to a long line of cases (cited in *Harper*) requiring federal courts to respect the orders of sister federal courts.

The *Harper* holding is an example of the procedure mandated by *Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995). In *Celotex*, the successful respondent won a judgment in the Northern District of Texas and wanted to execute against its adversary's appeal bond once its victory was affirmed by the Fifth Circuit. However, the U.S. Bankruptcy Court for the Middle District of Florida entered an injunction prohibiting respondents from executing on the bond without the permission of the bankruptcy court. The Supreme Court held that if respondent wanted to challenge the injunction, it needed to do so in the bankruptcy (issuing) court, but could not collaterally attack the injunction in the federal courts in Texas. *Id.* at 313.

The *Baker* case, on which Plaintiffs have relied, has no bearing on how the federal courts are required to treat the orders of a sister federal court. *Baker v. GMC*, 522 U.S. 222 (1998). Full faith and credit cases like *Baker* are not precedential because there is no comparable provision as to federal courts. This basic concept was explained in *Palmer and Cay, Inc. v. Meaths*, 404 F.3d 1297, 1310 n.20 (11th Cir. 2005). "Contrary to both

The Honorable Gary R. Brown
December 28, 2011
Page 5

parties' arguments, neither the Full Faith and Credit Clause nor its implementing statute applies to judgments issued by federal courts. 'By their terms they govern the effects to be given only to state-court judgments (and, in the case of the statute, to judgments by courts of territories and possessions). And no other federal textual provision, neither of the Constitution nor of any statute, addresses the claim-preclusive effect of a judgment in a federal diversity action.'" *Semtek Int'l Inc. Lockheed Martin Corp.*, 531 U.S. 497, 506-07, 121 S. Ct. 1021 (2000).

Plaintiffs' other cited cases do not apply here. The injunction in *City of New York v. Mickalis Pawn Shop, LLC* was found insufficiently specific because it directed the defendants "to act 'in full conformity with applicable laws pertaining to firearms,' and to 'adopt [ ] appropriate prophylactic measures to prevent violation" of those laws, without . . . identifying the ways in which the defendants must alter their behavior." 645 F.3d 114, 144 (2d Cir. 2011). In contrast, the District of Connecticut made clear that the TJT Defendants are prohibited from disclosing Genworth's confidential information, period. *Schmidt v. Lessard* is even more inapposite. In that class action, the court found a statutory scheme regarding involuntary commitment unconstitutional and entered a judgment stating only that the class was entitled to "injunctive relief against further enforcement of the present [] scheme" with no clarification as to scope or terms. 414 U.S. 473 (1974). Neither case stands for the proposition that an injunction prohibiting the disclosure of information must also list every conceivable form of disclosure in order to be valid. Moreover, paragraph (2) of the injunction gave the TJT Defendants an exception to use such information in their own defense in "this" case, *i.e.*, the Connecticut action. No such exception was given for testimony in any other lawsuit, *i.e.*, this *Goodman* case. *Alderson v. United States*, cited by Plaintiffs, has absolutely nothing to do with construing or applying an injunction. Plaintiffs also cite *Weil Ceramics & Glass, Inc. v. Work*, another case that has nothing to do with an injunction, for the unremarkable proposition that discovery is generally favored. So is compliance with other existing court orders.

In short, the District of Connecticut is the only appropriate court to determine the scope of the injunction, and it has ruled that its injunction holds no exception for the TJT Defendants' deposition testimony in this case. This Court should not second guess or disagree with that ruling. The further question of whether the instructions given at the depositions by counsel for the TJT Defendants were proper is already fully briefed and *sub judice* in Connecticut, and this Court should not interject a potentially conflicting decision into the ongoing process.

If the depositions were ordered to go forward without the restrictions of the injunction (to which Defendants object for the reasons discussed above), in addition to having the testimony subject to the protective order, Defendants would ask for the following additional protections: (1) that such order be stayed to allow Defendants to appeal such ruling, given the conflict created between two different federal court rulings, and the irreparable harm to Defendants of the obtaining and use of enjoined testimony against Defendants (akin to privilege waiver rulings) prior to the right of appeal; (2) that the District of Connecticut's June, 2010 rulings concerning both the bias and lack of integrity of the TJT Defendants (Ex. J; CT Dkt. 100) be treated as admissible evidence in all future proceedings in this case. The Connecticut court based its rulings on findings, after the submission of extensive evidence and a two day evidentiary hearing, that the TJT Defendants willfully destroyed evidence of their wrongdoing, and were untruthful under oath in open court, all motivated by a desire to harm Genworth and take its business. Given the shortness of time remaining to conduct discovery here, Defendants cannot be expected to re-litigate all the TJT Defendants' credibility issues in the limited discovery period remaining in this case.

Respectfully submitted,

/s/ Reid L. Ashinoff

CERTIFICATE OF SERVICE

       The undersigned hereby certifies that I have caused to be served a true and correct copy of the foregoing letter addressed to The Honorable Gary R. Brown, U.S. Magistrate Judge, on this 28th day of December 2011 via electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system. I have also caused the foregoing letter to be served upon David Friedman, Esq., counsel for the TJT Defendants.

                                             /s/ Reid L. Ashinoff
                                              Reid L. Ashinoff