UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GENWORTH FINANCIAL WEALTH MANAGEMENT, INC., <br><br> Plaintiff, <br><br> v. <br><br> TIMOTHY MCMULLAN, JAMES COOK, TIMOTHY MCFADDEN, KAREN BAZON, TAMARA RIVERA and TJT CAPITAL GROUP, LLC, <br><br> Defendants. | Civil Action No. 3:09-CV-1521 (PCD) |
| TIMOTHY MCMULLAN, JAMES COOK, TIMOTHY MCFADDEN, AND TJT CAPITAL GROUP, LLC, <br><br> Third-Party Plaintiffs, <br><br> v. <br><br> GURINDER AHLUWALIA, <br><br> Third-Party Defendant. | February 2, 2012 |

**PLAINTIFF'S / THIRD-PARTY DEFENDANT'S RESPONSE TO
DEFENDANTS' MOTION TO CLARIFY PRIOR RULINGS**

Plaintiff/Third-Party Defendant Genworth Financial Wealth Management, Inc.

("Genworth") and Third-Party Defendant Gurinder Ahluwalia (collectively "Plaintiffs")

hereby respectfully submit this memorandum in response to Defendants'/Third-Party

Plaintiffs' Motion to Clarify Prior Rulings (Dkt. 253) (Defendants' "Second Motion to

Clarify" or "2d Mot. to Clarify").

## INTRODUCTION

The damages claims brought in the FINRA Arbitration[1] by two former Genworth

clients, Baroukh and Trudy Levi, against Defendants McMullan and McFadden (the

"TJT Respondents") relate entirely to the Levis' claims that the TJT Respondents

removed the Levis' assets from the stock market at the March, 2009 market low, without

the Levis' permission, and failed to reinvest the funds when the Levis asked them to do

so.  (*See* the FINRA Statement of Claim (the "FINRA Complaint"), Dkt. 253-1 (submitted

under seal)) The only relevant liability question in the FINRA Arbitration relates to the

pertinent communications between the TJT Respondents and the Levis. It has never

been Genworth's position that communications between Genworth clients and

Genworth employees, during the course of their employment with Genworth, is

disclosure of confidential information barred by this Court's June 10, 2010 injunction

(Dkt. 101) (the "Injunction").  Nor has it ever been Genworth's position that the February

11, 2011 discovery order entered in this action (Dkt. 152) (the "Discovery Order") bars

discovery into the allegations against the TJT Respondents regarding the removal of the

Levis' assets from the stock market in 2009.

Given the nature of the claims against the respondents in the FINRA Arbitration,

it is highly unlikely that the TJT Respondents would be required to disclose or use any

confidential Genworth information in mounting a full defense to those claims.

Consequently, Genworth in no way seeks to preclude the TJT Respondents from

seeking discovery into these allegations made against them regarding the removal of

the Levis' assets from the stock market in March of 2009, and the alleged failure to

reinvest the money thereafter.  However, it would be a gratuitous violation of the

---

[1] *Baroukh Levi et al. v. Timothy McFadden et al.*, FINRA No. 11-03458.

Injunction for the TJT Respondents to use the FINRA Arbitration as another platform to feed evidence, testimony or information regarding the allegations made in the *Goodman* securities class action against Genworth in the Eastern District of New York, as Genworth has made clear to the TJT Respondents.  Indeed, Genworth, while named in the FINRA Complaint, is no longer a party to the FINRA Arbitration, as the TJT Respondents here concede.  The remaining FINRA respondents, Capital Brokerage, Alexander Overkamp, and Jeffrey Joseph, intend to move before the FINRA Arbitration panel to limit discovery in that action to evidence surrounding the Levis' claims that their assets were removed from the stock market in March of 2009.  Because neither Genworth nor any other defendant to the E.D.N.Y. class action is a party to the FINRA Arbitration, discovery is likely to be so limited, obviating the concerns of the TJT Respondents about responding in the FINRA Arbitration.  In the unlikely event that the FINRA Arbitration panel allows broader discovery into the class action allegations notwithstanding that Genworth is no longer a party to that arbitration, Genworth and the TJT Respondents can revisit the issue then.

The TJT Respondents' Second Motion to Clarify, does, however, highlight the need for an expedited ruling on Plaintiffs' Motion to Enforce This Court's June 10, 2010 Injunction with Respect to the Depositions of the TJT Defendants (Dkt. 235).  On January 24, 2012, E.D.N.Y. Magistrate Judge Brown, presiding over discovery in the Goodman class action, ruled that "the [Connecticut Federal Court] Injunction is simply inapplicable to deposition testimony of the TJT witnesses in this case," and specifically that it does not bar questions to the Defendants here relating to whether Genworth allegedly committed fraud.  (Dkt. 259-1 at 10, 13).  Plaintiffs believe that Judge Brown

had no right to construe this Court's Injunction and to make such a ruling, and is

appealing it for the reasons expressed in Genworth's December 28, 2011 Letter to

Magistrate Judge Brown (submitted to Your Honor as Dkt. 259-2).  Genworth believes

that the very purpose of the Injunction here was to prevent exactly that type of testimony

by the TJT Respondents, as this Court, and the previous magistrate judge in the

Eastern District of New York, Magistrate Judge Lindsay have both repeatedly affirmed.

