## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GENWORTH FINANCIAL WEALTH MANAGEMENT, INC. | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| TIMOTHY MCMULLAN, JAMES COOK, TIMOTHY MCFADDEN, KAREN BAZON, TAMARA RIVERA AND TJT CAPITAL GROUP, LLC | ) ) ) ) ) | Civil Action No. 3:09-CV-01521-PCD |
| Defendants. | ) ) ) | |
| TIMOTHY MCMULLAN, JAMES COOK, TIMOTHY MCFADDEN, AND TJT CAPITAL GROUP, LLC | ) ) ) ) | |
| Third-Party Plaintiffs, | ) ) | |
| vs. | ) ) ) | FEBRUARY 15, 2012 |
| GURINDER AHLUWALIA | ) ) | |
| Third-Party Defendant. | ) | |

## REPLY TO RESPONSE TO
## <u>DEFENDANTS' MOTION TO CLARIFY PRIOR RULINGS</u>

David P. Friedman (ct03558)
dfriedman@murthalaw.com
Ka Fei Wong (ct28130)
kwong@murthalaw.com
Murtha Cullina, LLP
177 Broad Street
Stamford, Connecticut  06901
Phone:  203-653-5400
Fax:  203-653-5444

Defendants and Third-Party Plaintiffs Timothy McMullan, James Cook, Timothy McFadden, Karen Bazon, Tamara Rivera, and TJT Capital Group, LLC (collectively "Defendants") submit this reply to the Response to Defendants' Motion to Clarify Prior Rulings by Plaintiffs and Third-Party Defendants Genworth Financial Wealth Management, Inc., and Gurinder Ahluwalia (collectively, "Plaintiffs" or "Genworth") (Docket Entry 269).

Genworth seeks to be the sole arbiter of what Defendants are or are not enjoined from doing, regardless of what this Court's June 10, 2010, preliminary injunction order (the "Injunction Order") actually says or how courts have interpreted it or may interpret it in the future. In doing so, Genworth repeatedly mischaracterizes and distorts everything, from the claims in the FINRA Complaint, to Defendants' statements and intentions, to Genworth's own prior representations and positions. Ultimately, Genworth seeks to control Defendants and impede their ability to defend themselves as they deem appropriate, while interpreting the Injunction Order in whatever way that supports their latest position, even if it contradicts the basis of their initial claims against Defendants and their motion seeking entry of a preliminary injunction.

        A.      **Genworth's Untenable Positions as to Enjoined Information and Its Ambiguous Current Definition of "Client Communications"**

In contending that no clarification is required for Defendants to defend themselves in the FINRA arbitration, Genworth now asserts that "[i]t has **never** been Genworth's position that communications between Genworth clients and Genworth employees, during the course of their employment with Genworth, is disclosure of confidential information," that Genworth "has not taken the position that these third party client communications are confidential information," and that the Injunction Order "does not preclude the TJT Respondents from disclosing their communications with [clients], while they were employed with Genworth . . . ." (Docket Entry 269 (Response) at 2, 5, 7) (emphasis added). In other words, Genworth is representing to this Court that it has **always** been

proper for Defendants to disclose to third parties the substance of their communications with their clients during the course of their employment at Genworth because such communications are not confidential. These communications invariably included emails, discussions regarding performance of portfolios, transmission and discourse regarding the customers' names, addresses, account registrations, statements, transactions, allocations, performance, and compliance with Brinker recommendations. It strains the bounds of credulity for Genworth to make these statements now, given the ferocity with which Genworth previously challenged Defendants' alleged disclosure of such information in the past. More importantly, this apparent abandonment of its previous position illustrates not just the inherent ambiguity of what in fact Genworth claims are "trade secrets" or "confidential information," but also the utter lack of merit and sincerity of Genworth's trade secrets claims in this case.

