# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| GENWORTH FINANCIAL WEALTH MANAGEMENT, INC. ) ) ) Plaintiff, ) ) vs. ) ) TIMOTHY MCMULLAN, JAMES ) COOK, TIMOTHY MCFADDEN, ) KAREN BAZON, TAMARA RIVERA ) AND TJT CAPITAL GROUP, LLC ) ) Defendants. ) ──────────────────────── ) ) TIMOTHY MCMULLAN, JAMES ) COOK, TIMOTHY MCFADDEN, AND ) TJT CAPITAL GROUP, LLC ) ) Third-Party Plaintiffs, ) vs. ) ) GURINDER AHLUWALIA ) ) Third-Party Defendant. ) | Civil Action No. 3:09-CV-01521-JCH<br><br><br><br><br><br>MARCH 14, 2012 |

## **DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO SHOW CAUSE ORDER**

Defendants and Third-Party Plaintiffs Timothy McMullan, James Cook, Timothy McFadden, Karen Bazon, Tamara Rivera, and TJT Capital Group, LLC (collectively "Defendants") hereby submit this reply memorandum to briefly address certain inaccurate, misleading, unnecessary, and gratuitous comments and insinuations contained in Plaintiff's Response to Show Cause Order (Docket No. 276). The clear purpose of Genworth's incendiary brief is to attack the credibility of the Defendants by continuing its campaign of character assassination of the Defendants in another desperate attempt to

mask the corporate fraud conducted by Genworth and orchestrated at the highest levels of the company.

The clear import of Genworth's argument as set forth in its brief submitted in response to this Court's order to show cause is that the transcripts of the individual TJT defendants' depositions, taken in the class action lawsuit pending in the Eastern District of New York, had to be marked by Genworth with the "Attorneys Eyes Only" designation because the District Court in the Eastern District of New York made a finding that such a designation was necessary to protect Genworth from the dissemination of confidential information by the TJT defendants. **No such finding was ever made by that court.** The protective order was not the product of an adjudication by that court, but rather was a stipulation entered by the parties without the participation or knowledge of the TJT defendants or their counsel. Thus, for Genworth to state in its brief that the protective order issued by the District Court for the Eastern District of New York "upheld" rulings issued by this Court is a gross mischaracterization and distortion of the truth. The true facts are that Genworth made a deal governing discovery with the class plaintiffs that was submitted to the court by stipulation. Those parties, without the participation or knowledge of the TJT defendants or their counsel (who have no involvement in that case), declared amongst themselves that the transcripts of the depositions were to be designated as "Attorneys Eyes Only" for the expressed purpose of keeping confidential information supposedly contained in the transcripts away from the TJT defendants. Genworth's suggestion that the court in the class action lawsuit expressed a position as to the need to protect Genworth from the TJT defendants is, quite simply, false.

Similarly, Genworth makes the contorted argument that the protective order was designed to limit the TJT defendants' access to Genworth's confidential information because,

according to Genworth, "Defendants have repeatedly attempted to use the discovery process in the instant case to obtain confidential and proprietary information from Genworth that related to the claims in the Goodman case". As noted above, the protective order was not the product of an adjudication by any court. It was a stipulation that Genworth and the plaintiff class submitted to the court in the class action lawsuit. That stipulation had absolutely nothing to do with Defendants' discovery activities in this action, all of which were employed by Defendants to support their counterclaim containing allegations of fraud. The counterclaim was filed months before the class action was commenced, and was designed in large measure to unveil the true motive behind Genworth's extreme efforts to silence, attack, defame and punish the TJT defendants. These discovery efforts, employed by Defendants in this action, had absolutely nothing to do with the class action lawsuit or any efforts to obtain Genworth's so-called proprietary information for use in the class action.

Genworth's claim that it was never intended for the TJT defendants to be precluded from viewing the deposition transcripts is similarly preposterous. The designation placed on the transcripts by Genworth was "Attorneys Eyes Only". Genworth never advised counsel for the TJT defendants that, notwithstanding the designation, they had the right to view the transcripts. Indeed, as applied in this case, the designation of "Attorneys Eyes Only" has always been construed to preclude review by anyone other than attorneys and other non-client individuals.

Nor did Genworth ever provide counsel for the TJT defendants with a copy of the protective order that forms the basis for the "Attorneys Eyes Only" designation. Thus, the TJT defendants had no way to know of any contrary construction of the "Attorneys Eyes Only" designation that may have been contained in the protective order. In fact, however, the

protective order states to the contrary, that the purpose of the "Attorneys Eyes Only" designation of the transcripts was to ensure that confidential information, supposedly contained in the transcripts, would not come into the possession of the TJT defendants. In any event, Genworth never informed counsel for the TJT defendants of its newly minted construction that the review of the transcripts at the offices of TJT defendant's counsel contemplated by the protective order was meant to permit the TJT defendants themselves to review the transcripts at their counsel's offices and thus gain access to the supposedly confidential information contained in them.

