## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

GENWORTH FINANCIAL WEALTH :
MANAGEMENT, INC., : CIVIL ACTION NO.
   Plaintiff, : 3:09-CV-1521 (JCH)
       :
  v. :
       :
TIMOTHY MCMULLAN; :
JAMES COOK; : MAY 10, 2012
TIMOTHY MCFADDEN; :
KAREN BAZON; :
TAMARA RIVERA; :
and TJT CAPITAL GROUP, :
   Defendants. :

_____

TIMOTHY MCMULLAN; :
JAMES COOK; :
TIMOTHY MCFADDEN; :
and TJT CAPITAL GROUP, :
   Counter-Claimants and :
   Third-Party Plaintiffs, :
       :
  v. :
       :
GENWORTH FINANCIAL WEALTH :
MANAGEMENT, INC., :
   Counter-Claim Defendant, :
       :
GURINDER AHLUWALIA, :
   Third-Party Defendant. :

_____

## CONSOLIDATED RULING ON THE PLAINTIFF'S AND THIRD-PARTY DEFENDANT'S MOTION TO ENFORCE INJUNCTION (Doc. No. 235) and DEFENDANTS' MOTION TO CLARIFY INJUNCTION AND DISCOVERY ORDER (Doc. No. 253)[1]

_____

[1] The court apologizes for the delay in issuing this Ruling, especially to the extent that its delay has burdened the Eastern District of New York and FINRA in proceeding with matters before them.  The court received this case – shortly after the passing of the Honorable Peter C. Dorsey – along with an

1

The plaintiff, Genworth Financial Wealth Management, Inc. ("Genworth") brought this action for injunctive relief and damages against several of its former high-level employees, Timothy McMullan, James Cook, Timothy McFadden, and the business the three men formed after they left Genworth, TJT Capital Group, LLC ("TJT") (collectively, the "Principal Defendants"), as well as claims against two former Genworth employees who went to work at TJT in administrative jobs, Karen Bazon and Tamara Rivera (collectively, the "Defendants").  The Principal Defendants counterclaimed against Genworth and brought a third-party complaint against Genworth's President and CEO, Gurinder Ahluwalia, seeking injunctive relief and damages.

Pursuant to Federal Rule of Civil Procedure 65, Genworth and Ahluwalia now move to "enforce" the injunction this court (Bryant, J.) issued on June 10, 2010.[2]  Doc. No. 235 (the "Injunction").  The Defendants move to clarify the Injunction and a discovery order also issued by this court (Smith, M.J.).  Doc. No. 253.

For the reasons stated herein, Genworth and Ahluwalia's Motion (Doc. No. 235) is **granted in part** and **denied in part**, and the Defendants' Motion (Doc. No. 253) is **granted**, with clarification afforded as stated in this Ruling.

## I.    BACKGROUND

This action arises out of the manner in which the Defendants left the employ of Genworth in the summer of 2009.  After doing so and establishing TJT, TJT began

---

additional forty-two other civil cases which had been pending before Judge Dorsey or before now-Circuit Judge Christopher F. Droney.

[2] This Ruling presumes familiarity with this court's recent Ruling on cross-motions for summary judgment (Doc. No. 280), as well as with the procedural history of both this action and the class action.

aggressively soliciting Genworth clients with whom they had worked while still at Genworth.  Genworth mounted an aggressive campaign to retain those clients. Acrimony between the Defendants and Genworth escalated, and Genworth commenced this lawsuit in September 2009.

On December 22, 2009, a putative class action made up of Genworth clients was filed in the United States District Court for the Eastern District of New York.  Goodman v. Genworth Fin. Wealth Mgmt., Inc., No. 2:09-cv-5603 (JFB) (GRB), ECF No. 1 (E.D.N.Y. Dec. 22, 2009).[3]  As discussed in this court's recent Ruling on Cross-Motions for Summary Judgment, see generally Doc. No. 280, evidence exists to show that McMullan provided material support to counsel for the plaintiffs in the class action by reviewing and editing the operative legal documents, and he apparently also helped counsel for the class action plaintiffs to solicit Genworth clients to speak to them and potentially join the lawsuit.  That class action lawsuit is pending.

