Exhibit 7

Defendants' Statement of Contested Issues of Fact and Law.

## **DEFENDANTS' STATEMENT OF CONTESTED ISSUES OF FACT**

1. The nature and terms of any agreements between the Individual Defendants and Genworth entered at the time the Individual Defendants were hired.

2. Whether any such agreements were subsequently modified during the course of employment.

3. Whether any modifications or "new agreements" were signed by the Individual Defendant and/or Genworth.

4. The nature and extent of any consideration given by Genworth for any post-hire modifications of purported agreements.

5. Whether Genworth's ethics manuals in existence at the time the Individual Defendants commenced their employment with Genworth or its predecessors were intended to create legally binding obligations or rights.

6. Whether material changes to the ethics manuals after the commencement of employment were brought to the attention of the Individual Defendants.

7. Whether the removal of a disclaimer that the ethics manuals did not create contractual obligations or rights was brought to the attention of the Individual Defendants.

8. Whether any innovations and proprietary information documents signed by the Individual Defendants at the commencement of their employment

required that any changes or modifications to the documents be signed by Genworth or its predecessors in order to be legally binding.

9. Whether Genworth or its predecessors ever signed any modifications to any innovations and proprietary information documents after the commencement of employment by the Individual Defendants.

10. Whether the terms of any ethics manuals or innovations and proprietary information documents signed by the Individual Defendants at the start of their employment addressed the use of customer contact information.

11. Whether any of the documents signed by Defendants at the start of their employment may be construed as enforceable non-solicitation and non-competition agreements.

12. The nature and extent of any actions by Genworth to secure customer contact information from access by outsiders.

13. The extent to which Genworth secured its ACT data base.

14. The extent to which Genworth allowed ACT to be copied onto CDs and taken out of the office by employees.

15. The extent to which Genworth kept track of the ACT CDs.

16. The extent to which customer contact information in hard copies was restricted by Genworth in terms of access and use.

17. The extent to which TNET data was distributed to Genworth employees, clients and third parties.

18. The extent to which TNET data was disseminated in hard copy form.

19. The extent to which Genworth kept track of TNET data disseminated to employees, clients and third parties.

20. The extent to which Genworth communicated to the Individual Defendants any notion that the customer contact information needed to be protected from use or disclosure because of any perceived value to Genworth in maintaining the secrecy of the information.

21. The extent of the Individual Defendants' knowledge of the customer contact information at the time of the termination of their employment with Genworth.

22. The extent to which the Individual Defendants supplemented their knowledge of the customer contact information with information obtained from ACT or TNET to create customer lists used by them following the termination of their employment with Genworth.

23. Whether the Individual Defendants sent customer contact information to Charles Schwab prior to the termination of their employment with Genworth.

24. Whether the Individual Defendants engaged in actions prior to the termination of their employment with Genworth in actual competition with Genworth.

25. Whether the Individual Defendants provided any trade secret materials to class counsel in the class action brought against Genworth in the United States District Court, Eastern District of New York, after the termination of their employment with Genworth.

26. Whether the Individual Defendants provided to class counsel any confidential or proprietary Genworth information that was protected by any contracts between the Individual Defendants and Genworth.

27. The circumstances surrounding the Individual Defendants' departure from Genworth, including their motivations for leaving the company.

28. The nature of Genworth's response to the departure of the Individual Defendants.

29. The nature and extent of the defamatory statements made by Genworth and Gurinder Ahluwalia following the departure of the Individual Defendants from Genworth.

30. The nature and extent of Genworth's and Mr. Ahluwalia's knowledge of the contractual relationship between Mr. Brinker and Defendants.

31. Whether Genworth and Mr. Ahluwalia acted negligently when they sent defamatory letters.

32. The circumstances surrounding the renewals of or changes to Genworth's contract(s) with Robert Brinker.

33. The circumstances surrounding any access to Genworth's website or computer system by the Individual Defendants following their departure from Genworth.

34. The nature and extent of Genworth's activities to terminate access to its computer systems, its website and third party websites by former employees.

35. The extent of damages proximately caused by TJT.

36. The extent of damages proximately caused by Genworth and Mr. Ahluwalia.

## **DEFENDANTS' STATEMENT OF CONTESTED ISSUES OF LAW**

### Genworth's Affirmative Claims Against Defendants

1. The nature and terms of any enforceable contracts between the Individual Defendants and Genworth.

2. Whether any modifications of any contracts between the Individual Defendants and Genworth were supported by legally sufficient consideration.

3. Whether the Individual Defendants breached any contracts between them and Genworth.

4. Whether client names, addresses, and account titles constituted trade secrets of Genworth.

5. Whether Genworth took reasonable steps to protect client names, addresses, and account titles so as to warrant protection under CUTSA.

