## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| GENWORTH FINANCIAL WEALTH MANAGEMENT, INC., | |
| Plaintiff, | Civil Action No. 3:09-CV-1521-JCH |
| v. | |
| TIMOTHY MCMULLAN, JAMES COOK, TIMOTHY MCFADDEN, KAREN BAZON, TAMARA RIVERA and TJT CAPITAL GROUP, LLC, | **PLAINTIFF'S REPLY ON MOTION IN LIMINE NO. 1** |
| Defendants. | |
| TIMOTHY MCMULLAN, JAMES COOK, TIMOTHY MCFADDEN, AND TJT CAPITAL GROUP, LLC, | |
| Third-Party Plaintiffs, | |
| v. | |
| GURINDER AHLUWALIA, | |
| Third-Party Defendant. | October 5, 2012 |

## <u>INTRODUCTION</u>

Plaintiff Genworth Financial Wealth Management, Inc. ("Genworth") submits this Brief in further support of its Motion in Limine No. 1 seeking an Order reaffirming Magistrate Judge Smith's squarely on-point ruling from February 11, 2011, regarding the scope of this case, and precluding Defendants from introducing at trial any evidence, whether testimony or exhibits, regarding the facts or merits of the *Goodman* class action in the Eastern District of New York (the "Class Action").

Defendants' Opposition is little more than 21 pages of incendiary rhetoric about Genworth's so-called "fraud" in the way it constructed and marketed model investment portfolios to its clients -- *i.e.*, the same accusations fed by Defendants to Plaintiffs' counsel and now at issue in the *Goodman* case -- and about how the Defendants allegedly complained about Genworth's business practices while employed there, and allegedly left Genworth because of those practices (*i.e.*, their "motivations" for leaving) (collectively, "Class Action evidence").

However, wholly lacking from Defendants' Opposition is any substantive analysis of the actual claims brought by the parties in <u>this</u> case and their elements of proof under the law, or any showing of how *any* Class Action evidence -- including the specific documents Defendants list in the Pre-Trial Order and argue from in their Opposition -- is relevant to their defense against Genworth's claims, or to Defendants' prosecution of their counterclaims.  Defendants instead mischaracterize what Genworth's CUTPA claim is about, what Genworth alleges, and what Genworth intends to prove at trial.  The gravamen of Genworth's CUTPA claim is twofold: (1) stealing and misusing information that is the property of one's employer -- here, Defendants' theft of client data from Genworth's databases -- violates CUTPA, whether or not the information is, or is not, a trade secret; and (2) Defendants failed to disclose their *role* in instigating and publicizing the Class Action to Genworth's clients, as well as misrepresenting to

those clients the status of Genworth's relationship with Mr. Brinker.  Class Action evidence, including facts that speak to how Genworth constructed or marketed its model portfolios to clients while Defendants were employees, has no bearing on and most certainly is no defense to, Plaintiffs' CUTPA claim that Defendants' misappropriated Genworth client data from its databases to start a competing business.  Nor is it any defense for Defendants to assert that they purportedly only provided "truthful" or "non-confidential" Genworth information to class counsel, or that their "motivations" for leaving Genworth were well intentioned.  Calling themselves "whistleblowers" at this juncture does not somehow justify the taking of client data to bring AUM and fees to their new firm.

Similarly, Defendants' Counterclaims are all predicated on Genworth's alleged defamatory statements about Defendants' competing business (TJT) after they left Genworth. These claims likewise do not touch upon either any alleged misconduct by Genworth towards its clients or Defendants' motivations in leaving Genworth.  The notion that Genworth sued Defendants because they "blew the whistle" is pure fiction.  Genworth's alleged defamatory statements were made months prior to the Class Action being filed.  Moreover, as Defendants admit, at the time that Genworth commenced this lawsuit Defendants had not yet contacted class counsel, and the Class Action did not even exist.  The theory that the Defendants were sued and defamed in reaction to their supposed "whistle-blowing" defies the clear chronology of events, and the corollary implication that they somehow are entitled to spin tales of Genworth's "fraud" to vindicate their good names is both a diversionary tactic and utterly false.

