# EXHIBIT 1

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 1

```
 1        ** CONFIDENTIAL - ATTORNEYS' EYES ONLY **
              UNITED STATES DISTRICT COURT
 2                DISTRICT OF CONNECTICUT
           CIVIL ACTION NO. 3:09-cv-1521(VLB)
 3

    GENWORTH FINANCIAL WEALTH
 4  MANAGEMENT, INC.,
 5       Plaintiff,
 6  vs.
 7  TIMOTHY McMULLAN, JAMES COOK,
    TIMOTHY McFADDEN, KAREN BAZON,
 8  TAMARA RIVERA and TJT CAPITAL
    GROUP, LLC,
 9
         Defendants.
10  _____/
    TIMOTHY McMULLAN, JAMES COOK,
11  TIMOTHY McFADDEN, and TJT CAPITAL
    GROUP, LLC,
12
         Third-Party Plaintiffs,
13
    vs.
14
    GURINDER AHLUWALIA,
15
         Third-Party Defendant.
16  _____/
17                         200 South Orange Avenue
                           Suite 1100
18                         Orlando, Florida
                           Tuesday, April 5, 2011
19                         9:00 a.m. - 12:40 p.m.
20
              DEPOSITION OF CHRISTOPHER D'ANGELO
21
22       Taken on Behalf of the Plaintiff and
23    Third-Party Defendant before Lisa Gerlach,
24    FPR, Notary Public in and for the State of
25    Florida at Large, pursuant to Notice.
```

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 8

1	Q.	What sort of help do you provide to them?
2	A.	We will do a lot of training with the
3	different departments of Schwab and also help with
4	generating the client packages.
5	Q.	When you say client packages, what are you
6	referring to?
7	A.	Client packages would be the applications
8	that are associated with particular clients and also
9	any ancillary forms that need to go into the client
10	packages.
11	Q.	So these are application forms that an
12	advisor that's moving over to Schwab will use to bring
13	their clients with them?
14	A.	That is correct.
15	Q.	Do you know who Andrew Magnus is?
16	A.	Yes, I do.
17	Q.	Andrew Magnus, he gave a deposition in this
18	case and we were talking about some of the information
19	back and forth.  In his deposition, he indicated that
20	you were really a specialist in what's considered
21	client confidential information or non-public
22	information.
23		Is that a fair assessment?
24	A.	Can you ask that again?
25		(The reporter read the question back.)

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 9

1     THE WITNESS:  Yes, it is.
2  BY MR. ZAHNER:
3     Q.  Can you describe to me what kind of
4  information you consider or Schwab considers to be --
5  if they're different -- if you have a different
6  understanding than Schwab, let me know -- what Schwab
7  or you consider to be client confidential information
8  generally?
9     A.  We would consider that to be non-public
10 information and that would be anything that is not
11 public information, such as Social Security number and
12 date of birth, et cetera.
13    Q.  Would it include phone numbers?
14    A.  No, it would not.
15    Q.  How about names and addresses?
16    A.  No, it would not.
17    Q.  Is there anything else other than Social
18 Security number and date of birth that's considered
19 client confidential information?
20    A.  We would consider work information; we would
21 consider beneficiary information on accounts.
22    Q.  How about the legal title of the account?
23    A.  Registration would not be NPI information.
24    Q.  Does that mean if I called up and asked
25 Schwab, "Hey, my friend, Bob Jones, has an account

1    Q.  Do you know why the names appear multiple
2    times on this?
3    A.  I do not.
4    Q.  Did you ever ask Mr. McFadden or anybody else
5    why at least some names appear multiple times, whereas
6    others don't?
7    A.  I do recall that we received another e-mail
8    with the registration types.
9    Q.  So if there's four different registration
10   types, that would explain why the name is listed four
11   times?
12   A.  Or different account types, that is correct.
13   Q.  You testified that the account type is not
14   considered NPI?
15   A.  That is correct.
16   Q.  As a result, it's not Schwab's concern how an
17   advisor comes into this sort of information.  As long
18   as it's not NPI, how they got it is their problem.  Is
19   that fair?
20   A.  That is correct.
21   Q.  Is there anything unusual about receiving
22   information in this sort of format from an advisor?
23   A.  No, it's not.
24   Q.  If you look at lines 6 through 9, the ones
25   that relate to Gail L. James?

Page 64

1   e-mail was sent from Mr. McFadden to yourself --
2   Exhibit 3 -- and now we're looking at Magnus 72 --
3   this was sent by Mr. McMullan to Andrew Calleri.  So
4   it's sent by different people to different people.
5           How does Schwab go about putting these
6   together?
7       A.  I don't recall.
8       Q.  Do you recall ever having a discussion with
9   Mr. Calleri about, "Hey, I've got names but no account
10  types."  And he said, "Hey, Ive got account types but
11  no names."  Any discussion about that?
12      A.  I don't recall.
13      Q.  It didn't happen or it might've happened and
14  you just don't recall the substance?
15      A.  It might have.  I don't recall the substance.
16      Q.  In the 250 or so transfers that you've done,
17  have you ever seen information split up in this sort
18  of way?
19      A.  We see anything and everything, so yes.
20      Q.  You're seeing names and addresses separated
21  from account type?
22      A.  Yes, I have.
23      Q.  Is there any reason to do that?
24      A.  Whatever the advisor provides to us, we go
25  ahead and take the information, put it together and

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 84

1     A.  No, I don't recall having any conversations
2  about that.
3     Q.  Do you recall having conversations with
4  anybody concerning how the titles were provided
5  separately like this?
6     A.  No, I did not.
7     Q.  Did you testify earlier that you actually
8  have seen other advisors separating names and
9  addresses from title?
10    A.  Yes, I've seen everything, and, yes, I have
11 seen that before.
12    Q.  That specifically has happened?
13    A.  Yes, it has.
14    Q.  Do you have any understanding of why that
15 would be done that way?
16    A.  I don't.
17    Q.  And you've seen a lot of these?
18    A.  Yes.
19        (Exhibit 4 was marked for
20        identification.)
21 BY MR. ZAHNER:
22    Q.  Exhibit 4 is an e-mail from Mr. McFadden to
23 yourself dated Sunday, August 9, 2009 at 8:01 p.m.
24 It's bate-stamped number CS002225 through and
25 including CS002230.

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 103

1  CERTIFICATE OF REPORTER

2  STATE OF FLORIDA

3  COUNTY OF ORANGE

4

5        I, Lisa Gerlach, Court Reporter, do hereby
6  certify that I was authorized to and did
7  stenographically report the foregoing deposition; and
8  that the transcript is a true and correct
9  transcription of the testimony given by the witness.
10       I further certify that I am not a relative,
11 employee, attorney or counsel of any of the parties,
12 nor am I a relative or employee of any of the parties'
13 attorney or counsel connected with the action, nor am
14 I financially interested in the action.
15       Dated this 5th day of April, 2011.
16
17       _____
18       Lisa Gerlach, FPR
19
20 The foregoing certification of this transcript does
21 not apply to any reproduction of the same by any means
22 unless under the direct control and/or discretion of
23 the certifying reporter.
24
25