UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GENWORTH FINANCIAL WEALTH MANAGEMENT, INC., <br><br> Plaintiff, <br><br> v. <br><br> TIMOTHY MCMULLAN, JAMES COOK, TIMOTHY MCFADDEN, KAREN BAZON, TAMARA RIVERA and TJT CAPITAL GROUP, LLC, <br><br> Defendants. | Civil Action No. 3:09-CV-1521-(JCH) <br><br><br> PLAINTIFF'S REPLY IN RESPONSE TO DEFENDANTS' OPPOSITION TO MOTION IN LIMINE <br> NO. 3 |
| TIMOTHY MCMULLAN, JAMES COOK, TIMOTHY MCFADDEN, AND TJT CAPITAL GROUP, LLC, <br><br> Third-Party Plaintiffs, <br><br> v. <br><br> GURINDER AHLUWALIA, <br><br> Third-Party Defendant. | |
| | October 29, 2012 |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION IN LIMINE
TO PRECLUDE FOUR WITNESSES
DISCLOSED FOR THE FIRST TIME IN
CONNECTION WITH THE JOINT PRE-TRIAL ORDER**

INTRODUCTION

Plaintiff Genworth Financial Wealth Management ("Genworth") respectfully submits this Reply Memorandum of Law in further support of its motion in limine to preclude Defendants from introducing at trial the testimony of four witnesses never disclosed in their initial disclosures or in any supplements to those disclosures.

ARGUMENT

Defendants failed to comply with the rules of discovery and now attempt to shift blame onto Genworth by making assertions unsupported by legal precedent, logic and the record in this case. Defendants claim that because three of the four undisclosed witnesses were mentioned during depositions, and/or in summary judgment motions, albeit for purposes irrelevant to the matters at issue in this case, Genworth knew of Defendants' intention to call them at trial. Defendants wrongly assert that Genworth "has long been aware of Defendants' intention to utilize these witnesses" and "has as much knowledge, if not more, of these witnesses and the scope of their knowledge." (Defs. Opp'n Br. 2, 3.) Defendants posit, implausibly, that Genworth knew of Defendants' intention to use the witnesses, but made an affirmative choice to not take discovery from them. (Defs. Opp'n Brf. 5.) This is so, Defendants claim, despite the fact that Defendants *never* disclosed these witnesses in their initial disclosures, nor sought to depose these witnesses, nor subpoenaed these witnesses, nor supplemented their disclosures with these witnesses, nor otherwise provided Genworth with any form of notice that Defendants might seek to call them at trial.

Defendants' contentions stand in stark contrast to the principles established by the Federal Rules, which require disclosure of witnesses a party may use to support its claims or defenses *during the discovery period*, so that the parties may take discovery of those witnesses during the discovery period. The Rules do not place a burden on litigants to discern or otherwise

intuit the witnesses their opposition intends to call at trial. That would defeat the very purpose of discovery, which as the Supreme Court has said, "serves to 'make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.'" *United States v. Procter & Gamble*, 356 U.S. 677, 682 (1958). Moreover, established case law makes clear that knowledge of the identity of an individual, for example where they were a former employee or mentioned in deposition testimony, does not constitute proper notice that the other party may use that individual to support their claims or defenses.

Furthermore, Defendants fail to meet their burden under Rule 37 of proving substantial justification or harmlessness in connection with their failure to disclose. *Schiller v. City of New York*, No. 04cv7922, 2008 WL 4525341, at *3 (S.D.N.Y. Oct. 9, 2008) (citations omitted) ("The burden to prove substantial justification or harmlessness rests with the dilatory party."). They also fail to demonstrate that the court should exercise its discretion and allow these undisclosed witnesses to testify at trial under the four-part test established by the Second Circuit. *See, e.g., Softel, Inc. v. Dragon Med. and Scientific Comm's Inc.*, 118 F.3d 955, 961 (2d Cir. 1997) (applying four factors: "(1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness [or new evidence]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance," and affirming preclusion).

Defendants offer *no justification or explanation* for their failure to disclose three witnesses, and their explanation for their failure to disclose Steve Trujillo is unconvincing. Defendants have not shown that the testimony of the undisclosed witnesses is important or even relevant, nor have they refuted Genworth's assertion that it will suffer prejudice if these undisclosed witnesses are permitted to testify at trial. Finally, a continuance is unlikely since discovery closed over one year ago and trial is set to begin in little over a month.

I.  Defendants did not Comply With Their Obligations Under the Federal Rules

Defendants never dispute the fact that: (1) under Rule 26(a)(1) they were required to provide Genworth with their initial disclosures, stating the names of all individuals likely to have discoverable information that they might use to support their claims or defenses; (2) they never disclosed four witnesses when their initial disclosures were due, and (3) they never supplemented their initial disclosures at any point during the discovery period or thereafter.  Instead, Defendants assert that they had no duty to supplement their initial disclosures under Rule 26(e) because Rule 26(e) calls for supplemental disclosures when "additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."

