# EXHIBIT B

**DISCOVERY GUIDE**

This Discovery Guide and Document Production Lists supplement the discovery rules contained in the FINRA Code of Arbitration Procedure for Customer Disputes ("Customer Code.") (See Rules 12505-12511.)

No requirement under the Discovery Guide supersedes any record retention requirement of any federal or state law or regulation or any rule of a self-regulatory organization.

The Discovery Guide, including the Document Production Lists (Lists), serves as a guide for the parties and the arbitrators. While the parties and arbitrators should consider the documents described in the Lists presumptively discoverable, the parties and arbitrators retain their flexibility in the discovery process.  Arbitrators can: order the production of documents not provided for by the Lists; order that parties do not have to produce certain documents on the Lists in a particular case; and alter the production schedule described in the 12500 series of rules.  Where additional documents are relevant in a particular case, parties can seek them in accordance with the time frames provided in the 12500 series of rules.  A party may object to producing a document on a List because of the cost or burden of production.  If the party demonstrates that the cost or burden is disproportionate to the need for the document, the arbitrators should determine if the document is relevant or likely to lead to relevant evidence.  If the arbitrators determine that the document is relevant or likely to lead to relevant evidence, they should consider whether there are alternatives that can lessen the impact, such as narrowing the time frame or scope of an item on the Lists, or determining whether another document can provide the same information.  Arbitrators must use their judgment in considering requests for additional documents and may not deny document requests on the grounds that the documents are not expressly listed in the Discovery Guide.

Nothing in the Discovery Guide precludes the parties from voluntarily agreeing to an exchange of documents in a manner different from that set forth in the Discovery Guide.  FINRA encourages the parties to agree to the voluntary exchange of documents and to stipulate to various matters.  The fact that an item appears on the Lists does not shift the burden of establishing or defending any aspect of a claim.

1

Only named parties must produce documents pursuant to the guidelines set forth herein. However, non-parties may be required to produce documents pursuant to a subpoena or an arbitration panel order to direct the production of documents (see Rule 12513). In addition, the arbitrators may use the Lists as guidance for discovery issues involving non-parties.

Parties and arbitrators should recognize that not all firms have the same business operations model and certain items on the Lists may not apply to a particular case when the firm's business model (e.g. full service firm, discount broker, clearing firm, or online broker) is taken into consideration.  In addition, certain items on the Customer List may not apply to a particular case depending on the claims asserted.  Absent a written objection or party agreement, the parties shall exchange documents on the Lists within the time frames set forth in the Customer Code.  Parties should raise any objections to the production of documents, based on an established privilege, in accordance with the time frames for objections set forth in the Customer Code.

Electronic files are "documents" within the meaning of the Discovery Guide.  The arbitrators shall decide any dispute that arises concerning the form in which a document will be produced.

**Confidentiality**

If a party objects to document production on grounds of privacy or confidentiality, the arbitrators or one of the parties may suggest a stipulation between the parties that the documents in question will not be disclosed or used in any manner outside of the arbitration of the particular case, or the arbitrators may issue a confidentiality order.   When deciding contested requests for confidentiality orders, arbitrators should consider the competing interests of the parties.  The party asserting confidentiality has the burden of establishing that the documents in question require confidential treatment.  In deciding questions about confidentiality, arbitrators should, taking into account the facts of a particular case, consider factors such as the following:

1. Whether the disclosure would constitute an unwarranted invasion of personal privacy (e.g., an individual's Social Security number, or medical information).
2. Whether there is a threat of harm attendant to disclosure of the information.
3. Whether the information contains proprietary confidential business plans and procedures or trade secrets.

4. Whether the information has previously been published or produced without confidentiality or is already in the public domain.

5. Whether an excessively broad confidentiality order could be against the public interest or could otherwise impede the interests of justice.

6. Whether there are legal or ethical issues which might be raised by excessive restrictions on the parties.

### Privileged Documents

Parties are not required to produce documents that are otherwise subject to an established privilege, including the attorney-client privilege and the attorney work product doctrine. The arbitrators shall not issue an order or use a confidentiality agreement to require parties to produce documents otherwise subject to an established privilege, including attorney work product.

### Affirmation in the Event that There Are No Responsive Documents

If a party responds that there are no responsive documents in the party's possession, custody, or control, the customer or the appropriate person in the brokerage firm who has knowledge, upon the request of the party seeking the documents, must: 1) state in writing that the party conducted a good faith search for the requested documents; 2) describe the extent of the search; and 3) state that, based on the search, there are no requested documents in the party's possession, custody, or control.  In appropriate cases, the arbitrators may order *a party to provide* such affirmations regarding discovery requests for documents beyond those contained in the Discovery Guide.