(*Id.* at 1-2).

However, Defendants now take the disingenuous position that "they will honor

any **further** directives that may be issued by this Court and the District Court for the

Eastern District of New York."  (Dkt. 260 at 3) (emphasis added).  In other words,

Defendants take the position that Judge Bryant's Injunction and this Court's prior

directives are trumped by Magistrate Judge Brown's recent order.  Plaintiffs beg to

differ, however Defendants' position makes clear that a "further directive" from this

Court, reaffirming that the Injunction bars such testimony, is what the Defendants need

to ensure that the Injunction is not violated.  Magistrate Judge Brown's order requires

that depositions of the TJT witnesses commence no earlier that 30 days from the date

of the order (February 23, 2012), and no later than 45 days from the date of the order

(March 9, 2012).  Plaintiffs therefore respectfully request that this Court rule on their

motion before the February 23, 2012 deadline contained in Judge Brown's order.

## FACTS AND ARGUMENT

### A. The Allegations Made Against the TJT Respondents in the FINRA Arbitration Do Not Implicate the Injunction

The only allegation that the Levis make against the TJT Respondents is that they

removed the Levis' assets from the stock market at a market low in March of 2009

without first receiving permission from the Levis to do so, and failed to reinvest those assets for a period of time, causing the Levis to miss out on the market recovery that occurred between March and November of that year.  (*See* FINRA Complaint ¶¶ 19, 51-55, 58-62).  The FINRA Complaint makes clear that the Levis' allegations of damages lie with the removal of their funds from the stock market in March of 2009, not with the class action allegations made against Genworth in the Eastern District of New York.  (*Id.* ¶¶ 30-51, 82 (Stating only that "[t]he Amended Complaint in the Securities Class Action Lawsuit alleges" certain facts, not that the Levis plead them as the basis for any claim, and repeatedly referring to the "relevant period of time" as "March through November 2009.")).

The FINRA Complaint regurgitates the class action allegations against Genworth, but not against the remaining respondents in the FINRA Arbitration.  As the TJT Respondents correctly state, Genworth "is no longer part of the arbitration proceeding," (2d Mot. to Clarify ¶ 5).  The class allegations are clearly not made against the TJT Respondents or any party with whom they could be held jointly and severally liable, as none of the remaining parties in the FINRA Arbitration is a defendant in the putative class action.

The claims at issue in the FINRA Arbitration, and the defenses thereto, are therefore based not on Genworth's confidential information, but on third party communications between the TJT Respondents and the Levis during the time the TJT Respondents were employees of Genworth.  As this Court can see in Genworth's motion papers here (Dkt. 236), Genworth has not taken the position that these third party client communications are confidential information or are barred from disclosure

under the Injunction.  In fact, the other remaining respondents in the FINRA Arbitration have already submitted documentary evidence in defense of the TJT Respondents, showing that the TJT Respondents were acting at the Levis' explicit direction in moving their assets first out of, then back into the market, directly refuting the Levis' claims against the TJT Respondents.

## B. The TJT Respondents' Request is Another Unnecessary Attempt to End Run the Injunction

The TJT Respondents now "request that the Court clarify the [June 10, 2010] Injunction Order [Dkt. 101] and the [February 11, 2011] Discovery Order [Dkt. 152] to permit Defendants to properly and adequately defend themselves in the FINRA Arbitration, and allow them to proceed with discovery as necessary in the Arbitration." (2d Mot. to Clarify ¶ 19).  The TJT Respondents require absolutely no modification of the Injunction to defend themselves against the Levis' actual claims against them.

This is the second motion to clarify the Injunction that Defendants have made. (*See* Defendants' Motion To Clarify And/Or Modify Preliminary Injunction, Dkt. 177 (Defendants' "First Motion to Clarify"))  In ruling against Defendants' First Motion to Clarify, this Court called it "an obvious attempted 'end run.'"  (Recommended Ruling Denying Motion for Clarification, Dkt. 190).  The late Judge Dorsey adopted this Court's "well-reasoned recommended ruling."  (Dkt. 222).  This motion appears to be a similar attempt at an end run.

This Court entered the Injunction based on a finding that the TJT Respondents had "misappropriated protected, proprietary Genworth information" and misused this information in an "unabashed attempt to destroy Genworth's goodwill and customer relations" for their own personal gain.  (Injunction at 15-17).  The TJT Respondents

6

point to the following portion of the Injunction as potentially precluding them from

defending themselves in the FINRA Arbitration:

> (4) The Defendants shall refrain from disclosing, or further disclosure of, any client or information regarding Genworth's operations **where such information is a protected trade secret, or consists of confidential information** that the Defendants learned during the course of their employment with Genworth;

(2d Mot. for Clarification ¶ 2; Injunction at 19 (emphasis added)).