From the outset of this litigation and, in particular, during the preliminary injunction proceedings, Genworth has taken the position that the ACT database which contains descriptions of the communications between Defendants and their clients were trade secrets and confidential information that belonged to Genworth. (See, e.g., Exhibit 1 (Overkamp Depo. at 15)). Genworth had sought to restrain Defendants from communicating to others information that "Defendants learned by virtue of their employment at Genworth." (Exhibit 2 (4/12/10 TRO Hearing Transcript at 36)). Thus, to say that Genworth has previously taken a much broader view of what Defendants should be enjoined from disclosing, including "client names, phone numbers, contact information, and portfolio management history, as well as notes by Genworth employees about interactions with the client and plans for follow-up" is an understatement. (Docket Entry 1 (Complaint) at ¶ 20). Likewise, in depositions for the class action in the Eastern District of New York, Genworth's counsel objected to a host of questions on the grounds that they invaded the province of the Injunction Order, including

questions regarding conversations between Defendants and their clients, and what Defendants may or may not have provided to their clients.  (See, e.g., Exhibit 3 (11/10/11 Timothy McFadden Deposition) at 237, 240 (objecting to the question:  "In your conversations with your clients during your employment at Genworth, did they make it clear to you that they wanted Mr. Brinker's recommendations to be followed by Genworth?", 253, 285-86, 307 (objection to:  "In your conversations with Mr. W___, did you come to understand that he believed that mutual funds selected for his account in the BJ Group Services came from recommendations of Mr. Brinker?"), 312 (objection to:  "Did you ever provide to any of your clients during the time you worked at Genworth a comparison of the Marketimer portfolio with the corresponding Brinker portfolios at the BJ Group Services?")) (client names redacted herein).  Moreover, in submissions to the Eastern District of New York, Genworth similarly argued that the Injunction Order provided for "blanket prohibitions" against disclosures.  (Docket Entry 258-2 (Dec. 28, 2011 Letter to Judge Brown)).

      Genworth now disclaims any intent to restrict Defendants' use of the substance of their communications with their clients during their period of employment at Genworth.  This plainly has not always been Genworth's position, and the fact that Genworth seeks to shift its position of what it seeks to prevent Defendants from disclosing speaks volumes in terms of the lack of a bona fide basis for the relief it seeks in this case, including its efforts in seeking and obtaining the preliminary injunction to prevent Defendants from using and disclosing the contents of Defendants' communications with their clients.

      First, it should be readily apparent that Defendants would have discussed, and in fact did discuss, with their clients the clients' own names and contact information, account titles, their portfolio management, allocations, investment performance, and compliance with Brinker recommendations.  Likewise, the "notes" contained in the ACT database regarding interactions with

the clients go to the heart of communications between Defendants and their clients. (See, e.g., Exhibit 1 (Overkamp Depo. at 15)). By way of example, in a transcript of a conversation between Jeffrey Joseph, the current PCG leader at Genworth, and one of his clients, Mr. Joseph and his client freely discussed the client's account statements, title, and investment portfolio, as well as Genworth's relationship with Mr. Brinker and the client's allocations into Brinker recommended portfolios. (Docket Entry 46, at 8 (Exhibit 1)) (also attached herein as Exhibit 4). Defendants undeniably had similar communications with their clients. Thus, when Genworth asserts that Defendants are free to disclose the contents of their discussions with their clients, those contents necessarily include all of the information discussed, including client contact information, portfolio allocations and compliance with Brinker recommendations, among many other substantive matters related to the clients' investments.

Second, Genworth's prior arguments throughout this case had been that Defendants cannot disclose such information because it is "confidential" and constitutes "trade secrets". However, now that this extreme position may weaken Genworth's position in the class action litigation in the Eastern District of New York, where the overreach of such a position has been exposed, Genworth has done a 180-degree turnaround and now insists that it has **never** sought to preclude the disclosure of the substance of such communications. This assertion is simply false. Moreover, this assertion undermines the entirety of Genworth's trade secrets claim in this case, including the basis for initially seeking the preliminary injunction, which sought to prevent Defendants from using and disclosing the contents of Defendants' communications with their clients.