Genworth further attempts to defend its designation of the transcripts as "Attorneys Eyes Only" by incredibly arguing that the TJT defendants failed to comply with their obligation to engage in "meet and confer" conferences and to challenge the "Attorneys Eyes Only" designation in the District Court for the Eastern District of New York. What Genworth fails to tell this Court is that it never gave the TJT defendants a copy of the protective order. Nor does it advise the Court that the TJT defendants were never made parties to the protective order and thus had no "obligation" to engage in "meet and confer" discussions or to challenge the "Attorneys Eyes Only" designation in the Eastern District of New York. Genworth nonetheless maintains that the protective order, by its terms, is applicable to non-parties. But, paragraph 14 of the protective order, the paragraph that Genworth relies on for that proposition, says nothing of the kind. It merely provides that the protective order can be extended to non-parties, at their request, if they are asked to produce discovery that they want protected by the order. The TJT defendants have never sought protection under the protective order. Thus, no plausible argument can be made that the protective order applies to them. The TJT defendants had no obligation to take any action, and it is unconscionable for Genworth to

suggest that the TJT defendants had some affirmative duty to contest the "Attorneys Eyes Only" designation.

Genworth's statement that it was never served with the transcript at issue until two weeks after the motion to seal was filed is yet another baseless attack by Genworth on Defendants' counsel.  Suffice it to say that Genworth clearly had a copy of the transcript – as it was the one that added the "Attorneys Eyes Only" designation to the transcript – and it had knowledge of the specific pages of the transcript that had been included in the exhibit inasmuch as the pages were expressly referenced in Defendants' motion to seal.  The fact that, through inadvertence, there was a delay in the service of the actual exhibit to Genworth had no impact on Genworth's ability to respond to this Court's order to show cause.

Finally, Genworth's statement that it is not waiving and thus is reserving its "right" to enforce the "Attorneys Eyes Only" designation placed on the transcripts in the event that the TJT defendants attempt to utilize any other portions of their own deposition transcripts is indicative of Genworth's abusive tactics in this litigation.  While Genworth has billions of dollars at its disposal to litigate and relitigate issues without any financial constraint, the TJT defendants lack such unlimited resources and should not be put in the position of having to expend resources, that they do not have, to relitigate issues that could and should have been resolved once and for all in response to the Order to Show Cause.  Genworth has failed to show cause why portions of the deposition transcripts of the TJT defendants should be sealed, and it should not be afforded another opportunity in the future to establish what is has failed to establish now.

While Genworth has gone to great lengths to justify its behavior and to try to convince this Court that it has not acted unreasonably or abused the "Attorneys Eyes Only" designation

in this instance, the reality is that Genworth had no business in the first place applying such a designation to limit the individual TJT defendants' access to the transcripts of their own deposition testimony given under compulsion of subpoena. Genworth's plea that it was only trying to protect its own alleged confidential information from falling into the hands of the defendants is disingenuous given the fact that the only persons who provided information at the depositions were the defendants themselves. Moreover, given Genworth's recent abandonment of its initial litigation position – a position that formed the basis for the preliminary injunction – and in light of Genworth's recent pronouncement that it no longer considers Defendants' communications with their customers to be confidential, it is no longer apparent what confidential information Genworth is trying to protect or why that information should be entitled to protection of any kind.[1] The designation of the TJT defendants' deposition transcripts as "Attorney Eyes Only" serves no plausible interest of confidentiality and is a thinly disguised ploy to intimidate and gag the TJT defendants.

---

[1] The elusiveness of what information Genworth deems to be confidential and proprietary is underscored by the complete absence of any efforts on Genworth's part to keep any of its customer information confidential and its failure to mark and identify any customer information or documentation as confidential or as trade secrets.

Respectfully submitted,

DEFENDANTS TIMOTHY MCMULLAN, JAMES COOK, TIMOTHY MCFADDEN, KAREN BAZON, TAMARA RIVERA AND TJT CAPITAL GROUP, LLC

AND

THIRD-PARTY PLAINTIFFS TIMOTHY MCMULLAN, JAMES COOK, TIMOTHY MCFADDEN AND TJT CAPITAL GROUP, LLC

By: */s/ Ka Fei Wong*
David P. Friedman (ct03558)
dfriedman@murthalaw.com
Ka Fei Wong (ct28130)
kwong@murthalaw.com
Murtha Cullina, LLP
177 Broad Street
Stamford, Connecticut 06901
Phone: 203-653-5400
Fax: 203-653-5444

## CERTIFICATION

I hereby certify that on March 14, 2012, a copy of the foregoing was electronically filed. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing though the Court's CM/ECF System.

By  */s/ Ka Fei Wong*
 Ka Fei Wong (ct28130)