A.    This Court's Injunction and Prior Rulings

After Genworth became aware that TJT was continuing to solicit business from Genworth clients, Genworth moved for a temporary restraining order and a preliminary injunction.  After a two-day evidentiary hearing, Judge Bryant made detailed findings of fact and issued a preliminary injunction.  See generally Ruling on Motion for Preliminary Injunction, Doc. No. 101.  The court granted the following injunctive relief:

> (1) The Defendants shall refrain from communicating in any way or manner with any current client or known client prospect of Genworth, except to the extent that such a client or prospect has already entered into

---

[3]  This court takes judicial notice of the docket entries in the class action.  See Anderson v. Rochester-Genesee Reg'l Transp. Auth., 337 F.3d 201, 205 n.4 (2d Cir. 2003).

a binding written agreement with TJT Capital Group LLC, or to the extent that the Defendants can affirmatively demonstrate that such a client or prospect's information was not included in confidential client information, lists, or data acquired by the Defendants from Genworth;

(2) The Defendants shall refrain from utilizing any of Genworth's client information, lists, or data for any purpose, other than as authorized by Federal Rules of Civil Procedure for this pending litigation;

(3) The Defendants shall retrieve from all third-parties, including but not limited to the Charles Schwab Corporation, any of Genworth's client information, lists, or data previously provided to that third party by any Defendant, and shall immediately return such material to Genworth, except to the extent that transmittal of such material to a third party was specifically authorized by a client or prospect under a binding written agreement with TJT Capital Group LLC;

(4) The Defendants shall refrain from disclosing, or further disclosure of, any client or information regarding Genworth's operations where such information is a protected trade secret, or consists of confidential information that the Defendants learned during the course of their employment with Genworth;

(5) The Defendants shall refrain from disclosing the nature of Genworth's relationship with Robert Brinker, and the contents of the class action complaint, to the extent that such information reflects protected trade secrets, or other confidential information that the Defendants learned during the course of their employment with Genworth;

(6) The Defendants shall not use any of Genworth's proprietary information for their own advantage or on the behalf, or for the benefit of, a third party, including without limitation to providing context for the pending class action proceeding;

(7) The Defendants shall face sanction for failure to comply with the foregoing, absent a further order from the Court.

Id. at 18-20.

After the Injunction issued, the parties commenced discovery in this action. Genworth sought, and Magistrate Judge Smith granted, a protective order preventing the Defendants from seeking discovery which, although relevant to the class action,

4

lacks relevance to the issues in this action.  Magistrate Judge Smith ordered that:

> In addition, Defendants may not propound, and neither Genworth nor any third party shall be required to respond to, any discovery request, including document requests, interrogatories, deposition questions or any other form of discovery, to the extent the discovery seeks information regarding Genworth's model portfolios, or Genworth's client portfolios, including but not limited to the investment decisions, composition, marketing and performance of such portfolios, and internal and client communications concerning these subjects.

Doc. No. 152 at 4-5.

Meanwhile, the class action plaintiffs sought to take discovery from the Principal Defendants.[4]  Substantial motion practice followed, both in this court and in the class action.  In granting the class action plaintiffs' motion to compel the testimony of the Principal Defendants, Magistrate Judge Lindsay ordered that "the non-parties [i.e. the Principal Defendants] may be instructed not to answer questions that would violate that injunction issued by the Connecticut court. The parties may seek further judicial intervention only upon completion of the depositions."  Goodman v. Genworth Fin. Wealth Mgmt., Inc., No. 2:09-cv-5603 (JFB) (GRB), ECF No. 35 (E.D.N.Y. June 6, 2011).

On June 15, 2011, Magistrate Judge Smith recommended that this court deny the Defendants' motion to modify or clarify the injunction.  He concluded that,

> "[the] injunction is clear and unambiguous. The order does not create a 'dilemma' or a problem for persons, parties, or witnesses in the E.D.N.Y. class action, during discovery therein. Nor does Judge Bryant's injunction require 'modification' that would allow exposure of protected, allegedly purloined, information that Judge Bryant found was entitled to protection.

---

[4] Although the Injunction does not except Bazon and Rivera from its operation, there is no evidence that they have taken part in discovery in the class action or, if they have, that their participation in discovery in the class action is in controversy in any way.

Judge Bryant's findings are well supported in the record and her order is narrowly and thoughtfully drafted. . . . <u>Judge Arlene Lindsey of the E.D.N.Y. has fashioned a wholly fair and adequate methodology for the conduct of depositions wherein plaintiff may object to questions that would require a deponent's answer to reveal information that Judge Bryant has found to be legally entitled to protection</u>. Judge Bryant's injunction was based on intimate familiarity with the facts and careful assessments of credibility. It should not be undermined by such an obvious attempted 'end run.'"

Doc. No. 190 (emphasis added).  Judge Dorsey subsequently adopted Magistrate Judge Smith's "well-reasoned" Ruling.  Doc. No. 222.

B.  <u>The Principal Defendants' Testimony in the Class Action</u>

The depositions of the Principal Defendants proceeded in November 2011. Counsel for Genworth objected to the vast majority of the questions as invading the province of the Injunction.  <u>See</u>, <u>e.g.</u>, Doc. No. 236 Ex. H (the "McFadden Dep."), at 23:8-11 ("[Y]ou're asking about what he knows because of what he learned while working for Genworth internally and as to that, I am going to object.").  Counsel for the Defendants instructed the Principal Defendants not to answer certain other questions, even in the absence of an objection from Genworth's counsel, on the same basis.  <u>See</u>, <u>e.g.</u>, <u>id.</u> at 193:7-9.