6. Whether Defendants misappropriated any trade secrets of Genworth.

7. Whether Defendants' actions constituted unfair or deceptive practices in violation of CUTPA.

8. Whether Genworth sustained an ascertainable loss as a result of any violation of CUTPA by Defendants.

9. Whether Defendants' contacts with clients and counsel for the plaintiff class in the class action lawsuit constituted an interference with any contracts between Genworth and customers.

10. Whether any contact with clients and class counsel by Defendants resulting in any interference with contractual relationships between Genworth and customers was done without justification.

11. Whether Defendants intentionally accessed a computer owned by Genworth without authorization or intentionally exceeded authorized access and thereby obtained information from any protected computer system affecting interstate or foreign commerce or communication.

12. Whether Genworth's protected computer systems were damaged as a result of any acts of unauthorized access by Defendants.

13. Whether Genworth incurred at least $5,000 in costs to investigate its protected computer system for damage and/or remedying any actual damage to Genworth's protected computer systems caused by any unauthorized access by Defendants.

14. Whether Defendants intentionally accessed without authorization a Genworth facility through which an electronic service is provided.

15. Whether Defendants intentionally exceeded an authorization to access a Genworth facility.

16. Whether Defendants obtained, altered or prevented authorized access to a wire or electronic communication while it was in electronic storage.

17. Whether Genworth suffered any actual damages as a result of any unauthorized access to wire or electronic communications by Defendants.

18. The nature and specific amount of damages that Genworth suffered as a result of any misappropriation of any trade secrets by TJT Capital Group, LLC ("TJT").

19. The nature and specific amount of any damages incurred by Genworth as a result of any violation of the Computer Fraud and Abuse Act by TJT.

20. The nature and specific amount of any damages incurred by Genworth as a result of any violation of the Stored Communication Act by TJT.

21. The nature and amount of any damages incurred by Genworth as a result of any violation of CUTPA by TJT.

22. The nature and amount of any damages incurred by Genworth as a result of any tortious interference with contract by TJT.

23. Whether Genworth has been irreparably harmed by any conduct of Defendants deemed to constitute liability under any of Genworth's claims.

24. Whether Genworth lacks an adequate remedy at law.

25. Whether a permanent injunction enjoining Defendants from having contact with, and/or soliciting, clients serviced by Genworth is reasonably necessary to address the actions by Defendants as alleged by Genworth.

<u>Defendants' Affirmative Counterclaims and Crossclaims</u>

26. Whether Genworth or Gurinder Ahluwalia published any defamatory statements regarding Defendants to third persons, namely to clients, to visitors of Genworth's website and/or to Ms. Zandy.

27. Whether the defamatory statements identified Defendants to third persons, namely to clients, visitors to Genworth's website and/or Mary Jo Zandy.

28. Whether any of the defamatory statements charged improper conduct or lack of integrity in Defendants' profession or business, or claimed dishonesty or a crime of moral turpitude on the part of Defendants.

29. Whether any of the defamatory statements were made negligently.

30. Whether any of the defamatory statements were made intentionally.

31. Whether Genworth and/or Mr. Ahluwalia took steps to correct the misinformation that they had conveyed, to inform Genworth employees to correct misstatements that had been made, or to immediately correct inaccuracies on Genworth's website after they were informed of the agreement and relationship between Mr. Brinker and Defendants.

32. Whether Genworth acted negligently and/or intentionally in maintaining an inaccurate and false statement on its website for over two months.

33. Whether Defendants suffered economic loss that was legally caused by the defamatory statements.

34. Whether Defendants suffered injury to their reputations as a result of the publishing of the defamatory statements.

35. Whether Defendants suffered humiliation and mental suffering as a result of the publishing of the defamatory statements.

36. Whether Genworth and Mr. Ahluwalia acted willfully and intentionally in order to deceive customers in the publishing of any defamatory statements.

37. Whether any defamatory statements published by Genworth and Mr. Ahluwalia impugned the basic integrity or creditworthiness of Defendants' business.

38. Whether Genworth and Mr. Ahluwalia engaged in unfair methods of competition or deceptive acts or practices in the conduct of their business.

39. Whether any actions by Genworth and Mr. Ahluwalia offended public policy, were immoral, unethical, oppressive or unscrupulous or caused substantial injury to consumers, competitors or other business persons.

40. Whether Genworth or Mr. Ahluwalia intentionally interfered with business relationships between Defendants and clients and/or Robert Brinker.

41. Whether clients acted on the misrepresentations of Genworth and/or Mr. Ahluwalia.

42. Whether Defendant's suffered an actual loss as a result of the acts of intentional interference committed by Genworth and/or Mr. Ahluwalia.

43. The nature and amount of any actual loss suffered by Defendants as a result of the acts of intentional interference committed by Genworth and/or Mr. Ahluwalia.