The evidence produced by a third party in discovery, and relied upon by Judge Bryant in granting the preliminary injunction, caught Defendants in multiple, clear sworn lies to this Court and the willful destruction of evidence.  Defendants clearly hope to be able to attack their former employer's business practices in the trial of this case to try to deflect attention from their own

conduct.  But there is no nexus between the Class Action allegations and evidence, on the one hand, and the actual claims, counterclaims and defenses which have been brought in this case and are to be tried in December.  Magistrate Judge Smith's ruling (Doc. No. 152) properly drew the line between what is, and what is not, relevant in this case.  That ruling shaped the scope of discovery and resulting summary judgment motion practice.  Through their pre-trial list of evidence and trial exhibits, Defendants now, on the eve of trial, want to undo and ignore Judge Smith's ruling, and ask this Court to conduct an additional, massive collateral mini-trial focused on how Genworth dealt with its clients, a wholly irrelevant inquiry to any of the claims, counterclaims and defenses in this case.  This is a quintessential scenario in which to apply the law of the case doctrine.

This Court should bar introduction of Class Action evidence at trial, and limit admissible evidence to issues pertaining to the claims, counterclaims and defenses before the Court.

## ARGUMENT

### 1.   Magistrate Judge Smith's Ruling Is Law Of The Case

Defendants complain mightily that Magistrate Judge Smith's ruling -- in which he squarely held that Class Action evidence is "irrelevant" to the claims, counterclaims and defenses in this case (Doc. No. 152 at 2) -- is not the law of the case, but they cite no caselaw to support that position.  Indeed, Magistrate Judge Smith gave Defendants 14 days to object to his ruling.  (*Id.* at 5).  Defendants never did so.  Ultimately, their argument, when stripped of its bluster and *ad hominem* attacks on Genworth's "overreaching litigation tactics," boils down to simple disagreement with his ruling.  But the ship has long since sailed for Defendants to challenge that ruling.  Waiting until literally the eve of trial to seek to re-open an issue, with mostly the same arguments and a few newly-repackaged arguments cut from the same cloth -- after the parties conducted the entire case, including discovery and dispositive motion practice,

in accordance with the framework established by Magistrate Judge Smith -- is inappropriate. This is a textbook scenario for application of the law of the case doctrine.

**2.    Defendants' "Motivations" And The Alleged "Fraud" Underlying The Class Action Evidence Are Irrelevant To Genworth's Claims And Defendants' Defenses**

**A.    Genworth's CUTPA Claim**

Defendants spend the vast majority of their Opposition focusing on Genworth's CUTPA claim, and specifically the aspect of that claim that relates to Defendants' instigation of the Class Action. Specifically, Defendants argue that their "ability to properly defend against the CUTPA claim asserted by Genworth depends heavily on Defendants' ability to present evidence regarding the information actually provided to class counsel and the reasons for providing such information." (Opp. Br. at 14). A review of the actual elements of a CUTPA claim under Connecticut law shows that neither of those categories of evidence are relevant.

Liability may be established under CUTPA by showing that a defendant has engaged in either "unfair" or "deceptive" conduct. Conn. Gen. Stat. § 42-110b(a). A defendant's actions are "unfair" under CUTPA if those actions (i) offend public policy, (ii) are immoral, unethical, oppressive or unscrupulous, and/or (iii) cause substantial injury. *Naples v. Keystone Bldg. & Dev. Corp.*, 295 Conn. 214, 227, 990 A.2d 326, 337-38 (2010). Connecticut law is clear that where an employee steals information that is the property of his or her employer, that theft in and of itself offends public policy and is "immoral, unethical, oppressive or unscrupulous" conduct in violation of CUTPA, even if the stolen information is not a trade secret. *See, e.g., Blue Cross & Blue Shield of Conn., Inc. v. DiMartino*, 1991 WL 127094, at *5 (Conn. Super. July 2, 1991); *Sportsman Boating Corp. v. Hensely*, 192 Conn. 747, 756 (1984)); *AGC, Inc. v. Baillargeon*, 2011 WL 1176141 at *24-25 (Conn. Super. Mar. 9, 2011); *Blackwell v. Mahmood*, 120 Conn. App. 690, 704, 992 A.2d 1219, 1229-30 (2010); *Utzler v. Braca*, 115 Conn. App. 261, 279-81, 972 A.2d 743, 756 (2009)).