Defendants Rule 26(e) argument fails.  Defendants never made known to Genworth during the discovery process or in writing that the four undisclosed witnesses had discoverable information.  Nor did this information come out in any other way during discovery.  The fact that the undisclosed witnesses are former Genworth employees, or that their names were mentioned during the discovery period, does not negate Defendants' obligations under the Federal Rules and did not provide Genworth with additional or corrective information such that it was on notice of Defendants' intention to call the witnesses at trial.  *See, e.g., Media Alliance, Inc. v. Mirch*, No. 09cv00659, 2012 WL 162375, at *3 (N.D.N.Y. Jan. 19, 2012) ("The defendants' knowledge of the existence of a witness does not satisfy the plaintiffs' disclosure obligation"); *Pal v. New York University*, No. 06cv5892, 2008 WL 2627614, at *4  (S.D.N.Y. June 30, 2008) ("Pal's knowledge of the existence of a witness does not satisfy the Rule 26(a)(1)(A) disclosure obligation; that obligation is fulfilled only if NYU informed Pal that it might call the witness in support of its claims or defenses . . . The purpose of this disclosure is to alert an opposing party of the need to take discovery of the named witness.").

If Defendants' arguments were true, they could conceivably call at trial any current or former Genworth employee whose name came up during any deposition. Rules 26(a)(1) and (e), however, call for *disclosure* of potential witnesses during discovery. Rule 37(c) ensures that parties are not allowed to flout their disclosure obligations and thereby gain an unfair advantage at trial. *See, e.g., Fleming v. Verizon New York, Inc.*, No. 03 Civ. 5639, 2006 WL 2709766, at *9 (S.D.N.Y. Sept. 22, 2006)[1] (granting motion to strike declarations of undisclosed witnesses in support of plaintiff's motion for summary judgment where declarants were not included in initial disclosures, supplements to disclosures or interrogatory responses, finding "unpersuasive [plaintiff's] argument that, because the declarants were all Verizon employees and she mentioned two of their names at her deposition, Defendant could have deposed them at any time," noting, "Verizon is a large corporation with thousands of employees, and Fleming admits that several of the declarants did not even work directly with her. . . . Absent the disclosure of the declarants' identities under Rule 26(a), it would be unreasonable to expect Verizon to depose them.").

## II. Preclusion is Warranted Under Rule 37 and Second Circuit Precedent

Preclusion is warranted here under the four-part test established by the Second Circuit. In fact, Defendants cite the correct test, but then proceed to disregard its elements, and choose instead to fault Genworth for not taking discovery of their undisclosed witnesses.

### A. Defendants Still Fail to Proffer a Substantial Justification or Explanation for Their Failure to Disclose the New Witnesses

Defendants never provide any explanation at all, much less a substantial justification, for their failure to disclose three of the four witnesses. Defendants knew these undisclosed

---

[1] *Fleming* states that the Second Circuit had not yet decided whether a party had to show that the non-disclosing party acted in bad faith under Rule 37. The Second Circuit, in *Design Strategy Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006) clarified this issue, holding that a party seeking preclusion does not have to show that the non-disclosing party acted in bad faith in order to obtain relief under Rule 37.

-4-

witnesses. They knew the extent of these witnesses' knowledge and the testimony they provided during depositions. If Defendants believed that these individuals had knowledge that could support their claims or defenses, they were required to disclose them to Genworth so that Genworth could take discovery from them.

Defendants fail to proffer a justification or convincing explanation for their failure to disclose Steve Trujillo, claiming that they "were not aware of the scope of [his] knowledge until just before the submission of the Joint Trial Memorandum in July 2012." (Defs. Opp'n Brf. 6.) They provide no reason, however, for only recently becoming aware of the scope of his knowledge. Defendants never state that they were unable to contact Trujillo or to interview him or that they just became aware of his existence or his position as a former Genworth employee. They included Mr. Trujillo's wife and Defendants' employee, Jodi Trujillo, in their initial disclosures. Rule 26(a)(1) calls for disclosure of anyone Defendants *may* use to support their claims or defenses; if they had any indication that they might use Steve Trujillo, they should have disclosed him. Defendants provide no evidence that they made any effort to determine the scope of Trujillo's knowledge prior to, or at least during, the discovery period. *See, e.g., Pal v. New York University*, No. 06cv5892, 2008 WL 2627614, at  (S.D.N.Y. June 30, 2008) (finding NYU's failure to disclose witnesses was not substantially justified where NYU argued that it disclosed patients late because the patients had "only recently offered to get involved by signing a waiver," stating that NYU "[had] not adduced any evidence that it made appropriate efforts to secure waivers earlier in this litigation.").