### No Obligation to Create Documents

Parties are not required to create documents in response to items on the Lists that are not already in the parties' possession, custody, or control.

### Admissibility

Production of documents in discovery does not create a presumption that the documents are admissible at the hearing.  A party may object to the introduction of any document as evidence at the hearing to the same extent that a party can raise any other objection at an arbitration hearing.

3

**Document Production Lists**

Throughout the Lists, FINRA refers to customers that are parties to an arbitration case as "customer parties" and other firm/associated persons' customers as "customers." The Guide provides separate Lists for firms/associated persons and for customer parties. For ease of reference, throughout the Lists, the terms "customer parties," "customers," "documents," "associated persons," "accounts," "claims" and "transactions" include the singular terms "customer party," "customer," "document," "associated person," "account," "claim" and "transaction," respectively. In addition, unless otherwise specifically stated, the term "firm" refers to a firm that is a party to the arbitration case.

\* \* \*

## DOCUMENT PRODUCTION LISTS

**LIST 1**

**Documents the Firm/Associated Persons Shall Produce in All Customer Cases**

1) (a) The account record information for the customer parties, including the customer parties' name, tax identification number, address, telephone number, date of birth, employment status, annual income, net worth, and the account's investment objectives.
(b) All documents concerning the customer parties' risk tolerance.
(c) All agreements with the customer parties, including, but not limited to, account opening documents and/or forms; cash, margin, option, and discretionary authorization agreements; trading authorizations; and powers of attorney.

2) All correspondence sent to the customer parties or received by the firm/associated persons relating to the claims, accounts, transactions, or products or types of products at issue including, but not limited to, documents relating to asset allocation, diversification, trading strategies, and market conditions; and all advertising materials sent to customers of the firm that refer to the products and/or account types that are at issue or that were used by the firm/associated persons to solicit or provide services to the customer parties. (In addition, if requested, the firm/associated persons shall produce confirmation slips and monthly statements. Even if not requested, the firm/associated persons must produce confirmation slips

4

and monthly statements that have handwritten notations or that are not identical to those the firm sent to the customer parties.)

3) All documents evidencing any investment or trading strategies utilized or recommended in the customer parties' accounts, including, but not limited to, options programs, and any supervisory review of such strategies.

4) For claims alleging unauthorized trading, all documents the firm/associated persons relied upon to establish that the customer parties authorized the transactions at issue, all documents relating to the customer parties' authorization of the transactions at issue, and all order tickets for the customer parties' transactions at issue.

5) (a) All materials the firm and/or associated persons prepared or used and/or provided to the customer parties relating to the transactions or products at issue, including research reports, sales materials, performance or risk data, prospectuses, other offering documents, and copies of news articles or outside research, including documents intended or identified as being "for internal use only."
(b) All worksheets or notes indicating that the associated persons reviewed or read such documents.

6) All notes the firm/associated persons made relating to the customer parties and/or the customer parties' claims, accounts, transactions, or products or types of products at issue, including, but not limited to, entries in any diary or calendar, relating to the claims or products at issue.

7) (a) All notes or memoranda evidencing supervisory, compliance, or managerial review of the customer parties' accounts or transactions therein or of the associated persons assigned to the customer parties' accounts for the period at issue.
(b) All correspondence between the customer parties and firm/associated persons relating to the customer parties' claims, accounts, transactions, or products or types of products at issue bearing indications of managerial, compliance, or supervisory review of such correspondence.

5

8) All recordings, telephone logs, and notes of telephone calls or conversations about the transactions at issue that occurred between the associated persons and the customer parties (and any person purporting to act on behalf of the customer parties), and/or between the firm and the associated persons.

9) All writings reflecting communications between the associated persons assigned to the customer parties' accounts at issue during the time period at issue and members of the firm's compliance department relating to the securities/products at issue and/or the customer parties' claims, accounts or transactions.

10) All Forms RE-3, U-4, and U-5 and Disclosure Reporting Pages, including all amendments, for the associated persons assigned to the customer parties' accounts at issue during the time period at issue, redacted to delete associated persons' Social Security numbers, all customer complaints identified in such forms, and all customer complaints filed against the associated persons that were generated not earlier than three years prior to the first transactions at issue through the filing of the Statement of Claim, redacted to prevent the disclosure of non-public personal information of the complaining customers.