Genworth believes this language does not preclude the TJT Respondents from

disclosing their communications with the Levis, while they were employed with

Genworth, leading to the sale of the Levis' investments.  Similarly, the language in the

Discovery Order of which the TJT Respondents complain states:

> Defendants may not propound, and neither Genworth nor any third party shall be required to respond to, any discovery request, including document requests, interrogatories, deposition questions or any other form of discovery, to the extent the discovery seeks information regarding **Genworth's model portfolios, or Genworth's client portfolios, including but not limited to the investment decisions, composition, marketing and performance of such portfolios, and internal and client communications concerning these subjects**.

(2d Mot. for Clarification ¶ 3; Discovery Order at 4-5 (emphasis added)).

The meaning of this language is clear as well, and precludes discovery into

subjects relating to the putative class action in the Eastern District of New York, not

discovery into the allegations made against the remaining respondents in the FINRA

Arbitration regarding the removal of the Levis' assets from the stock market in March of

2009.  Indeed, the very impetus of the Discovery Order barring the discovery sought by

the TJT Respondents in this lawsuit was that "the discovery sought by the defendants is

irrelevant to the instant case and only relevant to the Class Action." (Discovery Order at 2).

It is therefore unlikely that the TJT Respondents would find it necessary to violate either order to present a complete defense to the damages claims made against them personally in the FINRA Arbitration. Further, to the extent that the TJT Respondents are concerned about other provisions of the orders, Genworth will forebear from seeking sanctions against them under either order for evidence they present in the FINRA Arbitration related specifically to the removal of the Levis' assets from the stock market in 2009.

Nevertheless, the TJT Respondents claim that they "previously approached Genworth's counsel requesting Genworth's input into how Defendants may defend themselves in the FINRA Arbitration without running afoul of the Injunction Order. Genworth's counsel responded by broadly construing the Court's Injunction Order and threatening Defendants." (2d Mot. for Clarification ¶¶ 20-21). In fact, Plaintiff's letter to the TJT Respondents' counsel, attached to Defendants' motion (Dkt. 253-3), put the TJT Respondents on notice, not that Genworth would oppose them mounting a full defense to the specific allegations made against them in the FINRA Arbitration, but that "the allegations made in the Statement of Claim that relate to the [putative class action] pertain only to Genworth Financial Wealth Management ("Genworth") and not to your clients." (*Id.*). The letter goes on to state "We remain available to collaborate with your clients' counsel in the above-referenced action on a defense, supported by documents your clients created, that we believe is available to all respondents in the Levi matter." (*Id.*).

The TJT Respondents claim that Genworth would not be harmed by disclosure of Genworth's confidential information in the FINRA Arbitration because "documents and information in FINRA Dispute Resolution case files are generally confidential and not publicly available." (2d Mot. to Clarify ¶ 14). The TJT Respondents cite to the following portion of a FINRA Regulatory Notice:

> **Confidentiality:** When deciding contested requests for confidentiality orders, arbitrators should consider factors specified in the Guide including, among others, whether disclosure would constitute an unwarranted invasion of personal privacy, or whether the information contains proprietary confidential business plans and procedures or trade secrets.

(*Id.* (citing Ex. 2 to 2d Mot to Clarify at 3)).

This argument misses the central point that, for good and cogent reasons, the TJT Respondents here have been enjoined from disclosing Genworth's confidential information learned by them in the course of their employment anywhere and to anyone. The initiation of the *Goodman* class action and the FINRA Arbitration do not change this Court's Injunction or the need for it, and nothing in this Court's Injunction prevents the TJT Respondents from responding specifically to the alleged unauthorized removal by the TJT Respondents of the Levis' funds from the stock market in 2009.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Second Motion to Clarify. Further, due to Defendants' stated intention to follow Magistrate Judge Brown's order and testify regarding Genworth's confidential information in the *Goodman* class action absent a "further directive" from this Court, Plaintiffs respectfully request that the Court rule on Genworth's pending Motion to

Enforce the Injunction prior to the February 23, 2012 deadline contained in Magistrate

Judge Brown's order.

Dated: February 2, 2012

      Hartford, Connecticut

/s/     Reid L. Ashinoff
Eric W. Wiechmann (ct04331)
Elizabeth M. Smith (ct19808)
ewiechmann@mccarter.com
esmith@mccarter.com
**MCCARTER & ENGLISH, LLP**
City Place I, 185 Asylum Street
Hartford, Connecticut 06103-3495
Tele: 860-275-6700
Fax: 860-724-3397

**SNR DENTON US LLP**
Reid L. Ashinoff  *(admitted phv)*
Brendan E. Zahner *(admitted phv)*
reid.ashinoff@snrdenton.com
brendan.zahner@snrdenton.com
1221 Avenue of the Americas
New York, NY 10020
Tele: (212) 768-6700
Fax: (212) 768-6800

*Counsel for Plaintiff Genworth Financial
Wealth Management, Inc. and Third-Party
Defendant Gurinder Ahluwalia*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that I have caused to be served a true and correct copy of the foregoing document on this 2nd day of February, 2012, via electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.


/s/  Joshua Kroot _____
Joshua Kroot