Simply put, Genworth cannot have it both ways. It cannot admit, as it now has done, that Defendants' communications with clients are not confidential or trade secrets and may be disclosed,

while at the same time insisting that the substance of those communications are still entitled to "trade secret" protection.[1]

### B.  Genworth's Mischaracterizations Regarding the FINRA Arbitration Proceedings

Genworth insists that there is no need for clarification of the Injunction Order as it applies to the FINRA arbitration. It claims that the Injunction Order does not preclude Defendants McFadden and McMullan (collectively, "the TJT Respondents") from disclosing evidence at the FINRA arbitration because the TJT Respondents allegedly only need to address a narrow category of factual issues that Genworth believes should be the subject of the TJT Respondents' defense. Genworth then suggests that the parties "can revisit the issue" if a motion seeking to limit discovery by other Respondents before the FINRA panel is not granted,[2] and that Genworth will "forbear from seeking sanctions against" the TJT Respondents if the TJT Respondents limit the evidence they present in their own defense in the FINRA arbitration to what Genworth believes is acceptable. (Response at 3, 8). Genworth, which is no longer a party and faces no liability in the FINRA arbitration, essentially seeks to dictate to the TJT Respondents how they should defend themselves in the FINRA action, and seeks to impose limitations on the TJT Respondents as to any defense – when there are currently no limitations on discovery in the FINRA arbitration – under threat of contempt or other sanctions should the TJT Respondents stray from the narrow defense that Genworth deems

---

[1] Genworth's own current interpretation of the Injunction Order suggests that the material Defendants are enjoined from disclosing is much more limited than what Genworth has previously sought to prevent Defendants from disclosing. (Response at 7) (stating that the Injunction Order "does not preclude the TJT Respondents from disclosing their communications with [the FINRA complainants], while they were employed with Genworth, leading to the sale of [the FINRA complainants] investments"). Under this interpretation, no information that Defendants <u>ever</u> discussed with or communicated to <u>any</u> client would be subject to the Injunction Order, including the clients' names, contact information, their portfolio management history, their portfolio allocations, their investment results, or the subject and substance of all those communications, whether verbal or in writing. Conversely, a position that Defendants are limited to disclosing pleasantries exchanged with their clients, but that Defendants would not be able to disclose the substantive discussions Defendants had with those clients, would be absurd.

[2] Genworth suggests, with no basis, that the arbitration panel will grant the motion to limit discovery. Nevertheless, Genworth implicitly admits that the Injunction Order would currently preclude the TJT Respondents from making required disclosures in the FINRA arbitration, thereby necessitating the limiting motion.

appropriate for the TJT Respondents.  Such audacity should be seen for what it is – an outrageous overreach and a thinly veiled threat demanding acquiescence to Genworth's requests or face accusations of trying to "end run" the Injunction Order.  It is unfathomable that Genworth (a non-party to the FINRA arbitration) should have the power to dictate to and limit the TJT Respondents' ability to defend themselves when the TJT Respondents face joint and several liability – and when the remaining Respondents in the FINRA arbitration may be attempting to deflect blame from themselves onto the TJT Respondents.  The TJT Respondents need the latitude to defend <u>all</u> claims against them and to do so in a manner that they deem appropriate.  Likewise, the TJT Respondents have a right to file counterclaims and crossclaims in the FINRA arbitration.  The TJT Respondents should not be forced to accept some vague "forbearance" from Genworth based on Genworth's new interpretation of the Injunction Order and the FINRA Complaint.  Nor are the TJT Respondents seeking an "end run" of the Injunction Order, as Genworth is wont to proclaim; instead, the TJT Respondents merely seek concrete protection and clarification from this Court so that they may properly defend themselves in a separate forum.[3]  It is abusive for Genworth, with its vast resources, to insist that the issue can be "revisited" in the future if necessary, and it is inappropriate to force the TJT Respondents to incur the financial burdens involved with such redundancy.

     Genworth's position is even more disingenuous given its distortion of the proceedings before the FINRA arbitration.  First, in feigning to summarize the FINRA complaint, Genworth ignores that the TJT Respondents are charged with being jointly and severally liable for <u>all</u> claims in the FINRA Complaint.  Moreover, while Genworth broadly asserts that the "class allegations are <u>clearly</u> not made against the TJT Respondents or any party with whom they could be held jointly and severally liable"

---

[3] It is thus ironic that Genworth, in its Motion to Enforce (Docket Entry 236), on the one hand contends that the Court should interpret its own Injunction Order, while on the other hand seeking to impose Genworth's own arbitrary and shifting interpretation of the Injunction Order upon Defendants ("Genworth <u>believes</u> this language does not preclude the TJT Respondents from disclosing their communications . . ." (Response at 7)).