On November 18, 2011, Genworth moved in this court for an order "enforcing" the Injunction by:

a. enjoining counsel for plaintiffs in the Goodman case from seeking relief from this Court's June 10, 2010 Injunction (Dkt. No. 101) in any court other than this Court, inclusive of proper appeals.

b. upholding the instructions by Defendants' counsel not to answer questions on the grounds stated at the Defendants' depositions in the Goodman case commenced on November 10, 15, and 17, 2011 or upholding those instructions by Defendants' counsel that follow the limiting principles articulated by Genworth's counsel through its deposition

6

objections;

c. directing the Defendants not to respond to any deposition questions that would require them to:
    1. disclose any internal discussions they had while Genworth employees;
    2. disclose anything they learned about Genworth's business while Genworth employees or as a result of their employment at Genworth;
    3. comment on or respond to any questions about any Genworth documents, except as set forth in (d) below;
    4. reveal their knowledge, facts, opinions or provide any other testimony bearing on any of the allegations in the Amended Complaint in the Goodman case; or
    5. disclose any oral, written, or electronic communications they had with any person or entity about Genworth's business after they left Genworth's employ.

d. permitting the Defendants, if their Goodman depositions are resumed, to respond only to non-leading questions posed to them as to their own personal communications, orally or in writing or by e-mail, that the particular witness had, while he was employed by Genworth, with one or more named class plaintiffs or absent putative class members in the Goodman action, or one or more current or former Genworth clients or prospective clients. In so responding, the witness shall not disclose any of the internal information identified in (c) above.

e. stating that the injunction remains in full force and effect in all respects and as to all parties before the Court, inclusive of Goodman Plaintiffs' counsel.

Doc. No. 236 at 20-21.

On November 21, 2011, the class action plaintiffs requested that the Eastern District of New York order the Principal Defendants to answer the questions posed in their depositions.  Goodman v. Genworth Fin. Wealth Mgmt., Inc., No. 2:09-cv-5603 (JFB) (GRB), ECF No. 74 (E.D.N.Y. Nov. 21, 2011).  After Magistrate Judge Brown noted that no formal motion was pending, Goodman v. Genworth Fin. Wealth Mgmt., Inc., No. 2:09-cv-5603 (JFB) (GRB), ECF No. 84, at 29:19-24, 67:7-10 (E.D.N.Y. Dec. 22, 2011) (transcript of December 14, 2011 hearing), the class action plaintiffs formally

moved to compel by letter on December 19, 2011, Goodman v. Genworth Fin. Wealth Mgmt., Inc., No. 2:09-cv-5603 (JFB) (GRB), ECF No. 83 (E.D.N.Y. Dec. 19, 2011).

In a thorough and well-reasoned Ruling, Magistrate Judge Brown granted the motion in relevant part, concluding that the Injunction did not bar the Defendants' deposition testimony.  Goodman v. Genworth Fin. Wealth Mgmt., Inc., No. 2:09-cv-5603 (JFB) (GRB), ECF No. 90, at 10-12 (E.D.N.Y. Jan. 24, 2012).  Magistrate Judge Brown further concluded that Genworth's invocation of the Injunction was overbroad and ordered the Principal Defendants "to respond to all questions previously posed but not answered on the basis of the Injunction as well as reasonable follow-up questions."  Id. at 12-15.  Magistrate Judge Brown also provided Genworth with an opportunity to object "to specific, targeted questions" by "submit[ting] those questions, along with a brief justification, to [the Eastern District of New York by January 29, 2012]."  Id. at 15.

Genworth elected not to do so and instead objected to Magistrate Judge Brown's Ruling before Judge Wexler.  Goodman v. Genworth Fin. Wealth Mgmt., Inc., No. 2:09-cv-5603 (JFB) (GRB), ECF No. 99 (E.D.N.Y. Feb. 7, 2012).  The objection is currently pending before Judge Bianco, to whom the case was recently reassigned.  Goodman v. Genworth Fin. Wealth Mgmt., Inc., No. 2:09-cv-5603 (JFB) (GRB)  (E.D.N.Y. Apr. 25, 2012) (order reassigning matter to Judge Bianco).

C.     The FINRA Arbitration

On September 21, 2011, two former Genworth clients filed a claim with the Financial Industry Regulatory Authority ("FINRA") against Genworth, various Genworth employees not parties to this action, McFadden, and McMullan.  Doc. No. 253 Ex. 1, at 1.  The claim seeks damages based on alleged breaches of statutory and common law

8

duties by Genworth and its employees.  See generally id.  The claim also refers

extensively to the allegations in this action and in the class action.  See generally id.