4

Here, Genworth's claim under the "unfair" prong of CUTPA focuses on the Defendants' misappropriation of Genworth's confidential client data, and their wrongful use of that information to solicit Genworth clients to join TJT.  The Defendants' "motivation" or "reasons" for *why* they stole Genworth's client data are plainly irrelevant.

An act is "deceptive" under CUTPA if three requirements are met.  "First, there must be a representation, omission or other practice likely to mislead consumers.  Second, the consumers must interpret the message reasonably under the circumstances. Third, the misleading representation, omission or practice must be material -- that is, likely to affect consumer decisions of conduct."  *Caldor, Inc. v. Heslin*, 215 Conn. 590, 597 (1990).  The gravamen of Genworth's CUTPA claim based on "deceptive" conduct is that Defendants (1) gave Genworth clients the incorrect impression that Genworth no longer had an advisory relationship with Mr. Brinker, and (2) failed to disclose to Genworth clients that the Defendants themselves, as competitors of Genworth, played the central role in instigating the Class Action, thus giving the false impression that the Class Action was an "independent" lawsuit.  (*See* Genworth's Proposed Conclusions of Law, Doc. No. 304-8, at 34-36).  Under Connecticut law, in neither case does it matter what the Defendants' motivations were -- they either made a material misrepresentation/omission to Genworth's clients or they did not.

Defendants also argue that "[t]he fact that Defendants provided truthful non-confidential, non-trade secret information regarding fraudulent activity to class counsel and to clients would absolve Defendants of liability under Genworth's CUTPA claim . . . ."  (Opp. Br. at 14-15).  This argument, too, fails under Connecticut law.  Again, Genworth's argument under CUTPA's "unfair" prong is not even premised upon the Defendants' instigation of the Class Action, but instead only Defendants' misappropriation of Genworth's confidential client data to start up a competing business.  And, as shown above, Genworth's argument under CUPTA's "deceptive"

prong does not require proof that Defendants provided untruthful, confidential or trade secret information to class counsel, and thus it is no defense that the information so provided was in fact truthful, not confidential or not a trade secret.  Rather, what matters are the representations or omissions Defendants made *to Genworth clients* about Defendants' *role* in that lawsuit.[1]

### B.     Defendants' Defense To Genworth's Trade Secret Arguments

Another error that pervades Defendants' Opposition is their myopic view of what constitutes a "trade secret" or "confidential" information in this case.  In an obvious attempt to sneak Class Action evidence in through the backdoor, Defendants argue that certain Class Action evidence -- *e.g.*, client statements or Genworth's correspondence with clients -- are relevant to establish that the information they stole from Genworth is not "confidential" or "trade secret."

Genworth of course does not dispute that Defendants have a right to defend against Genworth's claims by demonstrating that the information they took from Genworth was not confidential and/or trade secret information.  Here, however, what Defendants purloined from Genworth and used to start their competing business is the totality of Genworth's Private Client Group client list and related client data -- which is comprised of both public and non-public information, compiled at great expense over many years, and stored principally in several safeguarded, proprietary databases such as TNET and ACT.  In other words, they stole the keys

_____

[1] Defendants invoke this Court's reference to the "*Noerr-Pennington* Doctrine" in its Consolidated Summary Judgment Ruling (Doc. No. 280, at 24) to argue that they have no liability under CUTPA because they only provided class counsel "information regarding what they reasonably perceived to be fraudulent activity committed by Genworth on a massive scale."  (Opp. Br. at 14).  This argument is a red herring, as the merits or truth of the information provided to class counsel is irrelevant to Genworth's CUTPA claim.  Moreover, the Court merely made a passing reference to the *Noerr-Pennington Doctrine* in dicta, in a footnote, after correctly observing that "Genworth does not appear to argue that the Principal Defendants' role in the class action in and of itself gives rise to CUTPA liability on an unfairness theory." (Doc. No. 280, at 24 n.13).  The Court concluded, again in dicta, that "Had Genworth raised the argument that the Principal Defendants' participation in the class action, without more, violated CUTPA, this court would have to determine whether the *Noerr-Pennington* Doctrine shields the Principal Defendants' conduct with respect to the class action unless the class action is a 'sham.'  Because Genworth does not raise this argument, this court does not resolve the matter."  *Id.* (emphasis added).

to the kingdom.  Individual client statements, client correspondence and other "public" documents that Defendants seek to use at trial have no bearing on whether Genworth's client databases constitute protectable trade secrets.