B. <u>The Undisclosed Witnesses are Unimportant and Irrelevant To The Issues Here</u>

Defendants fail to show that these new witnesses are important or that they can proffer any relevant testimony.

Defendants state that Dan Kraninger is a "former PCG leader [who] may be called to testify as to his knowledge of the PCG and the management of client accounts." Joint Pre-Trial Memorandum at 21. However, Kraninger left GE Private Asset Management in late 2003, before defendant Ahluwalia became President of plaintiff Genworth, before defendant McMullan was hired to replace Kraninger, and six years (!) before the events of this lawsuit took place. He can have no relevant knowledge about either the alleged misconduct of the Defendants in 2009, or about Genworth's policies and practices regarding the protection of confidential information, or about any alleged defamation of the Defendants by Genworth, in 2009.

Kraninger was mentioned in depositions only a few times in the context of his 2003 exit from Genworth. As discussed in Genworth's brief in support of its Motion in Limine, McMullan briefly and incredibly described Kraninger as having possibly taken some Genworth data, but admitted that he had no firsthand knowledge of this claim, which would have occurred several months prior to McMullan's arrival at Genworth. (Pff. Brf. 3.) No other witness even suggested that Kraninger either improperly took or misused any protected proprietary information when he left in 2003. Given this, random questions at a couple of depositions about Kraninger's 2003 departure could in no way have informed Plaintiff that he was a witness Defendants planned to call at trial. If anything, Mr. D'Agostino's deposition testimony reflects that Kraninger has no relevant knowledge here. D'Agostino answered questions briefly about why Kraninger may have left back in 2003, and states that Kraninger when he left pursued a business deal (with Investors Business Daily) that Genworth had not wanted to do and had "passed on." (Defs. Opp'n Brf. Ex. 2, 15.)

Defendants argument that they also mentioned Kraninger's 2003 departure (and Joan Guccione's 2002 departure) in summary judgment briefing misses the point. Defendants, if they intended to use Kraninger (or Joan Guccione) to support their claims or defenses, should have

-6-

disclosed this intention to Genworth during the discovery period - prior to summary judgment briefing. In any event, whether or not Genworth "failed to track whether client information may have been used by Kraninger and Guccione." (Doc. 231, p. 13-14, n.12.) is irrelevant absent any suggestion in the entire evidentiary record here that either of them took any Genworth data improperly or without permission when they left plaintiff's corporate predecessor in 2003 and 2002, respectively. Neither Joan Guccione or Dan Kraninger ever worked for Genworth. Given their departures from Genworth's predecessor entities many years before the events at issue in this case, any testimony that either person could provide would be entirely irrelevant here, and it was not Genworth's responsibility to think otherwise and seek to depose these individuals when Defendants chose never to disclose them as potential witnesses during discovery as required by the Federal Rules.

With regard to Carlson, Defendants state that in their summary judgment briefing, they alleged that Genworth misrepresented that it had a continued agreement with Robert Carlson. Defendants' allegations regarding Carlson are entirely irrelevant to the claims and defenses at issue in this case.

Finally, in their Joint Pre-Trial Memorandum, Defendants state that Steve Trujillo was "the former Transfer of Accounts Leader at Genworth . . . and may be called to testify as to the company's policies and procedures" and "as to information of which he has personal knowledge regarding any of the facts and causes of action in the Complaint." In their opposition brief, Defendants state that in order for Genworth to "route all customer transfer requests through one of Genworth's chief operation principals," Trujillo was removed from his role in administrating the transfer of PCG accounts. Defendants also state that Trujillo knew of purported defamatory statements made by Ahluwalia regarding the Defendants.

However, it is irrelevant if Trujillo was removed from administering the transfer of PCG accounts, because there is no claim or defense relating to how transfers were effected by Genworth. Moreover, to the extent that Defendants now say they want to call Trujillo to support their defamation claims, this just clearly displays how thoroughly Defendants plan to sandbag Genworth.[2] Trujillo is not described by Defendants as having any information regarding Defendants' defamation counterclaims even in the Joint Pre-Trial Memorandum. Defendants only indicate that Trujillo has personal knowledge regarding " the Complaint" - not regarding their counterclaims. (*Cf.* Joint Pre-Trial Memorandum, p.20, Steve Trujillo, Todd D'Agostino) If Mr. Trujillo actually has such knowledge, these are completely new defamatory statements and Defendants still have not disclosed the particulars, and apparently planned to do so only once Mr. Trujillo takes the witness stand.

Finally, all of the four new witnesses are identified individuals whom Defendants *may* call at trial. Not one of them is described as a central or uniquely knowledgeable witness with unique and crucial information which is so important to this case that Defendants' failure to ever disclose any of them properly should be excused.