11) All sections for all of the firm's manuals and all updates thereto relating to the claims alleged in the Statement of Claim for all years in which the Statement of Claim alleges that the conduct occurred, including separate or supplemental manuals governing the duties and responsibilities of the associated persons and supervisors, all bulletins (or similar notices) the firm issued for all years in which the Statement of Claim alleges that the conduct occurred, and the entire table of contents and index to each such manual or bulletin.  In responding to this request, the firm must provide a list of all of its manuals and bulletins which may contain directives related to the conduct, claims, or product or types of products at issue in the claim.

12) All analyses and reconciliations of the customer parties' accounts prepared during the time period at issue, including, without limitation, those relating to reviews of the customer parties' claims, accounts, transactions, or the product or types of products at issue.

13)  (a) All exception reports, supervisory activity reviews, concentration reports, active account runs and similar documents produced to review for activity in the customer parties' accounts related to the

allegations in the Statement of Claim or in which the claims, transactions, products or types of products at issue are referenced or listed.

(b) For claims alleging failure to supervise, all exception reports, supervisory activity reviews, concentration reports, active account runs, and similar documents produced to review for activity in customer accounts handled by associated persons and related to the allegations in the Statement of Claim that were generated not earlier than one year before or not later than one year after the transactions at issue.

14) Those portions of internal audit reports for the branch in which the customer parties maintained accounts that: (a) concern associated persons or the accounts or transactions at issue; and (b) were generated not earlier than one year before or not later than one year after the transactions at issue, and discussed alleged improper behavior in the branch against other individuals similar to the improper conduct alleged in the Statement of Claim.

15) Records of disciplinary action taken against associated persons by any regulator (state, federal or self-regulatory organization) or employer for all sales practice violations or conduct similar to the conduct alleged in the Statement of Claim.

16) All investigations, charges, or findings by any regulator (state, federal or self-regulatory organization) and the firm/associated persons' responses to such investigations, charges, or findings for the associated persons' alleged improper behavior similar to that alleged in the Statement of Claim.

17) Those portions of examination reports or similar reports following an examination or an inspection conducted by any regulator (state, federal or a self-regulatory organization) that focused on the associated persons or the customer parties' claims, accounts or transactions, or the product or types of products at issue or that discussed alleged improper behavior in the branch against other individuals similar to the conduct alleged in the Statement of Claim, for the period one year before the transactions at issue through the filing of the Statement of Claim.

18*)* All documents related to the case at issue that the firm/associated persons received by subpoena under Rule 12512 or by document request directed to third parties at any time during the case.

19) For all transactions at issue in the Statement of Claim, documentation showing the compensation, gross and net, to the associated persons for such transactions. In the event accounts at issue are the subject of fee arrangements that are not based on remuneration per trade, a record showing compensation earned by period on the accounts.

20) (a) For claims related to solicited trading activity, a record of all compensation, monetary and non-monetary, including, but not limited to, monthly commission runs for the associated persons, listing the securities traded, dates traded, whether the trades were solicited or unsolicited, and the gross and net commission from each trade. The firm shall provide this information for a period of time beginning three months before and ending three months after the trades at issue in the customer parties' accounts.

(b) The firm may redact names and other non-public personal information concerning customers who are not parties to the claim, but should provide sufficient information to identify: (1) the non-party customers' accounts, including the last four digits of the non-party customers' account numbers; (2) the associated persons' own and related accounts, including the last four digits of the associated persons' account numbers; and (3) the type of account (IRA, 401(k), etc.).

21) (a) A record of all agreements pertaining to the relationship between the associated persons and the firm, summarizing the associated persons' compensation arrangement or plan with the firm, including:

- Commission and concession schedules;
- Bonus or incentive plans including those relating to deferred compensation; and
- Schedules showing compensation received or to be received based upon volume, type of product, nature of trade *(agency v. principal),* etc.

(b) To the extent that compensation is based on factors other than remuneration per trade, the method by which the compensation was determined.

22) If the Statement of Claim includes allegations regarding an insurance product that includes a death benefit, the firm and/or associated persons must provide all information concerning the customer parties'

8

insurance holdings and the recommendations, if any, to the customer parties regarding insurance products.