(Response at 5 (emphasis added)), Genworth's interpretation of the FINRA Complaint has no basis, given that: (1) the FINRA Complaint is not nearly as limited as Genworth would have this Court believe (see FINRA Complaint, Docket Entry 253-1 (filed under seal)), and includes the counterclaim allegations filed by Defendants in the instant action (which were filed well before the class action lawsuit was filed) that Genworth had committed fraud on customer accounts and had violated securities laws (id. at ¶¶ 26-29), as well as incorporating claims asserted in the counterclaim and in the class action that McMullan had knowledge of the problems concerning the portfolios (see, e.g., id. at ¶ 87); (2) Genworth is no longer a party to the FINRA arbitration, and thus has no involvement in what transpires before that forum, much less what the Complainants therein ultimately seek to charge and claim against the TJT Respondents; and (3) the allegations that are supposedly "clearly not made against" the remaining respondents have not been stricken from the FINRA Complaint, very much remain part of the FINRA arbitration at this stage, and are incorporated into allegations against the TJT Respondents (id. at ¶ 87). For Genworth to allege that the TJT Respondents will not be affected by the allegations in the FINRA Complaint is therefore presumptuous and false. Perhaps Genworth will not be affected by the allegations in the FINRA Complaint because it is no longer a party. But Genworth is in no position to subject the TJT Respondents to potential liability by demanding that their ability to defend themselves be substantially limited, despite the complete absence of any need to impose such limitations in the confidential FINRA proceeding. Genworth's opposition to the present motion is nothing less than an oppressive attempt to damage the TJT Respondents by seeking to expand a preliminary injunction outside of its contemplated context for a purpose unrelated to the purpose articulated in the Injunction Order itself.

Moreover, Genworth deceitfully seeks to have the Court believe that the disclosure of limited client communication will be sufficient for the TJT Respondents to defend themselves. (Response

-7-

at 5, 7-9). The FINRA Complaint, however, includes allegations regarding actions, including trades and reallocations, taken on the FINRA Complainants' accounts and portfolios, and the management and handling of their portfolios. (See, e.g., FINRA Complaint, Docket Entry 253-1 at ¶¶ 53-55, 59-64, 72-78, 85-94). For the TJT Respondents to be able to truly and fully defend themselves, they will need discovery regarding, and the ability to speak to, the internal processes and policies for the handling and management of accounts, including the execution of trades and allocation of assets on accounts such as those of the FINRA Complainants. How and whether trades and/or re-allocations were performed on the Complainants' accounts, as well as the policies and procedures regarding the execution of such trades or re-allocations, go to the heart of the claims in the FINRA Complaint. (Id. at ¶¶ 59-75). Because this information goes beyond communications between the TJT Respondents and their clients – and even beyond what the TJT Respondents were capable of doing unilaterally while at Genworth – the scope of discovery must be broader. (See, e.g., Exhibit 5 (Murray Depo. at 28) (stating that the TJT Respondents "could not execute a trade in TNET because it's not related to their role."). Thus, Genworth's suggestion that the limited discovery Genworth proposes would suffice is self-serving and unduly limiting of the TJT Respondents' clear right to defend themselves as they deem appropriate.

Lastly, contrary to Genworth's prior misrepresentations that no discovery had taken place in the FINRA arbitration (see Docket Entry 255), Genworth now admits that evidence has been submitted in the FINRA arbitration (see Response at 6) – and a panel was likewise appointed before Genworth represented to this Court that no such panel had been appointed (see Docket Entry 260 at 3). As previously noted (Docket Entry 260 at 3), discovery has already been demanded of the TJT Respondents, who need guidance from this Court in order to proceed accordingly. The Injunction Order never contemplated a third-party action like the FINRA arbitration, and it should not be so read

as to preclude the TJT Respondents from being able to properly defend themselves against claims by third-parties in a different forum, particularly given the complete absence of prejudice to Genworth.[4]