Both Genworth and the Defendants represent that Genworth is no longer a party to the

arbitration proceeding, but that certain Genworth employees, as well as McFadden and

McMullan, are.  Doc. No. 269 at 5-6; Doc. No. 271 at 7.  An arbitration panel appears to

have been appointed, and the plaintiffs in the FINRA arbitration have requested

discovery from McMullan.  Doc. No. 263.  The Defendants therefore requested that this

court "clarify [the Injunction, Doc. No. 101,] and [the discovery order, Doc. No. 152] to

permit the Defendants to properly and adequately defend themselves in the FINRA

Arbitration, and allow them to proceed with discovery as necessary in the Arbitration."

Doc. No. 253 at 6.

## II.     STANDARD OF REVIEW

### A.     Genworth's "Motion to Enforce Injunction"

Federal Rule of Civil Procedure 65(d) provides:

> (1) Every order granting an injunction and every restraining order must:
>
> (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail--and not by referring to the complaint or other document--the act or acts restrained or required.
>
> (2) The order binds only the following who receive actual notice of it by personal service or otherwise: (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).

"A district court has complete power over its interlocutory orders, including preliminary

injunctions, permitting it to afford relief as necessary. . . .  Additionally, [a district court]

has plenary power over a preliminary injunction and has the equitable discretion to

vacate or revise it." New York City Triathalon, LLC v. NYC Triathalon Club, Inc., 704 F. Supp. 2d 305, 327-28 (S.D.N.Y. 2010) (internal citations omitted).

     B.    Motion for Clarification

The decision whether to clarify a prior order lies within the discretion of the issuing court. See Regal Knitwear Co. v. NLRB, 324 U.S. 9, 15 (1945). Such clarification may be "obtained on motion or made sua sponte by the court." N.A. Sales Co., Inc. v. Chapman Indus. Corp., 736 F.2d 854, 858 (2d Cir. 1984). Clarification of a prior order is within the issuing judge's discretion and appropriate to "add certainty to an implicated party's efforts to comply with the order and provide fair warning as to what future conduct may be found contemptuous." Id. Thus, courts "that issue injunctions can and should give declaratory guidance defining the meaning and scope of injunctions issued." Bank of Crete, S.A. v. Koskotas, 733 F. Supp. 648, 650 (S.D.N.Y. 1990).

## III.   DISCUSSION

     A.    The State of the Record

As a preliminary matter, this court notes that plaintiffs' counsel in the class action submitted two letters to Judge Dorsey, dated November 28, 2011 and December 5, 2011, raising various legal arguments against granting Genworth's requested relief. Neither the class representatives nor class counsel have moved to intervene in this action, nor has any party to this action sought to join them to it.

The arguments raised in the letters do not meaningfully assist in resolving the issues raised by the pending Motions. Nor does this court view their submission,

without intervention or joinder and subsequent appearance by counsel, as appropriate.[5]

Accordingly, this court concludes that the letters should have no weight and does not

consider them in resolving the pending Motions.  See Madu, Edozie & Madu, P.C. v.

SocketWorks Ltd. Nigeria, 265 F.R.D. 106, 114-15 (S.D.N.Y. 2010) (a court "treat[s] an

affidavit or letter submitted to the Court . . . by giving the document the weight the

Court, in its discretion, deems appropriate.").

      B.    Genworth's "Motion to Enforce Injunction"

Genworth requests that this court: (1) enjoin class counsel pursuant to the All

Writs Act, 28 U.S.C. § 1651, "from seeking relief from [the Injunction] in any court other

than this Court," Doc. No. 235 at 20; (2) order various relief restricting the Defendants'

deposition testimony in the class action, id. at 20-21; and (3) "stating that the

[I]njunction remains in full force and effect in all respects and as to all parties before the

Court, inclusive of Goodman Plaintiffs' counsel," id. at 21.

Because the Eastern District of New York may properly interpret the injunction's

application to specific deposition questions or other discovery responses shielded by

appropriate protective orders,[6] this court declines to enjoin class counsel from

requesting that the Eastern District of New York do so and declines to afford Genworth

---

[5] Attorney David C. Katz, signatory of the letters from class counsel, did not provide an identification number of the Bar of this District in his letters and does not appear to be admitted to practice before this court.  Although Attorney Katz has been admitted pro hac vice in a matter pending in this District before the Honorable Charles S. Haight, see L.S. v. Webloyalty.com, Inc., No. 3:10-cv-1372 (CSH), ECF No. 48 (D. Conn. Feb. 7, 2011) (order granting motion of Attorney Katz for leave to appear pro hac vice), Attorney Katz has no authority to practice before this court in this matter..