To that end, both the language of the Connecticut Uniform Trade Secrets Act ("CUTSA") and Connecticut caselaw construing CUTSA recognize that the combination of information which comprises a "customer list" can be a protectable trade secret.  Conn. Gen. Stat. § 35-51(d) (defining "trade secret" as "information, including a . . . customer list"); *see also, e.g.*, *Smith v. Snyder*, 839 A.2d 589, 595-96 (Conn. 2004) (customer data used by former employee to start competing business was a trade secret); *Dunsmore & Assoc., Ltd. v. D'Alessio*, 1998 WL 638452 at *2-6 (Conn. Super. Sept. 4, 1998) ("customer list at issue, consisting of files, lists and records of the plaintiff, constituted confidential information or a trade secret").

Here, Genworth's clients largely are investors who wish to follow the market timing/asset allocation strategies of Robert Brinker, and the identities of those select clients, and client leads, are not known outside of Genworth.  Defendants admitted under oath that there is no public source to learn the identities either of investors who ascribe to Brinker's strategies, or Genworth's clients.  (*See, e.g.*, Doc. No. 197-9 at 69:8-22, 241:8-18; Doc. No. 197-11 at 97:16-22).  Defendants' argument in its Opposition turns trade secret law on its head.  In effect, they argue that because the name or other details of any particular client or his/her holdings is available on Genworth's client account statements, or in clients' communications with Genworth and its employees (*e.g.*, Defendants), that this makes the information public.  This argument makes no sense.  Nor did, as Defendants claim, Genworth "concede" in Doc. No. 269, p.2 that "communications with clients are not confidential."  (Opp. Br. at 12).  What Genworth said there, and again here, is that Genworth's communications with its own clients did not make their identities or their holdings public information.

7

C.     **Defendants' Unclean Hands Defense**

Defendants rehash their argument, already considered and rejected by Magistrate Judge Smith, that Genworth's alleged "fraud" is "relevant to Defendants' affirmative defense of unclean hands." (Opp. Br. at 16). Citing no caselaw and simply arguing in conclusory fashion that they were "directly injured" by the alleged fraud that Genworth committed on its clients, Defendants ignore the well-settled Connecticut law cited by Genworth which firmly establishes that Class Action evidence is not relevant to Defendants' unclean hands defense.

*First*, the alleged misconduct must relate to the "claim to which it is asserted as a defense." *Dunlop-McCullen v. Local 1-S, AFL-CIO-CLC*, 149 F.3d 85, 90 (2d Cir. 1998); *Gerstenfeld v. Bradley Court, LLC*, 2011 WL 384053, at *2 (Conn. Super. Jan. 14, 2011). Genworth's alleged misconduct towards its clients while Defendants were still employed there plainly has no nexus to Genworth's claim that Defendants misappropriated Genworth's confidential and proprietary information and used it to steal Genworth's clients. To hold otherwise would give disgruntled employees a free pass to steal their employer's confidential information any time they could point to any unrelated misconduct by that employer. That is not the law. *See, e.g., Chauvin Intern. Ltd. v. Goldwitz*, 927 F. Supp. 40 (D. Conn. 1996).

*Second*, Connecticut law requires that "[t]he wrong must have been done to the defendant himself and not to some third party." *Cohen v. Cohen*, 182 Conn. 193, 206, 438 A.2d 55, 62 (1980). It is not enough that the defendant was indirectly *affected* by the misconduct; rather, "the conduct alleged to be unclean must have been done directly against the interests of the party seeking to invoke the doctrine." *Thompson v. Orcutt*, 257 Conn. 301, 311, 777 A.2d 670, 677 (2001). Even if Genworth did not follow the asset allocation it promised its clients, that alleged misconduct was not "done to the defendant himself" or "directly against" Defendants' interests.