### C. Genworth Will be Prejudiced if Defendants are Permitted to Call Undisclosed Witnesses at Trial

Most fundamentally, Genworth will be prejudiced if defendants are allowed to call these undisclosed witnesses at trial. Genworth has had no opportunity to take discovery from these witnesses and does not know the scope of their knowledge or their likely testimony. Genworth had no opportunity to take depositions of these witnesses, subpoena documents from them, or to locate and designate witnesses or documents to confront their testimony.

---

[2] Defendants claim that they recently learned that Trujillo knows of defamatory statements by Mr. Ahluwalia, who allegedly made "accusations to other people that the Principal Defendants had stolen information." (Defs. Opp. Br. 7)

-8-

Rule 26(a)(1) disclosures are required precisely to prevent this type of sandbagging at trial, which is now little over one month away. To prepare to meet this testimony, on the eve of trial, would place an enormous and undue burden on Genworth. In the midst of trial preparation, and with the trial date set, Genworth would simply be unfairly burdened by devoting the substantial necessary time to taking depositions of the new witnesses, subpoenaing and reviewing their documents and locating documents and witnesses to confront their possible testimony.

The burden of Defendants' failure to comply with the Federal Rules should not be placed on Genworth. To take discovery of these witnesses now, so close to trial, would be costly and time consuming (e.g. Mr. Trujillo apparently resides in Arizona), and would detract from Genworth's trial preparation efforts. Without these efforts, however, Genworth will be unprepared to meet the testimony of these witnesses at trial.

Defendants' response to this point - that Genworth knew of the importance of these witnesses and Defendants' intention to use them to support their claims and defenses, yet chose to not take discovery from them as part of a pattern of trying to preclude discovery - has no basis in reality. (Defs. Opp'n Br. 5-6.) To the extent these names came up during discovery, their mentions, the testimony surrounding them and the scope of their knowledge was demonstrably irrelevant and unimportant. And if the testimony by these witnesses truly concerns material that Genworth "sought to preclude discovery into," presumably that means evidence relating to the claims at issue in the *Goodman* class action. Given Magistrate Judge Smith's ruling that such discovery was prohibited, Defendants cannot argue that Genworth should have taken such discovery. If Defendants had disclosed the witnesses in their initial disclosures with an accurate description of their knowledge, or at any time during discovery, Genworth would have responded accordingly, either by seeking to preclude their testimony as well or by taking

-9-

discovery from them, and also by locating witnesses and documents to respond to their testimony.

      D.  <u>There is Little Possibility of a Continuance</u>

Defendants do not deny that a continuance in this case is unlikely and do not request one here. Discovery has been closed for over one year and the "closure of discovery generally weighs strongly against the possibility of a continuance of the trial to reopen discovery." *Rienzi & Sons, Inc. v. Puglisi*, No. 08Civ2450, 2011 WL 1239867, at *4 (E.D.N.Y. Mar. 30, 2011). The trial date has been set and is fast approaching. Defendants have opposed extending deadlines and extending any deadlines here would only shift the burden of Defendants' failure to disclose onto the Plaintiff. Genworth has shown that it will face undue prejudice if these undisclosed witnesses are permitted to testify at trial, and has also demonstrated that these witnesses are entirely irrelevant to the claims and defenses at issue in this case. Any relevant testimony they may be able to provide can be provided by already disclosed witnesses, and their lack of importance is supported by the fact that Defendants themselves state that they *may* call these witnesses. Certainly, they are not critical or important to their claims and defenses and should not be permitted to testify at trial.

<u>Conclusion</u>

For the foregoing reasons, Genworth respectfully requests that the Court grant the relief set forth in this Motion and grant such other relief as this Court deems proper.

Dated:  October 29, 2012        Respectfully Submitted,

                                  /s/ _____
                                  SNR DENTON US LLP
                                  Reid L. Ashinoff  (admitted phv)
                                  Sandra D. Hauser  (admitted phv)
                                  Brendan Zahner   (admitted phv)
                                  1221 Avenue of the Americas
                                  New York, NY 10020

>reid.ashinoff@snrdenton.com
>sandra.hauser@snrdenton.com
>brendan.zahner@snrdenton.com
>Tele: (212) 768-6700
>Fax: (212) 768-6800
>
>Eric W. Wiechmann (CT 04331)
>Elizabeth M. Smith (CT 19808)
>ewiechmann@mccarter.com
>esmith@mccarter.com
>McCarter & English, LLP
>City Place I, 185 Asylum Street
>Hartford, Connecticut 06103-3495
>Tele: (860)-275-6763
>Fax: (860) 560-5970
>
>*Counsel for Plaintiff Genworth Financial Wealth Management, Inc. and Third-Party Defendant Gurinder Ahluwalia*

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that I have caused to be served a true and correct copy of the foregoing document on this 29th day of October, 2012 via electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

/s/ _____
Reid L. Ashinoff