**LIST 2**

**Documents the Customer Parties Shall Produce in All Customer Cases**

1) All customer party and customer party owned business (including partnership, corporate) federal income tax returns the customer parties filed, limited to pages 1 and 2 of Form 1040, Schedules A, B, D, and E, and the IRS worksheets related to these schedules, or the equivalent for any other type of return, redacted to delete the customer parties' Social Security numbers, for the three years prior to the first transactions at issue in the Statement of Claim through the date the Statement of Claim was filed.  The income tax returns must be identical to those that were filed with the Internal Revenue Service.  The customer parties may redact information relating to medical and dental expenses and the names of charities on Schedule A unless the information is related to the allegations in the Statement of Claim.

2) Financial statements, including statements within a loan application, or similar statements of the customer parties' assets, liabilities, and/or net worth for the period covering the three years prior to the first transactions at issue in the Statement of Claim through the date the Statement of Claim was filed.  Customer parties are not required to create financial statements in order to comply with this item.

3) All documents the customer parties received from the firm/associated persons and from any entities in which the customer parties invested through the firm/associated persons, including account opening documents and/or forms, prospectuses, research reports, annual and periodic reports, and correspondence.  Unless contending non receipt of periodic account statements and/or confirmations sent in the ordinary course of business, the customer parties may satisfy the production requirements for these items by stipulating to the receipt of all such periodic account statements and confirmations, but must produce those periodic account statements and confirmations that have handwritten notations or that are not identical to those the firm sent.

4) All account statements for each non-party securities firm where the customer parties have maintained an account for the three years prior to the first transactions at issue in the Statement of Claim through the

9

date the Statement of Claim was filed. In the alternative, the customer parties shall provide a written authorization allowing the firm/associated persons to obtain the account statements directly from each non-party securities firm.  If the customer parties elect to provide written authorization to the firm/associated persons to obtain the account statements, the customer parties must also provide all account statements in the customer parties' possession, custody, or control containing handwritten notes or that are not identical to those the firm sent.

5) All documents, including agreements and forms, relating to accounts at the firm or transactions with the firm.

6) All account analyses and reconciliations prepared by or for the customer parties relating to the customer parties' accounts at the firm or transactions with the firm during the time period at issue.

7) All notes, including entries in diaries or calendars, relating to accounts at the firm or transactions at issue with the firm.

8) (a) All recordings and notes or logs of telephone calls or conversations about the customer parties' accounts or transactions at issue that occurred between the associated persons and the customer parties (and any person purporting to act on behalf of the customer parties).

(b) All telephone records evidencing telephone contact between the customer parties and the firm/associated persons.

9) All correspondence the customer parties (or any person acting on behalf of the customer parties) sent or received relating to the accounts or transactions at issue.

10) Previously prepared written statements by persons with knowledge of the facts and circumstances related to the accounts or transactions at issue, including those by accountants, tax advisors, financial planners, associated persons, and any other third party.

11) (a) All complaints/Statements of Claim and answers filed in all civil actions involving securities matters and securities arbitration proceedings in which the customer parties have been a party, and all final

10

decisions or awards or non-confidential settlements entered in these matters through the date the Statement of Claim was filed.

(b) If a person is a party to a confidential settlement agreement that by its terms does not preclude identification of the existence of the settlement agreement, the party shall identify the documents comprising the confidential settlement agreement.  Although not presumptively discoverable, a confidential settlement agreement may be obtained with an order from the panel.

12) Documents showing the customer parties' ownership in or control over any business entity, including general and limited partnerships and closely held corporations.  If the customer parties are Trustees, provide documents showing the accounts over which the customer parties have trading authority.

13) All documents the customer parties received, including documents found through the customer parties' own efforts, relating to the investments at issue in the Statement of Claim.

14) For claims alleging unauthorized trading, all documents the customer parties relied upon to show that the customer parties did not know about or consent to the transactions at issue.

15) All materials the customer parties received or obtained from any source relating to the claims, transactions or products at issue, and all materials the customer parties received from any source relating to other investment opportunities, including research reports, sales literature, performance or risk data, prospectuses, and other offering documents, including documents intended or identified as being "for internal use only," and worksheets or notes.

16) The customer parties' resumes.

17) Any existing description of the customer parties' educational and employment background if not set forth in resumes produced under item 16.

18) All documents related to the case at issue that the customer parties received by subpoena under Rule 12512 or by document request directed to third parties at any time during the case.

11

19) To the extent that an insurance product that provides a death benefit is included in the Statement of Claim, the customer parties shall provide all information received from an insurance sales agent or securities broker relating to such insurance.