### C. Genworth's Mischaracterization of Defendants' Requests and Statements

After arguing in its opposition papers that the TJT Respondents cannot be permitted to defend themselves against the FINRA allegations as they deem fit, Genworth segues into a vitriolic and false charge that Defendants have taken a position that the order from the Eastern District of New York (the "EDNY Order") "trumped" this Court's orders and that Defendants are determined to ignore this Court's interpretation of the Injunction Order. (Response at 4, 9). Genworth knows that this accusation is untrue because Defendants and their counsel have repeatedly emphasized to Genworth's counsel that their actions are intended to ensure that they do not violate **any** court order. Genworth's blatant and outrageous accusation, however, highlights Defendants' predicament. To the extent that the EDNY Order conflicts in any way with this Court's prior rulings (as Genworth has argued in its motion to enforce), Defendants are in the untenable position whereby no matter what action they take, they may be in violation of a court's order. Defendants have tried to obtain clarity on the issue (in June 2011 and now), only to be lambasted with accusations by Genworth of "end runs" and abusive action. Yet, when Genworth finds the need for clarification of its own, it clothes itself in the garb of the victim and demands the same clarification for itself.

It bears repeating that when they appeared at the preliminary injunction hearing, Genworth's counsel told Judge Bryant that they were not seeking to preclude Defendants from answering questions in response to duly served subpoenas in the Eastern District of New York action. See

---

[4] Genworth's unfounded assertion that the TJT Respondents will somehow "use the FINRA Arbitration as another platform to feed evidence" regarding the class action is preposterous and completely baseless. (Response at 2-3). Genworth might as well claim that the TJT Respondents asked to be held jointly and severally liable with Genworth and its agents just so that they could have a chance to obtain evidence for other third-parties. Genworth's numerous and repeated accusations exceed the bounds of all reason, and should be seen for what they are – a distortion of the actual facts designed to influence this Court's perception of Defendants.

Exhibit 2 (4/12/10 TRO Hearing Transcript at 34, 40-41). But then, upon obtaining the Injunction Order that it had been seeking, which it openly represented should not apply to testimony under compulsion of subpoena, Genworth nimbly changed its view and insisted that the preliminary injunction precluded the very testimony that they had represented they were not seeking to preclude.

Defendants agree with Genworth that clarity is needed with respect to the scope of the Injunction Order. It is needed with regard to the TJT Respondents' need to defend themselves in the FINRA arbitration. It is needed so that Defendants know what questions they can and cannot answer at depositions that may take place in connection with the class action litigation pending in the Eastern District of New York, particularly in light of the ruling issued by the Eastern District of New York that the Injunction Order does not preclude Defendants from answering deposition questions under subpoena and that Defendants must answer those questions. The clarity that Defendants seek is not an attempt to do an "end run" around the Injunction Order, but to ensure that they have the right to defend themselves against unfounded charges at a FINRA arbitration, and to protect themselves from being sanctioned for giving compelled responses to deposition questions in the Eastern District of New York. In the meantime, however, the constant barrage of virulent accusations issued by Genworth against Defendants needs to stop and the pretense that Genworth has taken a consistent position with regard to the scope of the Injunction Order must be exposed for what it is.

WHEREFORE, Defendants respectfully request that the Court clarify the Injunction Order to permit Defendants to properly and adequately defend themselves in the FINRA Arbitration and to proceed with discovery as necessary in the FINRA Arbitration, and as the Court otherwise deems necessary to clarify the Injunction Order.

Respectfully submitted,

DEFENDANTS TIMOTHY MCMULLAN, JAMES COOK, TIMOTHY MCFADDEN, KAREN BAZON, TAMARA RIVERA AND TJT CAPITAL GROUP, LLC

AND

THIRD-PARTY PLAINTIFFS TIMOTHY MCMULLAN, JAMES COOK, TIMOTHY MCFADDEN AND TJT CAPITAL GROUP, LLC

By:    */s/ Ka Fei Wong*
      David P. Friedman (ct03558)
      dfriedman@murthalaw.com
      Ka Fei Wong (ct28130)
      kwong@murthalaw.com
      Murtha Cullina, LLP
      177 Broad Street
      Stamford, Connecticut  06901
      Phone:  203-653-5400
      Fax:  203-653-5444

## CERTIFICATION

I hereby certify that on February 15, 2012, a copy of the foregoing was electronically filed. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing though the Court's CM/ECF System.

By  */s/ Ka Fei Wong*
     Ka Fei Wong (ct28130)

3445853v6