[6] Genworth has made no showing that any information the Principal Defendants might provide in discovery in the class action will lack appropriate protections imposed by the Eastern District of New York. The absence of such protections, and resulting potential for damaging public disclosure, would alter this analysis.

any discovery relief, which should properly be sought from that court.  Furthermore, the Injunction does remain in full force, including with respect to class counsel to the extent that class counsel qualify as "other persons who are in active concert or participation with [the parties or the parties' officers, agents, servants, employees, and attorneys]." See Fed. R. Civ. P. 65(d)(2).

        1.      The Scope and Applicability of the Injunction

Throughout this litigation, the parties have advanced a number of interpretations of the scope and applicability of the Injunction.  This court takes this opportunity to clarify what is abundantly clear from a review of the injunction and Magistrate Judge Smith's subsequent Ruling on the Defendants'[7] Motion to Modify the Injunction.  Doc. No. 190.  The Injunction does not contain a blanket exception for discovery in the class action such that the Defendants are not constrained at all in responding to the class action plaintiffs' discovery requests.  Nor does the Injunction completely bar the Defendants from responding to the class action plaintiffs' discovery requests.  Instead, the Defendants may respond to discovery requests in the class action to the extent that the Injunction's express terms permit.

First, the Injunction does not contain a blanket exception for discovery in the class action.  Magistrate Judge Smith, upon a request by the Defendants to modify or clarify the Injunction so as to exempt discovery responses from the Injunction's scope, pointedly recommended denying the request, referring to it as "an obvious 'end run.'"

---

[7] Although Bazon and Rivera appear to fall outside the scope of the relief sought by the parties with respect to the Injunction, this court notes that the Injunction does not distinguish among the Defendants.  Accordingly, this Ruling uses the term "Defendants" here to convey that this interpretation of the Injunction applies to the Principal Defendants as well as to Bazon and Rivera.

Doc. No. 190.  Judge Dorsey adopted the Ruling, and this court sees no sensible reason to disturb it.  The Injunction clearly restricts the Defendants' ability to respond to discovery requests in the class action.

Second, although the Injunction restricts the Defendants from participating in discovery in the class action, it does not bar them from participating in any and all respects.  If it prohibited the Defendants from participating in discovery in the class action, it would say so.  See Fed. R. Civ. P. 65(d)(1) (an injunction must "state its terms specifically . . . and describe in reasonable detail . . . the act or acts restrained or required").  The Injunction simply does not say so.[8]  Doc. No. 101 at 18-20.

The fact that the Injunction provides that "[t]he Defendants shall not use any of Genworth's proprietary information for their own advantage or on the behalf, or for the benefit of, a third party, including without limitation to providing context for the pending class action proceeding," id. at 20, is not to the contrary.[9]  Participating in discovery in a pending legal proceeding by testifying about or producing evidence relevant to the claims and defenses in that proceeding is not "providing context" for that proceeding.  Moreover, this provision of the Injunction begins with a prohibition on the Defendants' "us[ing] . . . Genworth's proprietary information."  Id.  Testifying about or responding to a

---

[8] This court notes that Judge Bryant's Ruling granting the Injunction contemplates the Defendants' participation in discovery in the class action.  Doc. No. 101 at 18 (noting that "counsel for the plaintiffs in the class action will likely be entitled to, and will likely receive information regarding Genworth's compliance with Brinker's recommendations through the process of discovery").

[9] Based on evidence adduced in the preliminary injunction proceedings, it is clear that this provision of the Injunction prevents the Defendants from providing confidential information to class counsel outside the formal discovery process, without notice to adverse parties and outside the scope of an appropriate protective order.  Such a prohibition does not affect a party's right to seek relevant, discoverable information on notice to adversaries and shielded by an adequate protective order in an action pending before another federal court.

discovery request for certain information relevant to an ongoing legal proceeding pursuant to a lawful deposition notice or subpoena is not "us[ing]" that information.[10]

Accordingly, the Injunction neither contains a blanket exception for discovery in the class action nor completely bars the Defendants from responding to the class action plaintiffs' discovery requests.  The Defendants may respond, to the extent permitted by the Injunction's express terms, to proper discovery requests or subpoenas in the class action and subject to appropriate protective orders issued by the Eastern District of New York.

### 2. The Proper Venue to Interpret and Enforce the Injunction

Because the Injunction applies to the Defendants' participation in discovery in the class action, but does not bar such participation, the question arises whether and to what extent the Eastern District of New York may interpret the Injunction in the ordinary course of resolving discovery disputes before it.  Genworth argues that this court must retain exclusive jurisdiction to interpret the Injunction in all respects.  This court concludes that the Eastern District of New York may interpret the Injunction, but only this court may modify it or enforce it by imposing sanctions or a judgment of contempt.

A court may determine, in appropriate circumstances, that it has exclusive jurisdiction of the interpretation and enforcement of its own duly issued injunction or order.  American Booksellers Ass'n v. Houghton Mifflin Co., Inc. (Booksellers), 94 Civ.