8

**3.      Class Action Evidence Is Irrelevant To Defendants' Counterclaims**

Defendants repeatedly argue that they are entitled to present evidence of the alleged "fraud" at issue in the Class Action simply because their "counterclaims contain allegations regarding the fraudulent activity."  (Opp. Br. at 17).  This argument fails for several reasons.

*First*, Defendants only allege in two introductory paragraphs at the beginning of the "Facts" in their Counterclaims that they resigned due to Genworth's alleged fraud towards its clients.  Read in the context of the allegations that follow in the Counterclaims, those "facts" have nothing to do with the counterclaims asserted against Genworth, all of which relate to Genworth's alleged defamatory statements *after* Defendants left:

> **Since resigning from the employ of Genworth**, agents of Genworth . . . have defamed and disparaged Defendants-Counterclaimants-Third Party Plaintiffs and have tortiously interfered with TJT, by fraudulently and intentionally misrepresenting to clients, prospective clients and third parties both that Genworth has an exclusive agreement with Bob Brinker and that TJT does not have any relationship or agreement with Bob Brinker causing Defendants-Counterclaimants-Third Party Plaintiffs' damage. . . . These intentional misrepresentations have damaged Defendants-Counterclaimants-Third Party Plaintiffs' reputations and relationships with clients and business relations and with prospective clients and business relations.

(Doc. No. 7 at ¶¶ 13, 18) (emphasis added).  Consistent with that, Defendants' CUTPA claim, for example, states that "Genworth's violation of CUTPA was carried out for the improper purpose of competing unfairly *with TJT*."  (Doc. No. 7 at ¶ 39) (emphasis added).  TJT did not start competing until *after* the Defendants left Genworth.  Genworth did not know about TJT until *after* Defendants left.  There is no construction of Defendants' CUTPA claim which makes relevant the alleged "fraud" which Genworth committed on its customers *while* Defendants were still employed there.

This is not a case about Defendants' reasons for leaving Genworth; there is no employment claim in this litigation against Defendants, nor is there any wrongful termination claim against Genworth.  Magistrate Judge Smith correctly recognized, in finding that Class

Action evidence is "irrelevant to the instant action," that Defendants improperly bootstrapped Genworth's alleged "fraud" into their Counterclaims to try to deflect attention from their own misconduct.

*Second*, Defendants argue that because they seek punitive damages with respect to Genworth's alleged defamatory statements about them after Defendants left Genworth, they can introduce Class Action evidence about how Genworth allegedly treated its own customers. (Opp. Br. at 17).  Here again, Genworth's alleged misconduct in constructing and marketing its portfolios to its own clients still has zero nexus to those alleged defamatory statements, made *after* Defendants left Genworth's employ in 2009.  There is no place in this lawsuit to punish Genworth for anything Defendants may allege (falsely) Genworth did to hurt its own clients.

## <u>CONCLUSION</u>

Genworth respectfully requests that the Court grant its Motion in Limine No. 1 along with such other relief as this Court deems proper.

Dated:  October 5, 2012

Respectfully Submitted,

/s/ Reid L. Ashinoff
SNR DENTON US LLP
Reid L. Ashinoff  *(admitted phv)*
Sandra D. Hauser *(admitted phv)*
Brendan E. Zahner *(admitted phv)*
1221 Avenue of the Americas
New York, NY 10020
reid.ashinoff@snrdenton.com
sandra.hauser@snrdenton.com
brendan.zahner@snrdenton.com
Tele: (212) 768-6700
Fax: (212) 768-6800

Eric W. Wiechmann (CT 04331)
Elizabeth M. Smith (CT 19808)
ewiechmann@mccarter.com
esmith@mccarter.com
McCARTER & ENGLISH, LLP
City Place I, 185 Asylum Street
Hartford, Connecticut 06103-3495
Tele: 860-275-6763
Fax: 860-560-5970

*Counsel for Plaintiff Genworth Financial Wealth Management, Inc. and Third-Party Defendant Gurinder Ahluwalia*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that I have caused to be served a true and correct copy

of the foregoing document on this 5th day of October 2012 via electronic filing.  Notice of this

filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or

by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic

Filing.  Parties may access this filing through the Court's CM/ECF system.




/s/ Reid L. Ashinoff