---

[10] This analysis presumes that class counsel has pursued discovery from the Defendants in good faith and without collusion or ex parte communication between class counsel and the Defendants. Evidence that the Defendants had, after the injunction issued, colluded with class counsel about discovery in the class action or had ex parte communications with class counsel would require a different analysis. No such evidence is before the court at this time, however.

8566 (JFK), 1998 WL 436364, at *2-4 (S.D.N.Y. July 28, 1998).[11]  An issuing court may also properly determine that another court has concurrent jurisdiction to interpret the issuing court's injunction or order and may defer to or adopt the other court's interpretation.  See In re The 1031 Tax Group LLC, No. 10 Civ. 2799 (RJH), 2011 WL 1158445, at *2-3 (S.D.N.Y. Mar. 29, 2011).  And another court may determine that the issuing court has exclusive jurisdiction to interpret the issuing court's injunction or order and, as a matter of comity, defer to that court for resolution.  Harper v. Trans Union, LLC, No. Civ.A. 04-3510, 2005 WL 697490, at *2 (E.D. Pa. Mar. 24, 2005).  Accordingly, although well-established law holds that the issuing court "is in the best position to interpret its own orders," Matter of Chicago, Rock Island, and Pacific R. Co., 865 F.2d 807, 810 (7th Cir. 1988), and that it may properly adjudge itself the exclusive forum for interpretation, see United States v. Int'l Brotherhood of Teamsters (Teamsters), 907 F.2d 277, 281 (2d Cir. 1990) ("a district judge can legitimately assert comprehensive control over complex litigation") (emphasis added), it is not required to do so.  Instead, the court has the discretion to determine whether to insist on exclusive jurisdiction to enforce its own injunction or order or to defer to another court's interpretation.[12]  See In re The 1031 Tax Group LLC, 2011 WL 1158445, at *2.

        This court concludes that these circumstances do not warrant the exercise of

---

[11] Genworth puzzlingly cites to the Booksellers court's superseded Order of April 3, 1998.  Pl.'s Mem. in Supp. of Mot. to Enforce Injunction, Doc. No. 236, at 13, 18 (citing American Booksellers Ass'n v. Houghton Mifflin Co., Inc., 94 Civ. 8566 (JFK), 1998 WL 157055 (S.D.N.Y. Apr. 3, 1998)).  This order was superseded by a subsequent order dated July 28, 1998.  American Booksellers Ass'n v. Houghton Mifflin Co., Inc., 94 Civ. 8566 (JFK), 1998 WL 436364 (S.D.N.Y. July 28, 1998).

        [12] Genworth argues that the issuing court must retain exclusive jurisdiction to interpret and enforce its orders.  But Genworth has not cited, and this court cannot locate, any authority, much less binding authority, for the proposition that this court must determine that it has exclusive jurisdiction of the interpretation and enforcement of the injunction, and persuasive authority suggests precisely the opposite.

exclusive jurisdiction over all matters relating to the Injunction.  Here, there is no risk of inconsistent final judgments and no threat of wasteful, burdensome, or harassing litigation conducted in courts around the country.  See Teamsters, 907 F.2d at 280-81.  Nor is there any plausible assertion that the discovery requests in the class action are a sham designed to leak confidential information to the public, see Eli Lilly & Co. v. Gottstein, 617 F.3d 186, 192-93 (2d Cir. 2010), or that disclosure of confidential information to a customer or competitor is imminent, see Booksellers, 1998 WL 436364, at * 3.

Instead, the Eastern District of New York has carefully balanced the restrictions imposed in the Injunction with the need to afford the parties to the class action the opportunity to take appropriate discovery.  Magistrate Judge Smith previously referred to Magistrate Judge Lindsay's process for managing discovery of material potentially covered by the Injunction, which allowed the Principal Defendants' depositions to proceed and Genworth to object to matter potentially encompassed by the Injunction prior to the parties seeking judicial intervention in the discovery dispute, Goodman v. Genworth Fin. Wealth Mgmt., Inc., No. 2:09-cv-5603 (JFB) (GRB), ECF No. 35 (E.D.N.Y. June 6, 2011), as "wholly fair and adequate," Doc. No. 190.  This court agrees with Magistrate Judge Smith's assessment and will therefore exercise its discretion to permit that wholly fair and adequate process, including the judicial intervention contemplated by Magistrate Judge Lindsay, to run its course in the Eastern

District of New York.[13]

Accordingly, this court concludes that the Eastern District of New York may interpret the Injunction in order to determine its application to specific discovery requests in the class action.  That court must therefore determine what is a "protected trade secret" or constitutes "confidential information learned during the course of . . . employment with Genworth."  Doc. No. 101 at 19.  The Eastern District of New York may also create and modify appropriate protective orders which may, in that court's discretion and judgment, sufficiently protect any such trade secrets or confidential information such that the Defendants' revealing them in discovery does not constitute "disclosure" within the meaning of the Injunction.

In this court's view, Magistrate Judge Brown therefore acted wholly within his jurisdiction when he issued a Ruling interpreting the Injunction as part of the wholly fair and adequate process for managing discovery of material which may qualify as confidential information, protected trade secrets, or otherwise potentially within the scope of the Injunction.  Moreover, as this court has already determined, Magistrate Judge Brown's thorough and well-reasoned Ruling correctly interpreted the Injunction as not imposing a complete bar to the Defendants' responding to duly issued discovery requests in the class action.  Magistrate Judge Brown's Ruling was quite proper and rendered wholly within the permissible bounds of his jurisdiction.

At the same time, this court is the only one which can enforce and modify the

---

[13] If the Eastern District of New York determines that it would want this court's interpretation of the Injunction, rather than undertaking its own, that court can direct the parties to seek the same and this court will, of course, respond.

17

Injunction.  It is axiomatic that the decision to impose contempt or other sanction for violation of a court order properly rests with the court which issued the order.  <u>Bessette v. Avco Fin. Servs., Inc.</u>, 279 B.R. 442, 449 (D.R.I. 2002) ("The Court that issues the order that was violated is the Court that determines whether a person is in contempt.") (citing, <u>inter alia</u>, <u>Ex parte Bradley</u>, 74 U.S. 364, 371-72 (1868); <u>Cox v. Zale Delaware, Inc.</u>, 239 F.3d 910, 917 (7th Cir. 2001); <u>United States v. Barnett</u>, 330 F.2d 369, 385 (5th Cir. 1963)).  And any attempt to seek modification of the Injunction outside the District of Connecticut would amount to an impermissible collateral attack.  <u>See Celotex Corp. v. Edwards</u>, 514 U.S. 300, 313 (1995) ("[I]t is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected.") (emphasis added).  Accordingly, any party seeking to modify the Injunction or to impose sanctions or a judgment of contempt based on violations of the Injunction must seek such relief from this court.[14]

3.    Genworth's Request to Enjoin Class Counsel

Genworth argues that, because this court has exclusive jurisdiction to interpret the Injunction, this court should use its authority pursuant to the All Writs Act, 28 U.S.C. § 1651, to enjoin class counsel "from seeking relief from this Court's June 10, 2010 Injunction (Dkt. No. 101) in any court other than this Court, inclusive of proper appeals." Doc. No. 236 at 20.  This court declines to do so.

---

[14] Genworth has not moved for sanctions or for this court to adjudge the Defendants or class counsel in contempt based on alleged violations of the Injunction.  <u>See</u> Doc. No. 236 at 20-21. Accordingly, although Genworth has suggested that class counsel have violated the Injunction during discovery in the class action, <u>see id.</u> at 4-13, this court does not address these undeveloped accusations.

First, this court has already concluded that the Injunction does not bar the Defendants from participating in discovery in the class action and that the Eastern District of New York may interpret the Injunction in the ordinary course of supervising discovery in the class action.  Accordingly, no basis exists to enjoin class counsel from seeking discovery relief in the Eastern District of New York.

Second, there is no evidence that class counsel has impermissibly moved before the Eastern District of New York to modify the Injunction.  Moreover, Genworth points to no evidence that this court's unequivocal statement in this Ruling – that such a request for modification of the Injunction may only be made in this court – will not suffice to prevent class counsel from improperly moving to modify the Injunction in another court. Absent class counsel actually making such an improper request for modification or evidence that class counsel intends to do so, this court's clarification afforded in this Ruling notwithstanding, no basis exists to issue an order channeling any such request for modification of the Injunction into this court.

4.    Genworth's Request for Discovery Relief in the Class Action

Genworth has requested various relief pertaining to discovery in the class action, such as upholding various objections made during the Principal Defendants' depositions, directing the Principal Defendants not to respond to certain deposition questions, and further restricting the nature of deposition questions to which the Principal Defendants may respond.  Doc. No. 236 at 20-21.  This court declines to act on Genworth's sweeping request for discovery relief.

Genworth's requested discovery relief is far too broad.  Genworth asks this court, for example, to direct the Defendants not to respond to any deposition question which

would require disclosure of "any internal discussion they had while Genworth employees," Doc. No. 236 at 20 (emphasis added), regardless of whether such discussions were confidential, concerned trade secrets, or otherwise fall within the express prohibitions of the Injunction.  Genworth similarly asks this court to direct the Defendants not to respond to any question seeking disclosure of "anything they learned about Genworth's business while Genworth employees or as a result of their employment at Genworth," id. at 20 (emphasis added), again regardless of whether such information is confidential or otherwise protected by the Injunction.  This court will not grant such sweeping relief so patently untethered from the Injunction.[15]

 Even if Genworth sought less sweeping relief, Genworth's requests for this discovery relief would be properly addressed to the Eastern District of New York.  As already discussed, that court may interpret the Injunction in the ordinary course of resolving the discovery disputes in the class action.  As this court has previously concluded – and continues to conclude – the presiding district and magistrate judge in the Eastern District of New York have "fashioned a wholly fair and adequate methodology for the conduct of depositions," Doc. No. 190, which envisions judicial intervention to resolve precisely the disputes which Genworth's Motion concerns. Genworth's requests for discovery relief are properly directed to the Eastern District of New York as part of this wholly fair and adequate process in connection with that

---

[15] The Defendants have not argued that Genworth's detailed request for discovery relief based on such a broad reading of the Injunction actually amounts to a request for modification of the Injunction. Accordingly, notwithstanding the plausibility of such an argument, this court does not address it.

litigation.[16]

           5.      Genworth's Request for a Statement that the Injunction Remains Effective

Finally, Genworth requests that this court state that the Injunction remains in effect and governs both the Defendants and class counsel. Because such a statement is accurate, this court so declares.

Rule 65 provides, in relevant part, that an injunction applies both to the parties before the court and to "other persons who are in active concert or participation with [the parties or the parties' officers, agents, servants, employees, and attorneys]." Fed. R. Civ. P. 65(d)(2). Accordingly, the Injunction remains in effect with respect to the Defendants because they are parties to this action. Moreover, the Injunction applies to class counsel to the extent that class counsel qualifies as "other persons who are in active concert or participation with [the parties or the parties' officers, agents, servants, employees, and attorneys]."[17] See id.

           C.      The Defendants' "Motion for Clarification"

The Defendants request that this court clarify the Injunction and the discovery order to provide guidance as to how they may proceed with discovery in the FINRA arbitration. Genworth counters that the subject matter of the arbitration is sufficiently remote from the scope of the Injunction and the discovery order that neither presents

---

[16] Similarly, to the extent that Genworth argues that the discovery disputes surrounding the Defendants' testimony are unnecessary because other, unnamed witnesses possess the same information, as suggested at various points in Genworth's briefs before this court, see, e.g., Doc. No. 236 at 9 n.4, this court expresses no view on the matter and concludes that the Eastern District of New York is in the best position to evaluate Genworth's arguments on this point.

[17] Genworth has neither argued nor presented evidence that the Defendants are currently in "active concert or participation" with class counsel or have been since the Injunction issued.

any barrier to the Defendants' defense in the arbitration.

This court concludes that, as with the discovery in the class action, the FINRA arbitration panel is the appropriate body to govern discovery in the FINRA arbitration. The panel may interpret the Injunction's provisions regarding confidential information and trade secrets during the course of supervising discovery in the arbitration.  Because the arbitration panel does not have the same power as a federal court to enforce its own protective orders, however, the Defendants may not produce confidential information or trade secrets which the Injunction forbids them from "disclosing" in discovery in the arbitration unless and until the arbitration claimants agree to be bound by an appropriate protective order and to submit to the jurisdiction of this court with respect to the enforcement of that protective order.  Accordingly, before the Defendants produce any information in discovery which the panel determines is confidential information or trade secrets which the Injunction forbids the Defendants from "disclosing," the arbitration claimants must agree to be bound by such an appropriate protective order.  If the claimants agree to be bound by such an Order and submit to the jurisdiction of this court with respect to its enforcement, the parties and the claimants shall agree on a proposed Order and submit it to this court for its review and approval.

With respect to the discovery order, this court leaves the matter addressed in that order – whether the information the Defendants might seek in discovery in the arbitration is actually relevant only to the class action – to the arbitration panel.  This court notes that, if the Defendants seek such information in discovery in the arbitration and subsequently disclose it to class counsel – the concern which appears to have animated the discovery order's protections – Genworth may be entitled to seek the

22

remedies for contempt of the Injunction independent of any remedies afforded by the contemplated protective order governing discovery in the arbitration.

## IV.    CONCLUSION

For these reasons, Genworth and Ahluwalia's Motion (Doc. No. 235) is **granted in part** and **denied in part**, and the Defendants' Motion (Doc. No. 253) is **granted**, with clarification afforded as stated above.  If the arbitration claimants agree to be bound by a protective order in the FINRA arbitration proceedings and to submit to the jurisdiction of this court with respect to its enforcement, the parties and the claimants shall file a proposed protective order to govern discovery in the FINRA arbitration within thirty days from the date of this Ruling.  If the arbitration claimants do not agree to be bound by a protective order in the FINRA arbitration proceedings, the parties shall file a joint status report with this court stating as much within thirty days from the date of this Ruling.

SO ORDERED.

Dated at Bridgeport, Connecticut, this 10th day of May, 2012.


    /s/  Janet C. Hall
Janet C. Hall
United States District Judge